**COAST LAW GROUP, LLP**
HELEN I. ZELDES (220051)
*helen@coastlaw.com*
AMY C. JOHNSGARD (279795)
*amy@coastlaw.com*
BEN TRAVIS (305641)
*ben@coastlaw.com*
1140 S. Coast Hwy 101
Encinitas, CA 92024
Tel: (760) 942-8505

**SCHONBRUN SEPLOW HARRIS**    **REESE LLP**
**& HOFFMAN LLP**    MICHAEL R. REESE (206773)
PAUL L. HOFFMAN (71244)    *mreese@reesellp.com*
*hoffpaul@aol.com*    GEORGE V. GRANADE (316050)
CATHERINE SWEETSER (271142)    *ggranade@reesellp.com*
*catherine.sdshhh@gmail.com*    8484 Wilshire Blvd.
11543 W Olympic Blvd    Los Angeles, California 90211
Los Angeles, CA 90064    Telephone: (212) 643-0500
Telephone: (310) 396-0731

[Additional counsel on signature page.]

Attorneys for Plaintiff Walker and the Putative Class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Renee Walker, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>Nestlé USA, Inc., a Delaware Corporation; and DOES 1 to 100;<br><br>            Defendants. | Civil Case No.: **'19CV0723 L    KSC**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

I.    NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   FACTUAL ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.   Child Labor and Environmental Degradation
           in Côte D'Ivoire Chocolate Production is Well-Known
           and Undisputed by Nestlé . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.   Nevertheless, Nestlé Deceptively Labels Its Chocolate as
           a Sustainable, Fair Trade Product . . . . . . . . . . . . . . . . . . . . . . . . 6

           1.   Defendant's Sustainability Labeling is False and Misleading . . . 7

           2.   There Are No "Sustainable" Environmental
                Protocols in Place in Defendant's Cocoa Supply Chain  . . . . . . 8

           3.   Slavery and Forced Child Labor Are Not "Sustainable"  . . . . . . 9

           4.   Nestlé's Cocoa Plan is a Sham . . . . . . . . . . . . . . . . . . . . . . . . 10

           5.   The UTZ Certification Promoted by Nestlé Is a Sham  . . . . . . 12

           6.   Child Labor and Trafficked Labor Are So Widespread
                in Côte D'Ivoire That No Beans Can Be Labeled
                Slave-Free . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                a.   The Cocoa Supply Chain is Comprised of Two
                     Million Disperse Small Farms . . . . . . . . . . . . . . . . . . 15

                b.   Nestlé Does Not Trace its Beans, Making Any Sustainable
                     or Environmental Claims Baseless . . . . . . . . . . . . . . . . 16

      C.   The Cocoa Industry Has Repeatedly Pushed Out the
           Date it Claims it Will Eliminate Even the
           Worst Forms of Child Labor, Further Underscoring the
           Falsity of Nestlé's Labeling . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.    THE REGULATORY FRAMEWORK  . . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.   The FTC Green Guides Prohibit Nestlé's Misleading Statements . . . . 18

      B.   The California Environmental Marketing Claims Act Prohibits Nestlé's
           Misleading Statements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      C.   Nestlé Violates the Intent of California Transparency in Supply Chain
           Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CLASS ACTION COMPLAINT

          1.   Nestlé Fails to Comply with the CTSA by Greenwashing Slave
               Labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

          2.   Equating Slave Labor to an Environmentally
               Sustainable Practice is Abhorrent . . . . . . . . . . . . . . . . . . . . . . . 23

          3.   Nestlé Uses No Environmentally Sustainable Practices  . . . . . . 24

VI.   NESTLE HAS THE ABILITY TO SOLVE THIS PROBLEM  . . . . . . . . . . . 26

      A.   Don't Put Misleading Seals or Statements on Products  . . . . . . . . . . . 26

      B.   Technology Exists that Provides Greater Accountability . . . . . . . . . . 26

CLASS ACTION ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      COUNT I (Unfair and Deceptive Acts and Practices In Violation of
      the California Consumers Legal Remedies Act  . . . . . . . . . . . . . . . . . . . . . . . 29

      COUNT II (Violation of California's Unfair Competition Law)  . . . . . . . . . 30

PRAYER FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

JURY TRIAL DEMANDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CLASS ACTION COMPLAINT

Plaintiff Renee Walker ("Plaintiff") brings this action, on behalf of herself and all others similarly situated against NESTLÉ USA, INC. ("Defendant" or "Nestlé"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## I.     NATURE OF THE CASE

1.     Nestlé, the world's largest food company, is best known for chocolate products like Butterfinger, Nestlé Crunch, Baby Ruth, Nesquik, 100 Grand and Toll House chocolate chips.  What Nestlé is not as well known for is that it has been making its chocolate fortune off the backs of child labor and child slave labor in West Africa. Nestlé has been acutely aware of the magnitude of unethical labor in its supply chain for more than a decade – indeed, it admits, albeit anemically, that two-thirds of its chocolate supply is tainted with child labor and/or child slave labor.[1]  In fact, the World Cocoa Foundation, which Nestle is a member of, reports that there are approximately ***10 million children*** working on the cocoa farms in Côte d'Ivoire and Ghana.[2]

2.     Notwithstanding knowing full well that its chocolate is primarily procured from farms using the worst forms of child labor, Nestlé slaps bogus "seals" on its products claiming its cocoa is "sustainably sourced" "certified" and "supports" or "helps" farmers when it knows the opposite is true.  It is abhorrent to equate slavery and child labor to a "sustainable" practice.  Nor does Nestlé fare any better on the environmental "sustainability" front:   Nestlé's supply chain has virtually no environmental standards in place.  To the contrary, the "[c]hocolate industry drives rainforest disaster in [the] Ivory Coast."[3]  This massive deforestation was documented by *The Guardian*, whose investigative reporters "travelled across Ivory Coast and

---

[1] https://www.nestle.com/asset-library/documents/creating-shared-value/responsible-sourcing/nestle-cocoa-plan-child-labour-2017-report.pdf, at p. 11.

[2] https://www.worldcocoafoundation.org/blog/tackling-child-labor-in-the-cocoa-sector-an-industry-viewpoint-of-a-work-in-progress/

[3] https://www.theguardian.com/environment/2017/sep/13/chocolate-industry-drives-rainforest-disaster-in-ivory-coast

documented rainforests cleared for cocoa plantation; villages and farmers occupying supposedly protected national parks; enforcement officials taking kickbacks for turning a blind eye to infractions and trading middlemen who supply the big brands indifferent to the provenance of beans." *Ibid*.  At the current pace of deforestation, there will be no forest left in the Ivory Coast by 2030.  *Ibid*.

3.     Nestlé's deceptive labeling misleads consumers into believing their products are procured in accordance with environmentally and socially responsible standards, when it knows they are not.  Ms. Walker was misled by the affirmative misrepresentations on Nestlé's product packaging concerning the use of fair labor and environmental standards and practices.  Had she been aware of the misrepresentations described herein, she would not have purchased Nestlé's products.

4.     Plaintiff thus brings this action pursuant to: (i) California's Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Law or "UCL"); and (ii) California Civil Code §§ 1750, *et seq.* (the Consumers Legal Remedies Act or "CLRA").  Plaintiff brings this action on behalf of a nationwide class for restitution and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## II.     JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over Nestlé because Nestlé has conducted and continues to conduct business in the State of California, and because Nestlé has committed the acts and omissions complained of herein in the State of California.

6.     This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), as Plaintiff (California) and Nestlé (Delaware) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

7.     Venue is proper in the Southern District of California, because a substantial portion of the acts giving rise to this action occurred in this district.

### III.   PARTIES

8.      Plaintiff Walker is, and at all times mentioned herein was, an individual citizen of the State of California and resident of San Diego County.  Plaintiff purchased Defendant Nestlé's chocolate products labeled with the "Nestlé Cocoa Plan" "UTZ Certified" "Certified through UTZ" and "Sustainably Sourced" labels on them purporting to, among other things, "Support[] farmers for better chocolate" and "help improve the lives of []cocoa farmers." Plaintiff relied upon Nestlé's misrepresentations about the social and environmental benefits of the products in making her decision to purchase the products.  Plaintiff suffered injury in that she would not have bought the UTZ/Nestlé Cocoa Plan/Sustainability-labeled products had she known that the products were not sourced from sustainable farming practices but rather off the backs of child and slave labor.

9.      Defendant Nestlé USA ("Nestlé") is a Delaware corporation with its principal place of business at 1812 North Moore Street in Rosslyn, Virginia 22209. Nestlé is one of the largest food and beverage companies in the world.[4]  Nestlé purchases approximately 414,000 tons of cocoa annually.[5]  Nestlé promotes itself as "the 'Good Food, Good Life' company, we enhance quality of life and contribute to a healthier future."[6] Nestlé does no such thing in the Côte D'Ivoire.

### IV.   FACTUAL ALLEGATIONS

**A.      Child Labor and Environmental Degradation in the Côte D'Ivoire's Chocolate Industry Are Well-Known and Undisputed by Nestlé**

10.     Nestlé has long been aware that cocoa farming in Côte D'Ivoire relies heavily on child labor and slavery.  Children on Ivorian cocoa plantations are subjected to what the International Labor Organization (ILO) terms the "Worst Forms of Child

---

[4] https://www.nestle.com/aboutus
[5] https://www.nestleprofessional.us/we-share-your-values/nestle-cocoa-plan-promotes-better-farming-better-lives-better-cocoa
[6] https://www.nestle.com/asset-library/documents/library/documents/annual_reports/2018-annual-review-en.pdf, at p. 11.

Labor" – including trafficking, slavery, and exposure to toxic chemicals and hazardous tools.[7]  In 2001, Nestlé signed the Harkin-Engel Protocol, signifying its commitment to eradicating the Worst Forms of Child Labor in West Africa. Signatories pledged to "develop and implement credible, mutually-acceptable, voluntary, industry-wide standards of public certification" to ensure that cocoa beans were "grown and/or processed without the worst forms of child labor" by July 2005.

11.    Notwithstanding the chocolate industry's alleged commitment to combating child labor and slavery, a study conducted in 2015 by Tulane University concluded that the number of Ivorian children engaged in the Worst Forms of Child Labor on cocoa plantations substantially ***increased*** between 2009 and 2014.

12.    During the 2013-14 harvest season, 1,203,473 child laborers aged 5 to 17 were found to be working on cocoa farms in Côte d'Ivoire, with 95.9 percent engaged in hazardous work in cocoa production.  The work children engage in on the cocoa farms includes burning and clearing fields, cutting down trees to expand cocoa plantations, spraying pesticides, using sharp tools to break pods, and transporting heavy loads of cocoa pods and water.[8]

13.    The U.S. Department of Labor describes the conditions of forced labor in chilling detail: "[s]ome children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor.  Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off.  The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker. These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape. They are punished by their employers with physical

---

[7] https://www.ilo.org/ipec/facts/WorstFormsofChildLabour/lang--en/index.htm
[8] https://www.dol.gov/sites/default/files/images/ilab/child-labor/CotedIvoire.pdf, at p. 1.

**CLASS ACTION COMPLAINT**

abuse. They are forced to work long hours, including overtime, and are required to work even when they are sick. Some children are denied sufficient food by their traffickers and employers."[9]

**B.    Nevertheless, Nestlé Deceptively Labels Its Chocolate as a Sustainable, Fair Trade Product**

14.    Notwithstanding Nestlé's knowledge that its supply chain is inundated with child labor and child slave labor, Nestlé has the audacity to place patently false "seals" on its products, purporting to be a "sustainably sourced" product. Nothing could be further from the truth.

15.    Many of Nestlé's products prominently feature the logo of the Nestlé Cocoa Plan.  The Cocoa Plan, instituted in 2009, is described as "improv[ing] the lives of cocoa farmers and the quality of their chocolate."

16.    Products advertised with the Nestlé Cocoa Plan seal are also accompanied by references to UTZ, a third-party certifier which holds itself out as the "benchmark for the sustainable production of . . . cocoa."[10]  UTZ certified products stand for ethical and sustainable farming, including better working conditions and better care for the natural environment.[11]

17.    For example, Nesquik chocolate milk, marketed by Nestlé, boasts of Nestlé's "sustainably harvested cocoa beans." Nestlé advertises the Nestlé Cocoa Plan and claims to be working with UTZ in order to improve the lives of cocoa farmers."

18.    Nestlé's Toll House Chocolate Chips products are advertised as "sustainably sourced" through Nestlé's Cocoa Plan. Nestlé also advertises its products as "certified through UTZ."

19.    All of these claims are prominently included on the product packaging. Consumers justifiably consider Nestlé's assertions when choosing whether to purchase

---

[9]  https://www.dol.gov/sites/default/files/documents/ilab/EO_Report_2014.pdf, at p. 12.
[10] https://utz.org/
[11] *See*, https://utz.org/what-we-offer/certification/the-standard/

**CLASS ACTION COMPLAINT**

a particular product.

 

 

**1.   Nestlé's Sustainability Labeling is False and Misleading**

20.   Sustainability is commonly used in the business enterprise world, and the accepted sustainability management definition encompasses "managing the triple bottom line - a process in which companies manage their financial, social and environmental risks."[12]

21.   Nestlé makes both false social and environmental sustainability claims on its packaging. It also makes these sustainability statements without any supporting evidence.

/ / /

---

[12] Definition of business sustainability, Financial Times, http://lexicon.ft.com/Term?term=business-sustainability

1
2

**2.     There Are No "Sustainable" Environmental Protocols in Place**
**in Defendant's Cocoa Supply Chain**

3       22.    Nestlé's production and purchasing mechanisms in the Côte D'Ivoire do
4  not follow any sustainable environmental protocols, and actually adversely affect the
5  local ecosystem.

6       23.    The rainforest in Côte D'Ivoire has decreased from 16 million hectares in
7  1960, making up half of the country, to less than 2 million hectares by 2010.[13] Nestlé's
8  overproduction and indiscriminate purchasing in Côte D'Ivoire has contributed to this
9  mass deforestation.[14]  An estimated 40 percent of the Ivorian cocoa harvest currently
10 comes from inside classified or protected areas. This has devastating consequences not
11 only for biodiversity and the local microclimate (including desertification and
12 changing weather patterns[15]).

13      24.    Many of Côte D'Ivoire's national parks and protected areas have been
14 entirely or almost entirely cleared of forest and replaced with cocoa growing
15 operations.[16]  For years the world's major chocolate companies have been buying
16 cocoa grown through the illegal deforestation of national parks and other protected
17 forests, in addition to driving extensive deforestation outside of protected areas.[17] In
18 the world's two largest cocoa producing countries, Ivory Coast and Ghana, the market
19 created by the chocolate industry has been the primary source for the destruction of
20 environmentally protected areas.[18]  As Mighty Earth reports, "many of the country's
21 national parks and conservation lands have been cleared of their forest to make way

22
23
24
25
26
27
28

---

[13]  2018 Cocoa Barometer, at p.20
http://www.cocoabarometer.org/cocoa_barometer/Download_files/2018%20Cocoa%20Barometer
%20180420.pdf
[14] *Id.*
[15] *Id.* p. 18-19
[16] Chocolate's Dark Secret, Mighty Earth, 2017, http://www.mightyearth.org/wp-content/uploads/2017/09/chocolates_dark_secret_english_web.pdf
[17] *Id.*
[18] *Id.*

for cocoa operations to feed demand from large chocolate companies like Nestlé, Cadbury, and Mars."[19]

25.   Nestlé currently has no protocols in place to prevent purchasing cocoa produced on protected lands.  Nestlé's March 5, 2019 "Action Plan" highlights ending deforestation but extends its original 2012 commitment to 2022.[20]  Currently, upwards of 80 percent of cocoa production and sales are done without properly tracing the source of the cocoa. Accordingly, a large percentage of Nestlé's cocoa is knowingly grown in and purchased from protected nature reserves.  As demand continues to expand in cocoa production, rainforests are cut down for new cocoa fields.

26.   In addition to mass deforestation, the current known and common practices around cocoa farming are not sustainable.  There is excessive use of fertilizers and pesticides and a loss of biodiversity.[21]  Chemicals pollute waterways, killing wildlife and harming communities.  Deforestation exposes shade-dependent plants to full sun, which increased the biospheres susceptibility to disease.

### 3.   Slavery and Forced Child Labor Are Not "Sustainable"

27.   Nestlé contends it provides sustainable chocolate to consumers through its "Cocoa Plan" and claims that the company is working toward "improving the lives of farmers."

28.   The social prong of sustainability entails that a company is working toward developing structures which meet the needs of its current members, but also ensure the ability of future generations to maintain a healthy community.[22]

29.   Sustainability also refers to mitigating adverse risks on the well-being and

---

[19] Id.

[20] Nestle Action Plan, March 5th, 2019, at https://www.nestle.com/asset-library/documents/library/documents/corporate_social_responsibility/cocoa-and-forests-initiative-nestle-initial-action-plan.pdf

[21] Chocolate's Dark Secret, Mighty Earth, 2017, http://www.mightyearth.org/wp-content/uploads/2017/09/chocolates_dark_secret_english_web.pdf

[22] http://www.businessdictionary.com/definition/social-sustainability.html

9

**CLASS ACTION COMPLAINT**

1  human rights of the communities in which it operates.[23]

2  30.   As previously stated, the number of children working in dangerous

3  conditions on cocoa farms in Côte d'Ivoire has ***increased*** considerably in recent years

4  not made farmers' lives better as a result of Nestlé's "Cocoa Plan".[24]

5  31.   Nestlé cannot publicly claim that it adopts sustainable practices and that

6  it is working to improve the lives of farmers when its unethical practices are in fact

7  perpetuating a system that relies on and thus increases child and child slave labor.

8  ### 4.   Nestlé's "Cocoa Plan" is a Sham

9  32.   Nestlé's own internal certification plan, the "Nestlé Cocoa Plan", is a

10  clear attempt to vindicate the company to the public without requiring them to take

11  tangible actions to eradicate this widespread scourge.  It thus deceives consumers into

12  believing that buying Nestlé's products will benefit farmers in Côte d'Ivoire and

13  misleads them into thinking their product is child labor and slave-labor free.

14  33.   Nestlé makes false assurances that it is "determined to tackle the

15  problem"[25] and that its Nestlé Cocoa Plan (launched in 2009) is helping to "eliminate

16  the use of child labour" and to "stamp out forced labour practices" in the Ivorian cocoa

17  industry.  Nestlé also claims that it is "helping the lives of farmers" through the Plan.

18  However, Nestlé's profiteering off child labor does not help the lives of farmers.  Child

19  labor has increased in Côte d'Ivoire since Nestlé instituted its "Cocoa Plan."[26] Nestlé

20  has yet to commit to paying farmers a fair price for their cocoa and does not currently

21  have any long-term plans to support farmers achieving a living income.

22

23  [23] See Social Sustainability, UN Global Compact, https://www.unglobalcompact.org/what-is-gc/our-work/social

24  [24] Tulane Report 2015

25  https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

26  [25] http://www.nestlecocoaplan.com/betterlives

27  [26] School of Public Health and Tropical Medicine Tulane University, "Survey Research on Child Labor in West African Cocoa Growing Areas", Tulane University, 30 July 2015, at page 35.

28  https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

34.     Nestlé's Cocoa Plan represents that it is tackling child labor but relies solely on Nestlé's own Child Labor Monitoring and Remediation System (CLMRS), to achieve that goal. CLMRS purports to be a community-based monitoring system to identify and remediate child labor. Nestlé's plan relies on Community Liaison People (community auditors) to spot children engaged in labor activities, or on the children themselves who can self-declare to be engaging in a hazardous activity.[27]

35.     Independent monitoring visits conducted annually by the Fair Labor Association ("FLA") confirm the continued presence of child labor on Nestlé Cocoa Plan CLMRS-certified farms.  The 2017 FLA assessment found an overall ***increase*** in the total number of child workers on farms from the previous year. Child labor constituted 21% of the labor on CLMRS farms.[28]

36.     Moreover, the Nestlé Cocoa Plan does not even try to certify that children are not being used as forced labor.  Rather, it purports to include a voluntary reporting and monitoring system for identifying child labor. As of 2017, Nestlé claimed it had identified over 7,000 children working on farms covered by the Nestlé Cocoa Plan.[29] However, that number is deceptively understated.

37.     The World Cocoa Foundation states that: "The organized supply chains of a handful of companies reach only a fraction of the entire cocoa-growing population of Côte d'Ivoire and Ghana, and efforts to date have only reached a fraction of the farmers in those supply-chains."[30] "There are approximately two million cocoa farmers in Côte d'Ivoire and Ghana representing 6-8 million children under the age of 18."

38.     The Plan provides that around a third of Nestlé's total global supply is

---

[27] http://www.nestlecocoaplan.com/better-lives/
[28] http://www.fairlabor.org/sites/default/files/documents/reports/2017_nestle_cocoa_executive_summary_october-2018.pdf, at p. 4.
[29] https://www.nestle.com/asset-library/documents/creating-shared-value/responsible-sourcing/nestle-cocoa-plan-child-labour-2017-report.pdf at p. 6.
[30] https://www.worldcocoafoundation.org/blog/2018-child-labor-cocoa-coordinating-group-8th-annual-meeting-remarks/

currently bought from producers covered by the Nestlé Cocoa Plan.[31] Other information however suggests that as little as 25 percent of its cocoa is bought through the Nestlé Cocoa Plan, with the remaining 75 percent coming from untraceable sources.[32]

39.    By all sources, it has admitted that the vast majority of Nestlé's cocoa is sourced through untraceable channels, where absolutely no monitoring takes place, where child labor and trafficking occur on a widespread basis.

40.    Additionally, out of the 70 co-operatives in Côte d'Ivoire that supply the small amount of traceable cocoa bought by Nestle, only 22 co-operatives have implemented CLMRS.[33]   In other words, even in the small number of cooperatives where the cocoa is traceable to farmers, monitoring activities through the Nestlé Cocoa Plan CLMRS system take place in only a fraction of them.

41.    Moreover, the available data demonstrates that the areas covered by the CLMRS constitute a minimal proportion of the total number of farmers and children supplying cocoa to Nestlé in Côte d'Ivoire.

### 5.    The UTZ Certification Promoted by Nestlé Is Also a Sham

42.    Nestlé couples false assurances of its Cocoa Plan with a reference to a UTZ certification.  Like Nestlé, UTZ claims child labor is prohibited on its certified farms.[34]  It purports to regulate the illegal use of child labor through its "UTZ certified traceability system," the "Good Inside Portal".  It boasts consumers can trust that "the sustainable ingredients sourced for the product has been traced all the way from field to shop shelf, every stage of its journey documented."[35]

---

[31] https://www.nestle.com/asset-library/documents/creating-shared-value/responsible-sourcing/nestle-cocoa-plan-child-labour-2017-report.pdf, at p. 11.
[32] Fair Labor Association, http://www.fairlabor.org/sites/default/files/documents/reports/assessment_nestle_standard_supply_chain_ivory_coast_august_2016.pdf
[33] http://www.nestlecocoaplan.com/better-lives/
[34] https://utz.org/what-we-offer/sector-change/child-labor/
[35] https://utz.org/what-we-offer/traceability-system/traceability-system/

43.    These assurances are false. A 2018 study co-sponsored in part by both Nestlé and UTZ entitled, "*Towards sustainable cocoa in Cote d'Ivoire—The impacts and contribution of UTZ certification combined with services provided by companies*" found widespread use of child labor on UTZ certified farms and a lack of oversight on those farms.[36] The study found that in 2017, only 38 percent of UTZ farmers had been inspected for the use of child labor.[37] That same year, 16 percent of UTZ farmers reported children doing prohibited hazardous or unhealthy work [38]



**Figure 7.9**    Percentage of cocoa farms where children conduct hazardous activities

prohibited by the UTZ Code of Conduct.[39]  **This figure was two percent *higher* than for *non*-UTZ farms**.[40]  Further, only 35 percent of UTZ farmers were aware of the minimum age for children to work on their farms.[41]

---

[36] See generally, http://library.wur.nl/WebQuery/wurpubs/fulltext/450223
[37] http://library.wur.nl/WebQuery/wurpubs/fulltext/450223, p. 64.
[38] Towards sustainable cocoa in Côte d'Ivoire,
http://library.wur.nl/WebQuery/wurpubs/fulltext/450223 at p. 62
[39] http://library.wur.nl/WebQuery/wurpubs/fulltext/450223, p. 62.
[40] http://library.wur.nl/WebQuery/wurpubs/fulltext/450223 at p. 62
[41] http://library.wur.nl/WebQuery/wurpubs/fulltext/450223, p. 64

**CLASS ACTION COMPLAINT**

44.   Further deceiving consumers, UTZ purports to pay farmers a premium for joining cooperatives which allegedly use fair labor. In fact, the premium is not paid to farmers. Instead, it is paid directly to the cooperatives, who retain it for their own benefit with no financial remuneration to the cocoa farmers.

45.   By placing the UTZ certification label on its cocoa products, Nestlé knowingly misleads consumers into believing they are purchasing sustainable, ethically sourced chocolate which couldn't be further from the truth.

### 6.   Child Labor and Trafficked Labor Are So Widespread in Côte d'Ivoire That No Chocolate Can Be Labeled As Sustainable Labor Practices

46.   Nestlé admits that the use of child labor and trafficking remains widespread and endemic.  Nestle cannot claim it is even using primarily or close to 50% child labor free cocoa. As stated in the latest Cocoa Barometer Report: "Not a single company or government is anywhere near reaching the sector-wide objective of the elimination of child labour, and not even near their commitments of a 70% reduction of child labour by 2020."[42]

47.    In the almost 20 years since the execution of the Harkin-Engel protocol, no significant advancements have been made in Côte d'Ivoire. Rather than decreasing, child labor has increased in West Africa.  According to the 2015 Tulane Report, the increase in cocoa production has also led to an increase of child laborers to 2.1 million children in Côte d'Ivoire and a total of more than 3.7 million children in the country. Of this number, 1,153,672 children working the cocoa sector are involved in hazardous work,[43] including using machetes to cut trees or cocoa pods, burning fields, carrying

---

[42] Fountain, A.; Huetz-Adams, F. "Cocoa Barometer 2018", Voice Network, The Netherlands, 2018, at page 5.

[43] School of Public Health and Tropical Medicine Tulane University, "Survey Research on Child Labor in West African Cocoa Growing Areas", Tulane University, 30 July 2015, at page 35. https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

**CLASS ACTION COMPLAINT**

heavy loads, handling agro-pharmaceutical products, as well as being deprived of schooling.[44]   Around 90,000 children and adults are estimated to be trafficked to Côte d'Ivoire from neighboring countries such as Mali and Burkina Faso and subjected to forced labor on cocoa plantations.[45]   Rather than eliminate the problem, the industry has merely pledged to reduce child labor in Côte d'Ivoire and Ghana by 70 percent by 2020.[46]

### a.   The Cocoa Supply Chain is Comprised of Two Million Disperse Small Farms

48.   The number of cocoa farmers in Côte d'Ivoire and Ghana is estimated to be around 2 million.[47]   Most of them are small farms with a size normally of no more than 3.5 hectares (10,000 square meters).[48] The majority of these farmers are also dispersed around the country in a region called the "cocoa belt," located across the southern region of Côte d'Ivoire.

49.   Their small operation and fragmented presence across the country favor a system in which farmers sell to intermediaries who will collect the beans and gather them in warehouses. These intermediaries are either cooperatives, where the farmers are part of a cooperative system, or individuals called "middlemen", who are not part of any formal organization. Middlemen collect beans across diverse farms in the cocoa belt, where no monitoring takes place, to sell to grinders or traders, and then to manufacturers such as Nestlé.

---

[44] Id. at page 60-61.
[45] "Our Story", Tony Chocolonely, https://tonyschocolonely.com/us/en/our-story, (Consulted on 26 March 2019)
[46] Chocolate's Dark Secret, Might Earth, 2017, http://www.mightyearth.org/wp-content/uploads/2017/09/chocolates_dark_secret_english_web.pdf  at p. 14
[47] Fountain, A.; Huetz-Adams, F. "Cocoa Barometer 2018", Voice Network, The Netherlands, 2018.
[48] Macek, Paul et al., "Farmer Livelihoods" World Cocoa Foundation, https://www.worldcocoafoundation.org/focus-areas/farmer-livelihoods/, (consulted on 23 March 2019).

50.     A small percent of farmers, estimated at 20%, are in a formal cooperative system in Côte d'Ivoire.[49]   In other words, the vast majority of the cocoa sourced in Côte d'Ivoire comes from untraceable farms, in which child and slave labor is a common and widespread practice.

51.     No companies, including Nestlé, can claim to be sourcing sustainable cocoa, as nearly Nestlé's totality of cocoa sourced in the country comes from farms in which no auditing, monitoring, awareness training, remediation mechanisms or environmental-friendly practices are set up by the industry.

**b.     Nestlé Does Not Trace its Beans, Making Any Sustainable or Environmental Claims Baseless**

52.     Around 25 percent of the cocoa procured from Côte d'Ivoire by Nestlé is at present covered by the Nestlé Cocoa Plan and the remaining percentage comes from the yet to-be-traced "standard supply chain" through non-certified cooperatives or middlemen.[50]

53.     Nestlé does not know where the majority of its cocoa comes from and cannot make claims about environmental or social practices occurring in the overwhelming number of farms from where it procures its cocoa.

54.     The small number of legitimately harvested cocoa beans and those harvested using the worst forms of child labor are currently all co-mingled, such that Nestle is unable to trace the products it sells to confirm they were not made using hazardous and/or forced child labor.

**C.     The Cocoa Industry Has Repeatedly Pushed Out the Date it Claims It Will Eliminate Even the Worst Forms of Child Labor, Underscoring the Enormity of the Problem**

---

[49] Fair Labor Association, Assessment of Nestlé's Standard Cocoa Supply Chain in Côte d'Ivoire, August 2016, http://www.fairlabor.org/sites/default/files/documents/reports/assessment_nestle_standard_supply_chain_ivory_coast_august_2016.pdf, page 8.
[50] *Id*. at p. 7.

55.     The chocolate oligopolists have repeatedly broken promises to eliminate child slavery in Côte D'Ivoire.  In 2001, Senator Tom Harkin and Congressman Eliot Engel established the Harkin-Engel Protocol aimed at eliminating the worst forms of child labor in the cocoa sector.  The worst forms of child labor are defined by the International Labor Organization (ILO)'s Convention 182 to include all forms of slavery or practices similar to slavery, such as the sale and trafficking of children, debt bondage and forced or compulsory labor.[51]

56.     While grossly misrepresenting the abhorrence and scale of child slavery, Nestlé has proven to be unable or unwilling to eliminate the practice.  The Harkin-Engel Protocol committed to eliminating the worst forms of child labor in Côte d'Ivoire and Ghana by July 2005.[52]  In 2005, cocoa industry leaders admitted the goals would not be "fully met" but assured Sen. Harkin and Rep. Engel they were "committed to achieving a certification system…within three years.[53]  Then in 2008, industry leaders again extended their self-imposed deadline by two years.[54]  In 2010, the industry delayed the implementation date by a full decade to 2020.

57.     Nestlé is a member of the World Cocoa Foundation.[55]  At the most recent 8th Annual World Cocoa Foundation Meeting in August 2018 the industry admitted it could not make its 2020, or even 2025 goal of eradicating child labor in the cocoa supply chain.  Effectively abandoning any set date, the Foundation admitted it was not likely it would meet its "aspiration for 2020" nor other targets "for the eradication of child labor by 2025."[56]

---

[51]https://www.ilo.org/dyn/normlex/en/f?p=NORMLEXPUB:12100:0::NO::P12100_ILO_CODE:C182

[52] http://fortune.com/big-chocolate-child-labor/
[53] http://www.cacao.gouv.ci/commun/documents/jointstatementSenateurTomHarkin.pdf
[54] http://www.csrwire.com/press_releases/14132-Joint-Statement-from-U-S-Senator-Tom-Harkin-Representative-Eliot-Engel-and-the-Chocolate-and-Cocoa-Industry-on-the-Implementation-of-the-Harkin-Engel-Protocol-#
[55] https://www.worldcocoafoundation.org/about-wcf/members/
[56] https://www.worldcocoafoundation.org/blog/2018-child-labor-cocoa-coordinating-group-8th-annual-meeting-remarks/

**CLASS ACTION COMPLAINT**

## V.  THE REGULATORY FRAMEWORK

### A.    The FTC Greenguides Prohibit Nestlé's Misleading Statements

58.    The Federal Trade Commission has issued guidelines for companies that market their products as environmentally-friendly.

59.    The FTC Green Guides ("Guides") apply to claims about the "environmental attributes" of products.  The FTC does not define the phrase "environmental attributes," but California has interpreted this to include claims that products are earth friendly, environmentally friendly, or green. (Cal. Bus. & Prof. Code) § 17580.5. Claims may be asserted directly or by implication, such as through the use of symbols, logos, or certifications. 16 C.F.R. § 260.1.

60.    The Guides prohibit "deceptive acts" or representations which are "likely to mislead consumers acting reasonably under the circumstances and [are] material to consumers' decisions." This includes representations made through labeling, advertising, or other promotional activities. 16 C.F.R. § 260.1.

61.    "Unqualified general environmental benefit claims" - including terms like "eco-friendly" - typically qualify as deceptive, because they tend to convey that a product has "no negative environmental impact." Marketers are almost invariably unable to substantiate such broad assertions, as required by the FTC in order to demonstrate that a claim was not misrepresentative. 16 C.F.R. § 260.4.

62.    To avoid deceiving consumers, marketers should use "clear and prominent qualifying language" explaining that a general environmental claim refer only to specific, limited benefits. This is important when marketers utilize environmental certifications or seals, which might otherwise convey a broad meaning. 16 C.F.R. § 260.6.

63.    Marketers retain responsibility for substantiating all claims that are reasonably communicated by a third-party certification. 16 C.F.R. § 260.6.

64.    To the extent Nestlé cocoa products are advertised as "certified by UTZ," Nestle is responsible for qualifying any claims reasonably conveyed to consumers

through the use of the UTZ name.

65.   Sustainability is a broad concept that encompasses a wide range of environmental and social practices. The term generally connotes a combination of environmental, social, and ethical concerns.[57] For example, Unilever describes its sustainable sourcing strategy as an "an unwavering commitment to deeper transparency and traceability on climate and social impact issues," which includes "a focus on living conditions and economic viability for the smallholders in [its] supply chain."[58] Similarly,  PepsiCo's sustainable sourcing efforts include a focus on "health, safety, and hygiene,  environmental and management system, and working hours."[59] In the context of the chocolate industry, Nestle's competitor, Barry Callebaut, defines sustainability to include human rights as well as environmental impact.[60]

66.   By labeling its products as "sustainably sourced," Nestlé advances an unqualified general environmental claim. Based on Nestlé's representation of its products as "sustainably sourced," Plaintiff reasonably inferred that Nestlé's "sustainably sourced" cocoa was produced in a socially and environmentally conscious manner.

67.   Nestlé cannot substantiate its claims to use "sustainably sourced cocoa." To the extent that "sustainably sourced" encompasses a concern for social as well as environmental welfare, Nestlé's reliance on the worst forms of child labor contradicts any such claim. Labor involving hazardous and environmentally-destructive chemicals, dangerous machinery, and victims of trafficking is the subject of international condemnation.[61] A reasonable consumer would not view such practices as "sustainable" in any sense of the word.

---

[57] https://www.ecovadis.com/us/sustainable-sourcing/
[58] https://www.unilever.com/sustainable-living/reducing-environmental-impact/sustainable-sourcing/
[59] https://www.pepsico.com/sustainability/sustainable-sourcing
[60] https://www.barry-callebaut.com/en/group/forever-chocolate/ethical-sourcing-and-business/sustainable-sourcing
[61] *See, e.g.* https://www.ilo.org/ipec/facts/WorstFormsofChildLabour/lang--en/index.htm

**CLASS ACTION COMPLAINT**

68.     Nestlé's misrepresentations materially influenced Plaintiff's decision to purchase their chocolate products.

**B.     California Environmental Marketing Claims Act**

69.     Under the California Environmental Marketing Claims Act (EMCA), it is unlawful to make "any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" Cal. Bus. & Prof. Code§ 17580.5.

70.     California has incorporated the provisions of the Guides into the California Environmental Marketing Claims Act. The phrase "environmental marketing claims" includes, but is not explicitly limited to, all claims described in the Guides. Cal. Bus. & Prof. Code § 17580.5.

71.     Nestlé's claims that its products are sustainably sourced constitute deceptive claims within the meaning of the Guides and violate the terms of the EMCA. By claiming to use "sustainably sourced" beans, Nestlé violates the FTC provisions relating to general environmental claims and implicitly puts forward the deceptive notion that its supply chain relies on environmentally and socially responsible policies. Nestlé cannot substantiate these claims.

**C.     Intent of California Transparency in Supply Chain Act**

72.     The California Transparency in Supply Chain Act, California Civil Code § 1714.43 requires companies that do business in California and have worldwide gross receipts exceeding $100 million to disclose on their websites their efforts to eradicate slavery and human trafficking from their direct supply chain for tangible goods offered for sale. It requires companies subject to the Act to post disclosures related to five specific areas: verification, audits, certification, internal accountability, and training.

73.     Nestlé's website page on the Transparency in Supply Chain Act provides that the company "fully support[s] the United Nations Global Compact's (UNGC) guiding principles on human rights and labour and aim[s] to provide an example of

good human rights and labour practices throughout our business activities".[62]

74.     Nestlé's Transparency in Supply Chain Act website page also provides hyperlinks to Nestlé's corporate business principles and to Nestlé Supplier Code, which both provide more detailed information about the standards to which the Nestlé and its suppliers pretend they are adhering to.

75.     Nestlé identifies the protection of human rights in its business activities as one of its Corporate Business Principles stating that they "make sure that [they] are not complicit in human rights abuses (UNGC Principle 2)".[63]   However, Nestlé is continuously complicit in human rights abuses by not setting real measures or programs to eradicate child labor from its supply chain and profiting directly from the cheap labor provided by child and slave labor.

76.     The Nestlé Supplier Code of Conduct also explicitly forbids child labor by its suppliers: "In accordance with international labour standards, no person shall be employed under the age of 15 or under the age for completion of compulsory education, whichever is higher, except in the strict frame of the Family Farm Work[...]".[64]   It also prohibits its suppliers to use young workers to work night shifts or engage in work with hazardous conditions and equally prohibits the use of forced labor in their operations.[65]   However, Nestlé knowingly buys most of its cocoa in Côte d'Ivoire from untraceable farms on which child labor and trafficking are happening.

77.     Nestlé's use of Ivorian cocoa in the supply for its chocolate violates the publicly available statements made through its Supply Chain Act website page, as well as its Corporate Business Principles and its Supplier Code. The website is designed to create the impression that Nestlé monitors its supply chain and takes measures to obtain

---

[62] The Nestlé Corporate Business Principles, June 2010, https://www.nestle.com/asset-library/documents/library/documents/corporate_governance/corporate-business-principles-en.pdf
[63] Id.
[64] The Nestlé Supplier Code of Conduct, July 2018,  http://www.nestle.com/asset-library/Documents/Library/Documents/Suppliers/nestle-responsible-sourcing-standard-english.pdf
[65] Id.

CLASS ACTION COMPLAINT

compliance with its codes.  Nestlé states that "we do not tolerate child labour in our supply chain."[66]  However, it not only on tolerating but in fact on profiting from child labor.

78.     Plaintiff read this website page and the affirmative statements that appear in both Nestlé's Corporate Business Principles as well as in its Supplier Code of Conduct that contain affirmative misrepresentations about the Nestlé's efforts to eradicate slavery and human trafficking from their cocoa supply chain.

79.     Although the California Transparency in Supply Chain Act does not require companies to take action to mitigate human trafficking or forced labor risks in their supply chains, it does require companies to disclose true and verifiable information.  By making false affirmative statements to the public, Nestlé has violated the very purpose of this Act, which was intended to "provides consumers with critical information about the efforts that companies are undertaking to prevent and root out human trafficking and slavery in their product supply chains – whether here or overseas".[67]

1. **Nestle Fails to Comply with the CTSA by Greenwashing Slave Labor**

80.     Nestlé blatantly greenwashes its products in order to increase its own sales and deceptively earn the goodwill and support of the public. "Greenwashing" is commonly known as the practice of making an unsubstantiated or misleading claim about the environmental or social benefits of a product, service, technology or company practice.[68]  Nestlé claims, among others, that its products are sustainable and its relationship with the suppliers improves the lives of the cocoa farmers in the Côte

---

[66] http://www.nestle.com/asset-library/Documents/Creating%20Shared%20Value/Rural_development/Action_Plan_for_FLA_%20cocoa_report.PDF, at 1.

[67] Kamala D. Harris, The California Transparency in Supply Chains : Act A Resource Guide, 2015, https://oag.ca.gov/sites/all/files/agweb/pdfs/sb657/resource-guide.pdf, p. 7

[68] *See* Definition of Greenwashing: https://whatis.techtarget.com/definition/greenwashing.

1 D'Ivoire region.  This could not be further from the truth. Nestlé's products were not

2 sourced from sustainable farming practices but rather off the backs of child slave and

3 trafficked labor.

                      **a.  Equating Slave Labor to an Environmentally Sustainable**

4

5                                    **Practice is Abhorrent**

6       81.    Greenwashing in its own right can be an extremely misleading and

7 oftentimes harmful practice. In Nestlé's case, its actions have perpetuated and funded

8 child slave labor. Nestlé represents that its products not only support sustainable

9 farming practices but provide other general environmental and social benefits. This is

10 difficult to reconcile with the fact that Nestlé actively exploits child slaves in order to

11 obtain an ongoing, cheap supply of cocoa.  Nestlé maintains exclusive supplier/buyer

12 relationships with local farms and/or farmer cooperatives in Côte d'Ivoire and dictates

13 the terms by which such farms produce and supply cocoa to them, including

14 specifically the labor conditions under which the beans are produced.



Child laborer carrying pesticides on his back to spray on cocoa crops

**CLASS ACTION COMPLAINT**

82. As stated above, Nestlé has knowledge of the widespread use of child labor harvesting cocoa on the farms they were working with and purchasing from based on the numerous, well-documented reports of child labor by both international and U.S. organizations. Nestlé cannot claim ignorance while it fosters the farmer relationships in Côte d'Ivoire that perpetuate these abhorrent practices.

83. According to the World Fair Trade Organization, Fair Trade is a trading partnership, based on dialogue, transparency and respect, that seeks greater equity in international trade. It contributes to sustainable development by offering better trading conditions to, and securing the rights of, marginalized producers and workers.[69]

84. Instead of focusing on working to better the conditions of marginalized workers in Côte d'Ivoire, Nestlé purchases directly from farms that employ child slave labor and enjoy the spoils of this practice. Meanwhile, Nestlé makes specific and false assertions in the U.S. to U.S. consumers to deny it is aiding and abetting child slavery, all the while allowing it to continue aiding and abetting child slavery with no measurable loss of U.S. market share.

**b.      There Are No Environmentally Sound Protocols in Place**

85. Nestlé's products bear the fair trade, environmentally sustainable and socially beneficial labeling, seals or certifications. However, there are no such environmentally sound protocols in place concerning the cocoa sourced for Nestlé's products.

86. Not only are the practices by which Nestlé obtains its cocoa supply harmful to the child laborers, but current methods of cocoa production are causing harm to the environment as well. For example, current cocoa farming is causing soil erosion as well as deforestation. When the soil erodes the land becomes less and less fertile and yields decrease.[70] It's no secret that farms' cocoa crop outputs struggle to

---

[69] *See* World Fair Trade Organization: Definition of Fair Trade. https://wfto.com/fair-trade/definition-fair-trade.

[70] Nieberg, O., (2015). Confectionary News: What Is the Environmental Impact of Cocoa

match the increasing demand for chocolate. It is estimated that the demand for chocolate will increase twofold by the year 2050.[71]  As a result, farmers have shifted towards unsustainable, less environmentally conscious practices to meet these demands.[72]

87.    For instance, farmers now use large amounts of pesticides to rid the crops of pests and create larger yields in shorter periods of time. The pesticides employed damage the land and the health of the sprayers applying the pesticide – mainly the child laborers. Furthermore, this excessive spraying of pesticides can also cause the weeds and insects to build up a resistance which will eventually create more harm to the crops and the opposite of its intended effect.[73]

88.    Cocoa farming also contributes to rainforest and old growth forest deforestation.[74]  By clearing land in these forests, farmers decrease the biodiversity and interactions between the many different organisms that naturally live in the area. Not only are numerous habitats destroyed, but nutrient levels overall begin to fall as a result of the poor irrigation and inadequate soil protection.[75] As fresh land becomes scarce, the farmers cut down more forests and destroy more and more of the ecosystem. Nestlé cannot reasonably claim that its products are the result of environmentally sustainable practices when it works in conjunction with these local farms and/or farmer cooperatives in Côte d'Ivoire for its supply while dictating the terms by which such

---

Production. https://www.confectionerynews.com/Article/2015/04/29/What-is-the-environmental-impact-of-cocoa-production.
[71] Bisseleua, D.H.B., Missoup, A.D., Vidal, S. (2009). Biodiversity Conservation, Ecosystem Functioning, and Economic Incentives under Cocoa Agroforestry Intensification. Conservation Biology, 23(5), 1176-1184. https://onlinelibrary.wiley.com/doi/abs/10.1111/j.1523-1739.2009.01220.x
[72] Slomkowski, K. (2005). Chocolate's Dark Side. E: The Environmental Magazine, 16(6), 33-342.
[73] Rice, R.A., Greenburg, R. (2000). Cacao Cultivation and the Conservation of Biological Diversity. Ambio, 29(3), 167-173.
https://repository.si.edu/bitstream/handle/10088/391/Rice2000.pdf
[74] England, P. (1993). Forest Protection and the Rights of Cocoa Farmers in Western Ghana. Journal of African Law, 37(2), 164-176.
[75] Piasentin, F., Klare-Repnik, L. (2004). Gro-Cocoa: Global Research on Cocoa. http://www.cabi.org/Uploads/File/Gro%20Cocoa%20pdfs/gro-cocoa5.pdf.

1    farms produce and supply cocoa to Nestlé.

2         89.    In short, Nestlé greenwashes its products in order to gain consumer

3    support and approval of its "sustainable" practices. In reality, Nestlé contributes to

4    environmentally damaging practices that affect the health of the surrounding

5    ecosystems as well as the child laborers forced to participate in this hazardous work.

6    Nestlé attempts to turn a blind eye as it actively exploits child slaves in order to obtain

7    an ongoing, cheap supply of cocoa, all the while fostering the exclusive relationships

8    in Côte d'Ivoire that perpetuate these harmful operations.

9         **VI.   NESTLE HAS THE ABILITY TO SOLVE THIS PROBLEM**

10        **A.    Don't Put Bogus Seals or Statements on Products**

11        90.    No one forced Nestlé to make false statements on its packaging. While

12   admitting that "no company sourcing cocoa in Côte d'Ivoire and Ghana can fully

13   remove the risk of child labor in its supply chain," Nestlé should not make misleading

14   sustainability claims on its product packaging.

15        **B.    Technological Capability Exists to Achieve Greater Accountability**

16        91.    There are a variety of technological innovations that have been developed

17   to help cocoa producers eradicate child labor, forced labor and trafficking, through true

18   transparency in their global, complex supply chains. These technologies are already

19   used in the supply chains of other commodities, demonstrating that their

20   implementation and application is within the reach of what a large, profitable company

21   like Nestlé can do. As one of the leaders and largest transnational corporations in the

22   agriculture sector, Nestlé has no excuse to turn its back to these solutions while

23   continuing to claim and advertise that it sustainably sources cocoa in Côte d'Ivoire.

24                       <u>**CLASS ACTION ALLEGATIONS**</u>

25        92.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

26   Civil Procedure on behalf of herself and all other similarly situated individuals (the

27   "Class"), defined as follows:

28   ///

All United States residents who purchased Nestle Products marked with the "Nestle Cocoa Plan", "UTZ" seals, "sustainably sourced", or "improv[ing] the lives of farmers" within the United States from the period of April 18, 2015 to the present. Excluded from the Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

93.    At this time, Plaintiff does not know the exact number of Class members; however, given the nature of the claims and the number of stores in the United States selling Nestlé's Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

94.    There is a well-defined community of interest in the questions of law and fact involved in this case. The following questions of law and fact are common to the Class members and predominate over questions that may affect individual Class members:

1.    whether Nestlé misrepresented the environmental and social benefits of products labeled with fair trade, environmentally sustainable and socially beneficial labeling;

2.    whether Nestlé's labeling, marketing, advertising, and/or selling of its products with fair trade, environmentally sustainable and socially beneficial representations constituted an unfair and/or deceptive trade practice;

3.    whether Nestlé participated in and pursued the common course of conduct complained of herein;

4.    whether Nestlé was enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that

it would be inequitable for Nestlé to retain the benefits conferred upon it by Plaintiff and the other Class members; and

95.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, purchased Nestlé's products bearing the fair trade, environmentally sustainable and socially beneficial labeling, seals or certifications in a typical consumer setting and sustained damages from Nestlé's wrongful conduct.

96.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions.  Plaintiff has no interests that conflict with those of the Class.

97.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

98.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Nestlé has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

99.    Nestlé's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Nestlé's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

100.   The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

101.   The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Nestlé.  For example, one court might enjoin Nestlé from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

# COUNT I

## (Unfair and Deceptive Acts and Practices In Violation of the California Consumers Legal Remedies Act)

## (For Injunctive Relief Only)

102.   Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

103.   This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

104.   Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the products at issue for personal, family, or household purposes.

105.   Plaintiff and Nestlé, and the other Class members and Nestlé, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

106.   The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Nestlé in transactions intended to result in, and which did result in, the sale of goods to consumers.

107.   As alleged more fully above, Nestlé has violated the CLRA by falsely representing to Plaintiff and the other Class members that Nestlé's products labeled with the Environmental and socially beneficial seals or certifications were independently verified as having been produced using environmentally sound and socially responsible practices.

108.   As a result of engaging in such conduct, Nestlé has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

109.   Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Nestlé to:

a.  remove and/or refrain from making statements representing that products derived from alleged certified cocoa farms support sustainable farming or provide other general environmental and social benefits; and/or

b.  remove and/or refrain from making representations that the fair trade, environmentally sustainable and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices.

110.  Plaintiff and the other Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

111.  The unfair and deceptive acts and practices of Nestlé, as described above, present a serious threat to Plaintiff and the other Class members.

112.  Plaintiff seeks injunctive relief for violation of this Act.

113.  On April 15, 2019, Plaintiff sent a letter to Nestlé via certified mail that provided notice of Nestlé's violation of the CLRA and demanded that within thirty (30) days from that date, Nestlé correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Nestlé refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. If Nestlé fails to rectify the unlawful, unfair, false, and/or deceptive practices alleged herein, Plaintiff will seek leave to amend the Complaint to seek damages for violation of this Act.

## COUNT II

### (Violation of California's Unfair Competition Law)

114.  Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

115.  By committing the acts and practices alleged herein, Nestlé has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

116.  **Unlawful Conduct.**  Nestlé has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

(a) violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above; and

(b) violations of California's Environmental Marketing Claims Act, Cal. Bus. & Prof. Code §§ 17580-17581, as alleged below:

117.  Nestlé has made misrepresentations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices.

118.  Plaintiff and the other Class members have suffered injury in fact and have lost money or property as a result of Nestlé's violations of California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

119.  In particular, Nestlé has violated and continue to violate California Business and Professions Code § 17580.5, which makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" and which defines an environmental marketing claim to include "any claim contained in the [the FTC's Green Guides]."

120.  The Federal Trade Commission (FTC), whose mission is partly "[t]o prevent business practices that are anticompetitive or deceptive or unfair to consumers," has promulgated industry guidelines, known as the "FTC Green Guides,"[76] that apply to the unfair and deceptive nature of Nestlé's environmental marketing claims.

---

[76] *See*, FTC, *GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMS*, 16 C.F.R. § 260, *available at* http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf (last visited May 13, 2014).

31

**CLASS ACTION COMPLAINT**

121.   Environmental marketing claims that violate the standards of the Green Guides are *per se* unlawful under California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.  The acts and omissions alleged herein are in contravention of the FTC Green Guides and in violation of the EMCA in several respects.  The FTC Green Guides lay out three applicable principles.  First, manufacturers should avoid making general environmental claims without noting specific benefits.[77]   Second, endorsements that appear to be from third-party organizations must be independent and any material connections with the manufacturer must be disclosed.[78]   Additionally, any representations that appear to be endorsement must also comply with the FTC Guide on Endorsements.[79]

122.   Nestlé's use of the environmental and socially beneficial seals or certifications is in contravention of the FTC's Guides on Endorsements because Nestle Cocoa Plan and UTZ do not exercise the expertise that consumers reasonably expect from experts in sustainable farming.[80]   These seals/certifications do not evaluate certified farms as extensively as an expert group on farm sustainability would.

123.   Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff and the other Class members seek an order of this Court that includes, but is not limited to, an order requiring Nestlé to:

---

[77] 16 C.F.R. § 260.3(a) Additionally, such specific claims should be clear, prominent, and specific. *Id.*

[78] *See* 16 C.F.R. § 260.6.  The subsection on certifications and seals of approval says that certifications or seals that do not clearly convey the basis for the certification should not be used because it could be interpreted as making a general environmental claim.  16 C.F.R. § 260.6(d).  The guides recommend that if the positive attributes are too numerous to disclose, the seal of approval may direct consumers to a website that specifies the claims as long as the content on that website is truthful and accurate.  16 C.F.R. § 260.6(e).  This subsection specifies that a certification that conveys that it has been certified by an independent organization, it must disclose material connections between the organization and the manufacturer.  16 C.F.R. § 260.6(b).

[79] 16 C.F.R. § 260.6(b).  The FTC Guide on Endorsements is published at 16 C.F.R. § 255.

[80] *See* 16 C.F.R. § 255.3 ("[t]his evaluation must . . . [be] as extensive as someone with the same degree of expertise would normally need to conduct in order to support the conclusions presented in the endorsement.").

**CLASS ACTION COMPLAINT**

a. remove and/or refrain from making statements representing that products derived from the Nestlé Cocoa Plan and/or have UTZ certification support sustainable practices or provide other general environmental and social benefits; and/or

b. remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices.

124. **Fraudulent Conduct.** Nestlé's acts and practices described above also violate the UCL's proscription against engaging in *fraudulent* conduct.

125. As more fully described above, Nestlé's misleading representations regarding the environmental and socially beneficial seals or certifications is likely to deceive reasonable consumers. Indeed, Plaintiff and the other Class members were unquestionably deceived regarding the Nestlé Cocoa Plan and/or UTZ certification program and the environmental and social benefits of purchasing products bearing the environmental and socially beneficial seals or certifications, as Nestlé's promotion and use of the Nestlé Cocoa Plan and/or UTZ certification program and environmental and socially beneficial seals or certifications misrepresented and/or omitted the true facts concerning the material connections between the Nestlé Cocoa Plan and/or UTZ certification program and the entities it allows to be certified pursuant to the Nestlé Cocoa Plan and/or UTZ standards. Nestlé's promotion and use of the Nestle Cocoa Plan and/or UTZ certification program and environmental and socially beneficial seals or certifications misrepresented and/or omitted the true facts concerning the environmental and social benefits of products labeled with the environmental and socially beneficial seals or certifications. Said acts are fraudulent business practices.

126. **Unfair Conduct.** Nestlé's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

127.   Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Nestlé's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled products.

128.   There is no benefit to consumers or competition from deceptively marketing and labeling products that purport to provide consumers with an environmentally and socially responsible alternative to other products, as determined according to independent standards.

129.   Plaintiff and the other Class members had no way of reasonably knowing that the products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

130.   The gravity of the consequences of Nestlé's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

131.   Nestlé's violations of the UCL continue to this day.

132.   Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Nestlé to:

    a.  remove and/or refrain from making statements representing that products derived from the Nestlé Cocoa Plan and/or UTZ certified farms support sustainable farming or provide other general environmental and social benefits; and/or

    b.  remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that

34

a product has been independently verified as having been produced using environmentally sound and socially responsible practices;

c.  provide restitution to Plaintiff and the other Class members;

d.  disgorge all revenues obtained as a result of violations of the UCL; and

e.  pay Plaintiff's and the Class's attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the Class as follows:

A.  an order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B.  a declaration that Nestlé is financially responsible for notifying Class members of the pendency of this suit;

C.  an award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Class members;

D.  an award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Class members;

E.  an order enjoining Nestlé's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from making statements representing that products derived from Nestlé  and Cocoa Plan/UTZ certified farms support sustainable farming or provide other general environmental and social benefits and/or to remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices;

35

**CLASS ACTION COMPLAINT**

F.  injunctive relief for Class members pursuant to California Civil Code § 1780;

G.  statutory damages in the maximum amount provided by law;

H.  punitive damages in accordance with proof and in an amount consistent with applicable precedent;

I.  an order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

J.  any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

Dated: April 19, 2019                    Respectfully submitted,

**COAST LAW GROUP LLP**

<u>By: /s/ *Helen I. Zeldes*</u>
Helen I. Zeldes, Esq. (220051)
*helen@coastlaw.com*
Amy C. Johnsgard (279795)
*amy@coastlaw.com*
Ben Travis (305641)
*ben@coastlaw.com*

**SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP**
Paul L. Hoffman (71244)
Catherine Sweetser (271142)
John C. Washington (315991)
*hoffpaul@aol.com*
11543 W Olympic Blvd
Los Angeles, CA 90064
Telephone: (310) 396-0731
Facsimile: (310) 399-7040

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REESE LLP**
Michael R. Reese (206773)
*mreese@reesellp.com*
George V. Granade (316050)
*ggranade@reesellp.com*
Carlos F. Ramirez (Pro Hac Vice forthcoming)
*CRamirez@reesellp.com*
8484 Wilshire Blvd.
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

100 West 93rd Street
Sixteenth Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**INTERNATIONAL RIGHTS
ADVOCATES**
Terrence P. Collingsworth (DC Bar # 471830)
*tc@iradvocates.org*
621 Maryland Avenue NE
Washington, D.C. 20002
Telephone: (202) 543-5811
Facsimile: (866) 803-1125

**CLASS ACTION COMPLAINT**

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Renee Walker, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff     San Diego County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Helen I. Zeldes, Esq., Amy C. Johnsgard, Esq., Ben Travis, Esq.
Coast Law Group, LLP, 1140 S. Coast Hwy 101, Encinitas, CA 92024
Tel: (760) 942-8505

## DEFENDANTS

Nestlé USA, Inc., a Delaware Corporation; and DOES 1 to 100

County of Residence of First Listed Defendant     Arlington County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

'19CV0723 L     KSC

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Claims under the CLRA and UCL for misleading product labeling.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE
04/19/2019

SIGNATURE OF ATTORNEY OF RECORD
Helen I. Zeldes, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____