UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE WALKER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NESTLE USA, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:19-cv-723-L-BGS<br><br>**CLASS ACTION**<br><br>**ORDER DENYING DEFENDANT'S SPECIAL MOTION TO STRIKE** |

Pending before the Court in this putative consumer class action alleging deceptive product labeling is Defendant's special motion to strike (doc. no. 18). Plaintiff filed an opposition and Defendant replied. The Court decides the motion on the briefs without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Defendant's motion is denied.

**I.    BACKGROUND**

According to the operative complaint, Defendant is one of the largest food and beverage companies in the world and purchases approximately 414,000 tons of cocoa annually. Plaintiff claims that the statements on Defendant's chocolate product packaging are deceptive because they falsely lead consumers to believe that the products

were produced in accordance with environmentally and socially responsible standards, when they were not. (Doc. no. 15 ("FAC") at 3.)[1] This includes references to the "Nestle Cocoa Plan," "UTZ Certified" and "Sustainably Sourced," and representations that Defendant "Support[s] farmers" and "help[s] improve the lives of []cocoa farmers." (*Id.* at 4, 6.) Plaintiff alleges she purchased Defendant's chocolate products in reliance on the social and environmental benefits prominently featured on the packaging and would not have purchased them had she known they were false. (*Id.* at 3-4.) According to Plaintiff, the labels are deceptive because Defendant sources its cocoa from West African cocoa plantations which rely on child labor and child slave labor, and which contribute to deforestation and use other practices harmful to the environment. (*Id.* at 2, 4-5, 7-16.)

Plaintiff alleges violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, on her own behalf as well as on behalf of a putative nationwide class. She seeks damages and injunctive relief. On behalf of the putative class she also seeks monetary relief in the form of restitution and disgorgement, as well as injunctive relief. The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Defendant moves for dismissal pursuant to California Civil Procedure Code § 425.16 ("Anti-SLAPP Law").[2]

## II.   DISCUSSION

California legislature enacted the Anti-SLAPP Law to stem "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code §

---

[1]   All page citations in this Order refer to those generated by the court's CM/ECF system.

[2]   SLAPP is an acronym for "strategic lawsuits against public participation." *Navellier v. Sletten*, 29 Cal.4th 82, 85 & n.1 (2002).

425.16(a).  "[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims."  *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).[3]

Based on policy considerations, section 425.16 is construed broadly.  Cal. Civ. Proc. Code § 425.16(a).  Under the statute,

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

*Id.* § 425.16(b)(1).  Accordingly, ruling on an anti-SLAPP motion entails a two-step process:

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech . . ..  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.

*Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) (internal quotation marks, citations and brackets omitted).

In response to a "disturbing abuse" of the Anti-SLAPP Law, the California legislature subsequently enacted two exemptions, Cal. Civ. Proc. Code § 425.17(a), including the "commercial speech exemption," *L.A. Taxi Cooperative, Inc. v. Independent Taxi Owners Assoc.,* 239 Cal. App. 4th 918, 930 (2015) (citing Cal. Civ. Proc. Code § 425.17(c)), relied upon by Plaintiff in her opposition.  Whether the

---

[3] Unless otherwise noted, internal quotation marks, alterations, citations, and footnotes are omitted throughout.

exemption applies goes to the issue whether the defendant has made a threshold showing under section 425.16(b) that the challenged cause of action is one arising from protected activity. *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 308 (2014).  However, the burden is on the plaintiff to show that the exemption applies. *Id.*  As relevant here, § 425.17(c) provides:

> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods . . . arising from any statement or conduct by that person if both of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's . . . business operations, goods, or services, that is made for the purpose of . . . promoting, or securing sales or leases of . . . the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . notwithstanding that the conduct or statement concerns an important public issue.

"The legislative history indicates this legislation is aimed squarely at false advertising claims and is designed to permit them to proceed without having to undergo scrutiny under the anti-SLAPP statute." *Demetriades*, 228 Cal. App. 4th at 309.

Defendant contends that the statements on its Nestle Cocoa Plan website regarding efforts to combat child and slave labor in West Africa and reduce the negative effect of cocoa farming on the environment bring it into the scope of the Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(b), (e)(3)-(4), because they concern an issue of public interest.  (Doc. no. 18-1 at 14.)  It further claims that the statements on product labels are "inextricably intertwined" with the website content because they reference the website.  (*Id.* at 22, 29; doc. no. 25 at 7.)

Plaintiff counters that Defendant cannot make the threshold showing under the Anti-SLAPP Law because the operative complaint is not challenging the content of

Defendant's website but only the deceptive statements on product labels. (Doc. no. 22 (Opp'n") at 12.) In addition, Plaintiff contends that the statements are expressly exempt from the Anti-SLAPP Law by the commercial speech exemption. (*Id.* at 13-15 (citing Cal. Civ. Proc. Code §425.17(c).)

It is undisputed that Defendant is engaged primarily in the business of selling goods. The statements on its chocolate product labels include factual representations regarding the products and Defendant's business operations as they relate to cocoa farming and its effect on the environment. The prominent placement of the statements on the product labels shows that the statements were made for the purpose of promoting or securing sales of the products to potential buyers. Accordingly, Plaintiff's deceptive advertising claims fall within the commercial speech exemption.

Defendant nevertheless contends that the reference to the Nestle Cocoa Plan website on the product labels makes the content of the website inextricably intertwined with the product labels. As the relevant product package is depicted in the operative complaint, the reference to the Nestle Cocoa Plan web address is included immediately after the following statement: "Supporting farmers for better chocolate. The NESTLE Cocoa Plan works with UTZ to help improve the lives of cocoa farmers and the quality of their products. www.nestlecocoaplan.com."[4] (FAC at 7.) The statement is presented below the "Nestle Cocoa Plan" logo. (*Id.*)

At this stage, "the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages," "the court decides only whether the claims arise from protected activity." *Coretronic Corp. v. Cozen O'Connor*, 192 Cal. App. 4th 1381, 1390, 1389 (2011). "[I]n deciding whether the 'arising from' requirement is met, courts should consider the elements of the challenged claim and what

---

[4] Nestle is a registered mark. UTZ is "a third-party certifier which holds itself out as the benchmark for the sustainable production of . . . cocoa." (FAC at 6 (footnote omitted).)

actions by the defendant supply those elements and consequently form the basis for liability. . . . In other words, . . . the protected activity must supply elements of the challenged claim." *Rand Resources, LLC v. Carson*, 6 Cal.5th 610, 621 (2019).

Defendant's argument that the content of its website is inextricably intertwined with the statements on the product label is unpersuasive for three reasons. First, the gravamen of Plaintiff's false advertising claims is the contention that the product labels display deceptive statements. (*See, e.g.,* FAC at 3 ("Nestle's deceptive labeling misleads consumers into believing their products are procured in accordance with environmentally and socially responsible standards, when it knows they are not."); *see also id.* at 6-7.) The website content is not a part of Plaintiff's false advertising claims, which attack product labeling. (*See* Opp'n at 15.) Accordingly, the scope of Plaintiff's legal claims is limited to product labeling. Even if the website contained sufficient information to dispel the allegedly deceptive message on the product labels, an issue as to which the Court expresses no opinion, this would not undermine Plaintiff's claims. *See, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *see also Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018). Website content therefore does not supply the elements of Plaintiff's false advertising claims.

Second, the discussion of Defendant's website in the complaint provides extensive context and evidentiary support to Plaintiff's claims. This does not alter the analysis under the Anti-SLAPP Law. Even in the absence of the commercial speech exemption under § 425.17(c), and even if the website content includes discussion of matters of public interest as required by § 426.16(b)(1), an issue the Court does not decide herein, a plaintiff's inclusion of allegations as "evidentiary support or context for the claim" is not sufficient to convert defendant's commercial speech into constitutionally protected free speech. *See Rand Resources,* 6 Cal.5th at 621.

Finally, the reference to the website is included on the product label solely as a web address and immediately following statements intended to promote sales (*see id.* at 7), thus demonstrating that the purpose of the website reference was the same -- to promote sales, as required by § 425.17(c). The product labels, including the reference to the website, "on their face were designed to further [Defendant's] private interest" in increasing sales of its chocolate products. *L.A. Taxi Cooperative,* 239 Cal. App. 4th at 929. Defendant's product labels are not about environmental sustainability and labor conditions in general. They refer to Defendant's environmental and labor-related business operations specifically. *See id.* at 928. Accordingly, in context, the reference to the website does not negate the purely commercial statements on the product labels.[5]

Defendant's reliance on *Kronemyer v. Internet Movie Database, Inc.*, 150 Cal. App. 4th 941 (2007), is unavailing. *Kronemyer* is distinguishable because the court found that the defendant's speech was not directed at sales, but was informative in nature, and was therefore not commercial speech at all. *Id.* at 948-49.

Similarly, Defendant's reliance on *DuPont Merck Pharmaceutical Co. v. Super. Ct. (Newman)*, 78 Cal. App. 4th 563 (2000), is unpersuasive. *DuPont* predates the commercial speech exemption, which was enacted in 2003, as well as *Kasky v. Nike, Inc.,* 27 Cal.4th 939 (2002), which defined the legal standard for commercial speech in the context of false advertising. The commercial speech exemption was drafted to track the standard established in *Kasky*. *JAMS, Inc. v. Super. Ct. (Kinsella),* 1 Cal. App. 5th 984, 994 (2016). As relevant to Defendant's contention that the reference to a web address renders the statements on its product labels inextricably intertwined with the website content, *Kasky* explained:

> [S]tatements may properly be categorized as commercial notwithstanding the fact that they contain discussions of important public issues, and . . .

---

[5] If Plaintiff is successful in obtaining injunctive relief, such relief would apply to any deceptive statements on Defendant's product labels and would not interfere with the content of Defendant's website. *See Demetriades*, 228 Cal. App. 4th at 312.

> advertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech[. A]dvertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.

27 Cal.4th at 957 (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67-68 (1983).) Defendant's inclusion of a web address on its product label therefore does not entitle its advertising statements to constitutional protection under the Anti-SLAPP Law.

The Court finds § 425.16 does not apply to Plaintiffs' claims because they are exempt by § 425.17(c). Accordingly, the Court need not consider the issues whether Plaintiff's claims are also exempt by § 425.17(b), and whether the parties met their respective burdens under § 425.16(b)(1). Defendant's motion is denied.

**IT IS SO ORDERED.**

Dated: June 16, 2020

_____
Hon. M. James Lorenz
United States District Judge