THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
PERLETTE JURA, SBN 242332
  pjura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Counsel for Defendant Nestlé USA, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE WALKER,<br><br>           Plaintiff,<br><br>   v.<br><br>NESTLÉ USA, INC., a Delaware Corporation; and DOES 1 TO 100,<br><br>           Defendants. | CASE NO. 3:19-cv-00723-L-KSC<br><br>**DEFENDANT NESTLÉ USA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>**Hearing:**<br>Date:  August 3, 2020<br>Time:  10:30 a.m.<br>Place:  Courtroom 5B<br>Judge:  Hon. M. James Lorenz<br><br>* Pursuant to Local Rules, no oral argument will be held on this motion |

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II. BACKGROUND ............................................................................................. 2

    A.    Nestlé USA's Chocolate Products ......................................... 2

    B.    Other Plaintiffs' Failed Efforts To Hold Chocolate Manufacturers Liable For Issues In The Global Cocoa Supply Chain ............................. 4

    C.    Plaintiff Repackages The Same Claims With This Lawsuit ..................... 5

III. LEGAL STANDARD .................................................................................... 6

IV. ARGUMENT ................................................................................................. 7

    A.    Plaintiff Fails To Plead Her Claims With The Requisite Particularity ......................................................................................... 7

    B.    Plaintiff Fails To State A Plausible Claim For Relief ............................ 10

        1.    Plaintiff cannot manufacture a claim by misreading the statements and removing them from the surrounding context. ..... 10

        2.    Plaintiff has not plausibly alleged that any of the challenged statements are false or misleading. .................................................. 12

        3.    No reasonable consumer would be misled. ................................... 18

        4.    The Nestlé Cocoa Plan website confirms that none of the challenged statements are false or misleading............................... 20

V. CONCLUSION ............................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
    275 F. Supp. 3d 910 (N.D. Ill. 2017)..........................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................6, 7, 15

*Barber v. Nestlé USA, Inc.*,
    154 F. Supp. 3d 954 (C.D. Cal. 2015)........................................2, 5, 13, 20

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ...................................................................12, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................6

*Bondali v. Yum! Brands, Inc.*,
    620 F. App'x 483 (6th Cir. 2015) ................................................................13

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018) ......................................................................21

*Brockey v. Moore*,
    107 Cal. App. 4th 86 (2003) ........................................................................10

*Brown v. Starbucks Corp.*,
    No. 18-cv-2286, 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ......................22

*Cheslow v. Ghiradelli Chocolate Co.*,
    --- F. Supp. 3d ---, 2020 WL 1701840 (N.D. Cal. Apr. 8, 2020) ...............19

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) .........................................................................13

*Dana v. Hershey Co.*,
    180 F. Supp. 3d 652 (N.D. Cal. 2016)........................................................2, 5

*Davis v. HSBC Bank Nev. N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ......................................................................18

*De Rosa v. Tri-Union Seafoods, LLC*,
    No. 15-cv-7540, 2016 WL 524059 (C.D. Cal. Jan. 15, 2016) ...................2, 5

ii

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................................................................ 7, 10, 19

*Ehlers v. Ben & Jerry's Homemade, Inc.*,
No. 19-cv-0194, 2020 WL 2218858 (D. Vt. May 7, 2020) ........................ 11, 21, 22

*Figy v. Frito-Lay N. Am., Inc.*,
67 F. Supp. 3d 1075 (N.D. Cal. 2014) ..................................................................... 19

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ............................................................................... 7, 11

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ......................................................................... 8

*Gillman v. Boston Sci. Corp.*,
No. 11-cv-3067, 2012 WL 892239 (D. Or. Jan. 27, 2012) ..................................... 16

*Hairston v. S. Beach Beverage Co., Inc.*,
No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .............................. 12

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) ................................................................... 11, 14, 19

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ............................................................................*passim*

*Hughes v. Big Heart Pet Brands*,
No. 15-cv-8007, 2016 WL 524057 (C.D. Cal. Jan. 15, 2016) .............................. 2, 5

*Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*,
638 F. App'x 778 (10th Cir. 2016) ......................................................................... 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................... 7, 8

*Kelly v. Cape Cod Potato Chip Co.*,
81 F. Supp. 3d 754 (W.D. Mo. 2015) ...................................................................... 16

*Khoja v. Orexigent Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................... 3, 15

*Kline v. Iovate Health Scis. U.S.A., Inc.*,
No. 15-cv-2387, 2017 WL 1135580 (S.D. Cal. Mar. 27, 2017) ............................... 9

iii

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..................................................... 19

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ........................................................... 10, 18

*Manuel v. Pepsi-Cola Co.*,
    No. 17-cv-7955, 2018 WL 2269247 (S.D.N.Y. May 17, 2018) ............................. 11

*Maxwell v. Unilever U.S., Inc.*,
    No. 12-cv-1736, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ............................ 19

*McCoy v. Nestlé USA, Inc.*,
    173 F. Supp. 3d 954 (N.D. Cal. 2016) ............................................... 2, 4, 20

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
    No. 18-cv-1538, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019) .............................. 22

*Nat'l Consumers League v. Wal-Mart Stores, Inc.*,
    No. 2015 CA 7731 B, 2016 WL 4080541 (D.C. Super. Ct. July 22,
    2016) ............................................................................... 13

*NLRB v. Federbush Co.*,
    121 F.2d 954 (2d Cir. 1941) .......................................................... 12

*Nowrouzi v. Maker's Mark Distillery, Inc.*,
    No. 14-cv-2885, 2015 WL 4523551 (S.D. Cal. July 27, 2015) ............................ 22

*Organic Consumers Ass'n v. Bigelow Tea Co.*,
    2017 CA 008375 B (D.C. Super. Ct. Oct. 31, 2018) .................................... 16

*Painter v. Blue Diamond Growers*,
    757 F. App'x 517 (9th Cir. 2018) .................................................... 19

*Painter v. Blue Diamond Growers*,
    No. 17-cv-2235, 2017 WL 4766510 (C.D. Cal. May 24, 2017) ............................. 7

*Park v. Welch Foods, Inc.*,
    No. 12-cv-6449, 2013 WL 5405318 (N.D. Cal. Sept. 26, 2013) ........................... 9

*Pelayo v. Nestlé USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ......................................... 10, 16, 18

*Podpeskar v. Dannon Co., Inc.*,
    No. 16-cv-8478, 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) ............................. 15

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) ...................................................................... 6

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870 (2017) .................................................................... 19

*Ruiz v. Darigold, Inc./Nw. Dairy Ass'n*,
    No. 14-cv-1283, 2014 WL 5599989 (W.D. Wash. Nov. 3, 2014) ........................... 13

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ...................................................................... 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) .................................................................... 6

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017) ........................................................ 8

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...................................................................... 8

*Swearingen v. Healthy Beverage, LLC*,
    No. 13-cv-4385, 2017 WL 1650552 (N.D. Cal. May 2, 2017) ............................... 20

*Tomasella v. Hershey Co.*,
    No. 18-cv-10360, ECF No. 34 (D. Mass. Jan. 30, 2019) ..................................... 5

*Tomasella v. Nestlé USA, Inc.*,
    --- F.3d ---, 2020 WL 3249059 (1st Cir. June 16, 2020) ..................................... 5

*Tomasella v. Nestlé USA, Inc.*,
    364 F. Supp. 3d 26 (D. Mass. 2019) ............................................................ 5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................... 7

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) .......................................................... 3

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................... 21

*Wirth v. Mars Inc.*,
    No. 15-cv-1470, 2016 WL 471234 (C.D. Cal. Feb. 5, 2016) .............................. 2, 5

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................................... 22

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..................................................................... 7

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ............................................................. 6

Cal. Bus & Prof. Code § 17850.5 ..................................................................... 17

Cal. Civ. Code § 1714.43 ................................................................................. 23

Cal. Civ. Code § 1750 *et seq.* ........................................................................... 6

**Rules**

Fed. R. Civ. P. 9 ........................................................................................... 7, 8

Fed. R. Civ. P. 12 ............................................................................................. 6

**Regulations**

Fed. Trade Comm., Guides for the Use of Environmental Marketing
   Claims, Proposed Revisions to Guidelines,
   75 Fed. Reg. 63,552 (Oct. 15, 2010) ................................................... 16, 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS   CASE NO. 19CV723

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Renée Walker is seeking to stretch  California's Unfair Competition Law and Consumers Legal Remedies Act beyond their limits to impose liability on Nestlé USA, Inc. for allegedly misleading consumers into believing that it has managed to produce certain "chocolate products" free from the social and environmental conditions in West Africa, which supplies the vast majority of the world's cocoa.

Plaintiff alleges that the world's raw cocoa is grown, in substantial part, on locally owned farms in West Africa, where some farmers use unethical labor and environmental practices.  She asserts that the raw cocoa grown in these conditions works its way through the international cocoa supply chain into certain finished "chocolate products," including some sold by Nestlé USA.  The Ninth Circuit has squarely rejected the theory that chocolate companies have an obligation to affirmatively disclose details about conditions in West Africa on their product labels.  *Hodsdon v. Mars, Inc*., 891 F.3d 857, 868 (9th Cir. 2018) (affirming dismissal with prejudice).  Plaintiff's lawsuit repackages this defunct theory, arguing that the labels of unspecified "chocolate products" affirmatively misrepresented the conditions under which cocoa may have been farmed.

No reasonable consumer could come to the same conclusion.  Indeed, the first page of Plaintiff's First Amended Complaint admits that Nestlé USA openly discusses the challenging conditions in the international cocoa supply chain and actively supports efforts to combat those conditions.  And a straightforward analysis of the particular statements that Plaintiff claims are misleading confirms that no reasonable consumer would be deceived as a matter of law.  Plaintiff's First Amended Complaint is not simply devoid of legal merit—it also attacks one of the very entities that is trying to help address the global social issues facing the Ivory Coast and the surrounding areas.  The First Amended Complaint should be dismissed without leave to amend for the following reasons:

*First*, Plaintiff has not pled her claims with the specificity Rule 9(b) requires.  She claims to have purchased Nestlé "chocolate products," but she never identifies any

particular product, much less states when or where she purchased it.   Absent this information, Plaintiff cannot identify which specific statements she allegedly saw and relied on, and thus fails to allege particularized facts demonstrating that she was misled. Because all of her claims are grounded in fraud, this failure to allege particularized facts dooms her entire pleading.

*Second*, Plaintiff fails to plead a plausible claim for relief.  Plaintiff does not allege that she purchased the products photographed in her pleading.  And even assuming for the sake of argument that she did, none of the statements on those products are false, and none of them could reasonably be construed as a guarantee that each and every cocoa bean used in the manufacture of Nestlé USA chocolate products was harvested from farms using Plaintiff-approved employment and agricultural practices.   Plaintiff therefore has not plausibly pled that reasonable consumers would be misled in the way she alleges.

This lawsuit is just the latest in a series of attempts to use California consumer protection laws to attack U.S.-based entities for alleged third-party labor practices around the world.   The courts have unanimously rejected such efforts by dismissing those cases have at the earliest opportunity.[1]  This Court should do the same.

## II.  BACKGROUND

### A.    Nestlé USA's Chocolate Products

Plaintiff alleges that Nestlé USA is one of the world's largest producers of food and beverages.  First Am. Compl., ECF No. 15 ("FAC") ¶ 9.  Plaintiff concedes that the labeling for each of Nestlé USA's several chocolate products varies, *id.* ¶¶ 15–19, but she asserts that some of the company's chocolate products carry a logo for the Nestlé

---

[1]  *See Hodsdon*, 891 F.3d at 868; *McCoy v. Nestlé USA, Inc.*, 173 F. Supp. 3d 954 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 462 (9th Cir. 2018); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018); *Barber v. Nestlé USA, Inc.*, 154 F. Supp. 3d 954 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018); *Hughes v. Big Heart Pet Brands*, No. 15-cv-8007, 2016 WL 524057 (C.D. Cal. Jan. 15, 2016), *aff'd*, 740 F. App'x 876 (9th Cir. 2018); *De Rosa v. Tri-Union Seafoods, LLC*, No. 15-cv-7540, 2016 WL 524059 (C.D. Cal. Jan. 15, 2016), *aff'd*, 730 F. App'x 466 (9th Cir. 2018); *Wirth v. Mars Inc.*, No. 15-cv-1470, 2016 WL 471234 (C.D. Cal. Feb. 5, 2016), *aff'd*, 730 F. App'x 468 (9th Cir. 2018).

Cocoa Plan, which is the focus of her lawsuit.  *Id.* ¶ 15.  Plaintiff does not allege which "chocolate products" she purchased, nor does she allege whether the products she purchased even carried the Nestlé Cocoa Plan logo.

As the FAC shows, on those products where the Nestlé Cocoa Plan logo appears, the statements associated with the logo vary.  Sometimes the logo appears without accompanying statements.   Sometimes the logo is accompanied with a statement, "Sustainably Sourced Through Nestlé Cocoa Plan Certified Through UTZ."  *Id.* ¶ 19. On some packages, the logo is accompanied by an explanation of the Nestlé Cocoa Plan. For example, the FAC depicts packages of Toll House morsels and hot cocoa mix that state adjacent to the logo: "Supporting farmers for better chocolate.  The Nestlé Cocoa Plan works with UTZ Certified to help improve the lives of the cocoa farmers and the quality of their products."  *Id*.  This explanation is accompanied by a link to the Nestlé Cocoa Plan website, www.nestlecocoaplan.com.




The Nestlé Cocoa Plan website provides more detail about the initiative.[2]  Though the specific language on the website changes from time to time, the website has always shared information about the initiative's programming, and continues to do so.  During

---

[2]   As explained in the accompanying Request for Incorporation-by-Reference and Judicial Notice, in ruling on a motion to dismiss, the court may "consider documents that are incorporated by reference but not physically attached to the complaint if they are central to plaintiffs' claim and no party questions their authenticity."  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 882–83 (C.D. Cal. 2013); *see also Khoja v. Orexigent Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Plaintiff's FAC repeatedly cites to the Nestlé Cocoa Plan website to support her claims arising from the challenged label statements, *see* FAC ¶¶ 33 & n.25, 34 & n.27, 40 & n.33, and contains at least twelve other citations to Nestlé's website, *see* FAC nn. 1, 4, 5, 6, 20, 29, 31, 62, 63, 64, 65, 66.

the pertinent time period, the website explained that the Nestlé Cocoa Plan "aims to improve the lives of cocoa farmers and the quality of their products."[3]  It candidly acknowledged that "[n]o company sourcing cocoa here can guarantee they've eliminated the risk of children working in their supply chain,"[4] and explained the efforts and progress-to-date toward tackling the problem of child labor.[5]

Importantly, as Plaintiff acknowledges in the FAC, *see, e.g.*, ¶¶ 1, 46, the Nestlé Cocoa Plan website stated:  "Stamping out child labour will be a long, difficult process. We're making progress, but [as] long as there is child labour in our cocoa supply chain, there will always be more to do."[6]  Nowhere on the package of any of its chocolate products or on the Nestlé Cocoa Plan website does Nestlé USA lead the customer into thinking that it has solved the serious problem of forced labor, let alone eradicated it in its entirety.

## B.  Other Plaintiffs' Failed Efforts To Hold Chocolate Manufacturers Liable For Issues In The Global Cocoa Supply Chain

This is not the first attempt to use consumer deception statutes to hold food and beverage companies liable for alleged labor and environmental issues occurring in the global cocoa supply chain.  In 2015, private plaintiffs filed labeling actions against Nestlé USA and two large chocolate manufacturers, Mars and Hershey, alleging that they deceived consumers by failing to disclose that some of the cocoa used in their products may have originated at farms in West Africa that allegedly use forced labor and child labor.

These cases all failed.  The Ninth Circuit held in *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), that the food and beverage companies did not deceive consumers by failing to disclose alleged labor practices on the product label.  Several federal district courts had reached the same conclusion.  *See McCoy v. Nestlé USA, Inc.*, 173 F. Supp. 3d

---

[3]  Ex. A, http://www.nestlecocoaplan.com/
[4]  Ex. B, http://www.nestlecocoaplan.com/better-lives/
[5]  Ex. C, https://www.nestlecocoaplanreport.com/
[6]  Ex. B, http://www.nestlecocoaplan.com/better-lives/

954 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 462 (9th Cir. 2018); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018).[7]  The First Circuit has also rejected virtually identical omission claims.  *Tomasella v. Nestlé USA, Inc.*, --- F.3d ---, 2020 WL 3249059 (1st Cir. June 16, 2020), *aff'g Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26 (D. Mass. 2019); *Tomasella v. Mars, Inc.*, No. 18-cv-10359, ECF No. 34 (D. Mass. Jan. 30, 2019); *Tomasella v. Hershey Co.*, No. 18-cv-10360, ECF No. 34 (D. Mass. Jan. 30, 2019).

Courts have also repeatedly held outside the cocoa context that the alleged failure to disclose problems with labor practices in a supply chain is not deceptive.  *See, e.g.*, *Barber v. Nestlé USA, Inc.*, 154 F. Supp. 3d 954 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018) (pet food); *Hughes v. Big Heart Pet Brands*, No. 15-cv-8007, 2016 WL 524057 (C.D. Cal. Jan. 15, 2016), *aff'd*, 740 F. App'x 876 (9th Cir. 2018) (pet food); *De Rosa v. Tri-Union Seafoods, LLC*, No. 15-cv-7540, 2016 WL 524059 (C.D. Cal. Jan. 15, 2016), *aff'd*, 730 F. App'x 466 (9th Cir. 2018) (seafood); *Wirth v. Mars Inc.*, No. 15-cv-1470, 2016 WL 471234 (C.D. Cal. Feb. 5, 2016), *aff'd*, 730 F. App'x 468 (9th Cir. 2018) (pet food).

## C.    Plaintiff Repackages The Same Claims With This Lawsuit

Plaintiff has essentially repackaged the same claims that the courts have rejected. Instead of alleging that Nestlé USA "failed to disclose" material information about labor conditions on the packaging, Plaintiff now asserts that Nestlé USA affirmatively misrepresented the labor conditions and environmental impact of the production of cocoa in the supply chain.  FAC ¶ 3.  She does not identify which products she bought, or which specific statements she relied upon, but her pleading generally describes the

---

[7]   The plaintiffs in these cases abandoned their claims alleging false or misleading statements on an affirmative misrepresentation theory after the court in *Barber v. Nestlé USA, Inc.*, held that no plausible theory of deception could be alleged based on Nestlé USA's aspirational statements about improving labor conditions in its seafood supply chain.  154 F. Supp. 3d at 963–64.  They proceeded only on a "fraudulent omission" theory.

statements at issue as: (1) "Nestlé Cocoa Plan"; (2) "UTZ" seals; (3) "sustainably sourced"; or, (4) "improv[ing] the lives of farmers." *Id.* ¶ 92 (alteration in original).

Plaintiff asserts that these statements "falsely represent[ed] . . . that Nestlé's products labeled with the Environmental and socially beneficial seals or certifications were independently verified as having been produced using environmentally sound and socially responsible practices," *id.* ¶ 107, and that she was "unquestionably deceived regarding . . . the environmental and social benefits of purchasing products" bearing these statements, *id.* ¶ 126. The FAC details at length the global problem of forced labor and environmental degradation, and then alleges that certain Nestlé USA product labels lead consumers to believe that Nestlé USA has conquered these issues. *Id.* ¶ 91.

Plaintiff purports to bring claims on behalf of a putative nationwide class under California law. *Id.* ¶ 92. She asserts causes of action under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), and under the unlawful, fraudulent, and unfair prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").

### III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint is required to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Legal conclusions need not be taken as true merely because they are couched as factual allegations. *Twombly*, 550 U.S. at 555. After stripping away the "conclusory statements," the Court must rely on its "judicial experience and common sense," to determine whether the remaining factual allegations "allow[] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678–79, and would justify subjecting the defendant to the costs and burdens of discovery.  The context of the challenged advertising is crucial to this analysis on a motion to dismiss.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (applying California and New York law).

Because all of Plaintiff's claims are "grounded in fraud," Rule 9(b) requires dismissal unless "the circumstances of the fraud [are] stated with particularity." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (applying Rule 9(b) to CLRA and UCL claims); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (holding that where plaintiffs choose "to allege in the complaint that the defendant has engaged in fraudulent conduct," then "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

Dismissal with prejudice is appropriate where any amendment by Plaintiff would be futile.  *Painter v. Blue Diamond Growers*, No. 17-cv-2235, 2017 WL 4766510, at *3 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th Cir. 2019) (dismissing "patently implausible" false or misleading labeling claim with prejudice where "the names of Defendant's products will not change, and Plaintiff already alleged what she believed were the most advantageous statements made on Defendant's website"); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that dismissal with prejudice is appropriate where "it [is] clear that the plaintiffs ha[ve] made their best case and ha[ve] been found wanting").

## IV.  ARGUMENT

### A.   Plaintiff Fails To Plead Her Claims With The Requisite Particularity

Plaintiff has not identified a single Nestlé USA chocolate product that she purchased, much less described what was specifically on the label and explained how she reasonably relied on any label statements.  This is a fundamental pleading defect that warrants dismissal.

In order to plead a cognizable claim under California's consumer protection statutes, Plaintiff must first plead that she purchased a product because she saw and relied on the challenged label statements. *See, e.g.*, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1013–14 (N.D. Cal. 2014) (finding UCL and CLRA claims deficient under Rule 9(b) where plaintiff had "not alleged with sufficient detail what representations he reviewed, when he first reviewed them, or which ones he relied on in deciding to purchase" the product at issue); *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1082–83 (N.D. Cal. 2017) ("Plaintiffs must allege reliance to show they have statutory standing to pursue each of their claims" under the CLRA and UCL). Consumer deception claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b), which requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns*, 567 F.3d at 1124 (applying Rule 9(b) to claims under the CLRA and UCL). In practice, this means that a plaintiff must allege "an account of the time, place and specific content of the false representations," *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation and internal quotation marks omitted), and the complaint must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged[,]" *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The FAC satisfies none of these requirements. Plaintiff never identifies *which* products she purportedly purchased, *when* she purchased them, *what* specific label statements were on the products, *where* she purchased them, or *how many times* she purchased them. *See generally* FAC.[8] Tellingly, while the FAC includes photographs

---

[8] Even among the products Plaintiff's FAC references in passing, several have not been owned by Nestlé USA for over two years, including Butterfinger, Nestlé Crunch, and Baby Ruth. *See* FAC ¶ 1; Ex. G, Martinne Geller & Francesca Landini, *Health-conscious Nestlé sells U.S. candy to Ferrero for $2.8 billion*, Reuters (Jan. 16, 2018), https://www.reuters.com/article/us-nestle-m-a-ferrero/health-conscious-nestle-sells-u-s-candy-to-ferrero-for-2-8-billion-idUSKBN1F5268.

of certain chocolate products, it never alleges that these products were the ones purchased by Plaintiff.[9]  *See id.* ¶ 19.

Plaintiff's allegations are plainly insufficient to satisfy Rule 9(b).  Her summary assertion that she "purchased Defendant Nestlé's chocolate products," and that those undefined "products" were "labeled with the 'Nestlé Cocoa Plan[,]' 'UTZ Certified[,]' 'Certified through UTZ[,]' and 'Sustainably Sourced' labels on them purporting to, among other things, 'Support[] farmers for better chocolate' and 'help improve the lives of []cocoa farmers,'" FAC ¶ 8, is no substitute for identifying the particular products and labels she purchased and relied upon.  Product labels vary.  Courts routinely dismiss false or misleading labeling claims where the plaintiff fails to provide sufficient detail regarding her supposed purchases and the label statements at issue.

For example, courts have dismissed claims where the plaintiffs "generally allege[d] they purchased [the defendant's] products within the last four years" but did "not allege which products they purchased or when they purchased them," *Kline v. Iovate Health Scis. U.S.A., Inc.*, No. 15-cv-2387, 2017 WL 1135580, at *4 (S.D. Cal. Mar. 27, 2017); where the plaintiffs' complaint spanned thirty-nine pages but still did "not allege that they personally saw and/or relied on any misleading advertisements or website statements in particular," *Park v. Welch Foods, Inc.*, No. 12-cv-6449, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013); and where the plaintiff failed to "allege with . . . specificity the dates on which the purchases were made" or "allege at what retailer or retailers in the state of California she purchased" the product at issue, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010).  Plaintiff's claims here fail to include these details, and her general allegation that she purchased "chocolate

---

[9]   In her Opposition to Nestlé USA's Motion to Strike, Plaintiff claimed that she "allege[d] which products she purchased (Nestlé Mini Morsels) and how they were labeled – in fact, Plaintiff included a color photograph of the actual product in her complaint."  ECF No. 22 at 30.  But the FAC contains no allegations to that effect—it never states that Plaintiff purchased Mini Morsels.  Moreover, the complaint contains photographs of at least three different products, only one of which appears to be Mini Morsels.  *See* FAC ¶ 19.

products," with generalized descriptions of the labels, leaves her unable to satisfy the heightened pleading burden applicable to her claims.

## B.    Plaintiff Fails To State A Plausible Claim For Relief

Because controlling Ninth Circuit precedent makes clear that Nestlé USA has no affirmative obligation to disclose potential supply chain challenges on the product label, *Hodson*, 891 F.3d at 862, Plaintiff attempts to show that the products carry an affirmative statement that is likely to deceive a reasonable consumer.  Her attempt fails.  Where a court can determine upon review of the packaging at issue that a reasonable consumer would not be deceived, as is the case here, dismissal is appropriate because the claims fail as a matter of law.  *See, e.g.*, *Ebner*, 838 F.3d at 965–66 (dismissing claims alleging consumer deception as to the amount of lip product in a tube where the package contained no deceptive statements and no rational consumer would be misled); *Pelayo v. Nestlé USA, Inc.*, 989 F. Supp. 2d 973, 977–78 (C.D. Cal. 2013) (applying test of whether a reasonable consumer is "likely to be deceived" to claims under the CLRA and UCL); *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 506 (2003).

### 1.    Plaintiff cannot manufacture a claim by misreading the statements and removing them from the surrounding context.

Much of Plaintiff's FAC consists of a wide-ranging review of the complex socioeconomic challenges of forced labor and environmental degradation that plague Côte d'Ivoire and neighboring regions.  But to the extent Plaintiff's lawsuit is attempting to challenge product labeling, it is necessary to examine the plain text of the label statements in context, as "the primary evidence in a false advertising case is the advertising itself."  *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003).  As mentioned above, Plaintiff does not identify any specific product label statements she relied on, which is sufficient grounds for dismissal.  But even if that deficiency is set aside for the sake of argument, ***none of the four statements identified in general terms are misrepresentations***, namely: (1) "Nestlé Cocoa Plan"; (2) "UTZ" seals; (3) "sustainably sourced"; and (4) "improv[ing] the lives of farmers."  FAC ¶ 92 (alteration in original).

As the product images in the FAC reveal—and as Plaintiff attempts to obfuscate by rephrasing the statements in general terms—the challenged claims often appear connected to each other on the product labels:  "Sustainably Sourced Through Nestlé Cocoa Plan Certified Through UTZ."  *See* FAC ¶ 19.  The Nestlé Cocoa Plan logo is often accompanied by further explanation of the initiative: "Supporting farmers for better chocolate.  The Nestlé Cocoa Plan works with UTZ Certified to help improve the lives of the cocoa farmers and the quality of their products.  www.nestlecocoaplan.com." *Id.*  Although Plaintiff also challenges the statement "improv[ing] the lives of cocoa farmers," the FAC *altered* the quote and omitted the preceding words.  The full statement says that the Nestlé Cocoa Plan "works with UTZ Certified to *help* improve the lives of the cocoa farmers."  FAC ¶ 19 (emphasis added).  The statements Plaintiff challenges are not the freestanding, unadorned guarantees regarding the supply chain that Plaintiff portrays.  When viewed in their full context, the statements reflect that certain products are sourced with ingredients certified by third-party UTZ, as part of an initiative to help improve conditions on cocoa farms.

In a consumer labeling case such as this one, it is axiomatic that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742 (applying California and New York law); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (explaining, in claim challenging green drop symbol on Fiji water as false or misleading, "[t]he context of the symbol is vitally important").  "Context is crucial especially where, as here, Plaintiff cannot point to an actual misrepresentation, but instead relies exclusively on [her] interpretation of a phrase [s]he characterizes as conveying the *impression* that" the cocoa in the products was sourced under certain conditions.  *Ehlers v. Ben & Jerry's Homemade, Inc.*, No. 19-cv-0194, 2020 WL 2218858, at *6 (D. Vt. May 7, 2020); *Manuel v. Pepsi-Cola Co.*, No. 17-cv-7955, 2018 WL 2269247, at *8 (S.D.N.Y. May 17, 2018) ("'Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their

aggregate take their purport from the setting in which they are used.'" (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941))).

Plaintiff's strategy of generally paraphrasing the statements she wishes to challenge, and removing them from their context, does not allow her to avoid a motion to dismiss. *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-cv-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) ("Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA . . . or UCL claim.")  Here, the context makes clear to reasonable consumers that ingredients in certain products have been certified by a third party (UTZ).  That statement cannot reasonably be read as a guarantee that the "chocolate products" Plaintiff purchased would meet her subjective and preferred farming practices. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (plaintiffs' unmet weight loss expectations did not mean "diet" soft drinks were misleading).

### 2. Plaintiff has not plausibly alleged that any of the challenged statements are false or misleading.

Taken in full, and placed in proper context, all of the statements Plaintiff challenges are accurate descriptions of the Nestlé USA's efforts and aspirations that cannot form the basis for a fraud-based claim under California's Unfair Competition Law or Consumers Legal Remedies Act.

**(a)  "The Nestlé Cocoa Plan works with UTZ Certified to help improve the lives of the cocoa farmers and the quality of their products" and Nestlé Cocoa Plan logo.**  Plaintiff challenges this statement, but does not allege that the Nestlé Cocoa Plan is fictional, or that the particular products bearing these logos were *not* sourced through that Plan, or that UTZ is working with the Nestlé Cocoa Plan.  To the contrary, Plaintiff concedes that (1) the Nestlé Cocoa Plan was established in 2009; (2) it has developed a Child Labor Monitoring and Remediation System; and (3) it uses community auditors to help monitor labor conditions at participating co-ops in the Ivory Coast. *Id.* ¶¶ 33–34.

Plaintiff nevertheless claims that the statement is deceptive because the Nestlé Cocoa Plan name or logo "misleads [consumers] into thinking their product is child labor and slave-labor free." *Id.* ¶ 32. But neither the Nestlé Cocoa Plan logo nor any statements about it make guarantees regarding particular labor practices. The actual language on the product package states that the Nestlé Cocoa Plan "works with UTZ Certified to *help improve* the lives of the cocoa farmers and the quality of their products." FAC ¶ 19 (emphasis added). This language does not suggest (or even imply) that the social challenges in West Africa have been solved; to the contrary, it reflects that there is more work to be done, and that Nestlé USA is contributing to improvement. Statements such as these, which "reflect nuanced assessments of the current situation, are aspirational statements," "have not been shown to be false in any material respect," and are not misleading as a matter of law. *Ruiz v. Darigold, Inc./Nw. Dairy Ass'n*, No. 14-cv-1283, 2014 WL 5599989, at *4 (W.D. Wash. Nov. 3, 2014) (dismissing claims challenging statements in defendant's corporate social responsibility report); *see also Barber*, 154 F. Supp. 3d at 964 (dismissing claims alleging misrepresentations regarding labor conditions in seafood sourcing where defendant "is not shy about identifying for consumers the rules and expectations for its suppliers, but it does not mislead them into thinking that its suppliers abide by those rules and meet those expectations in every instance.").[10]

---

[10] *See also Nat'l Consumers League v. Wal-Mart Stores, Inc.*, No. 2015 CA 7731 B, 2016 WL 4080541, at *5 (D.C. Super. Ct. July 22, 2016) ("[T]his Court finds that the majority of statements referenced by NCL are aspirational statements. The statements were not false on their face and were general in nature outlining the expectations of each retailer and efforts by each retailer to place pressure on its suppliers to be more socially responsible."); *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 490 (6th Cir. 2015) ("Yum's statement is not actionable because it was a statement of aspiration made in Yum's corporate Code of Conduct rather than an assertion of objective fact made in a public filing or press release."); *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 794–95 (10th Cir. 2016) (affirming dismissal of Lanham Act false advertising claims based on "inherently aspirational" statements); *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (describing as "inactionable puffery" statements that are "explicitly aspirational, with qualifiers such as 'aims to'").

Plaintiff suggests that perhaps the Nestlé Cocoa Plan could do more to dramatically improve the lives of all West African farmers, but that does not render false the statement that "the Nestlé Cocoa Plan works with UTZ Certified to help improve the lives of the cocoa farmers and the quality of their products."  Plaintiff's argument also improperly points to statistics regarding general conditions in the Ivory Coast or on cocoa farms at large—*not* conditions on the farms that work with the Nestlé Cocoa Plan. For example, Plaintiff alleges that "the number of children working in dangerous conditions on cocoa farms in Côte d'Ivoire has ***increased*** considerably in recent years[.]"  FAC ¶ 30 (emphasis in original); *see also, e.g.*, *id*. ¶ 33 ("Child labor has increased in Côte d'Ivoire since Nestlé instituted its 'Cocoa Plan.'").  But the fact that the systemic problem of child labor has not been solved in the region more broadly does not make false the statements about the Nestlé Cocoa Plan's efforts and aspirations to help those farmers who are participating in the program.

To the extent Plaintiff also alleges that the Nestlé Cocoa Plan statements "falsely represent[] . . . that Nestlé's products . . . were independently verified," FAC ¶ 107; *see also id.* ¶ 126, her claim is not plausible.  As detailed below, the Nestlé Cocoa Plan *is* certified by a third party: UTZ.  To the extent Plaintiff takes issue with use of the Nestlé Cocoa Plan logo, the logo cannot reasonably imply independent verification.  "Nestlé" appears prominently in the name of the **Nestlé** Cocoa Plan.  *See Hill*, 195 Cal. App. 4th at 1305 ("[A] green drop on the back of every bottle appears right next to the website name, 'fijigreen.com,' further confirming to a reasonable consumer that the green drop symbol is by Fiji water, not an independent third party organization[.]").

**(b)  "UTZ" Seals.**  Plaintiff challenges the use of "'UTZ' seals," but not because the products bearing the seals lack UTZ's imprimatur.  Instead, Plaintiff asserts that UTZ has limitations, and she wishes the UTZ program had even higher standards and achieved even more dramatic results.  But Plaintiff's subjective desires do not make UTZ's certifications false or misleading.

Nestlé USA's products and programs are, in fact, UTZ certified—and Plaintiff does not dispute this.  Moreover, Plaintiff has not alleged *any* facts to suggest that UTZ is not an independent arbiter, or that it has any improper connections to Nestlé USA. *See Iqbal*, 556 U.S. at 678 (holding a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (citation and internal quotation marks omitted)).

Plaintiff's allegations suggesting the UTZ program has not been sufficiently successful are no basis for fraud based-claim, and, in any event, are refuted by documents incorporated by reference into the FAC.  *See Khoja*, 899 F.3d at 1002.  The "Towards sustainable cocoa in Côte d'Ivoire" study, FAC ¶ 43, reports:  "UTZ farmers have seen improvements in their lives, working and living conditions, whereas non-UTZ farmers have experienced fewer changes.  UTZ farmers perceive improvements in water and soil, but non-UTZ farmers note few changes towards a better environment."[11]  It adds, "Training and adherence to the UTZ Code of Conduct generally is associated with better crops, incomes and environmental outcomes and knowledge is applied in practice. There were also unanticipated outcomes at producer and company level and the professionalization of farmers and cooperatives; increased intensity and broader range of services alongside certification and increased farmer satisfaction with cooperatives."[12]

The study acknowledges that there is still more to be done, but Plaintiff's subjective desire for different outcomes is not a sufficient basis to find an accurate label statement false or misleading.  *See Podpeskar v. Dannon Co., Inc.*, No. 16-cv-8478, 2017 WL 6001845, at *4 (S.D.N.Y. Dec. 3, 2017) (dismissing claims challenging 'natural' claims based on the allegation that animals were fed GMO crops where plaintiff's interpretation of "natural" was based on plaintiff's "own feelings").

---

[11]  Ex. D, Towards sustainable cocoa in Côte d'Ivoire, at 9, https://utz.org/wp-content/uploads/2018/06/Towards-Sustainable-Cocoa-in-C%C3%B4te-dIvoire-2018.pdf.

[12]  *Id.* at 10.

**(c) "Sustainably Sourced."**   Plaintiff argues that the phrase "sustainably sourced" is misleading because as a general matter, West African cocoa farms do not live up to Plaintiff's farming standards.  But Plaintiff cannot allege that a reasonable consumer would have the same expectations upon reading the statement.  The FAC concedes that "[s]ustainability is a broad concept" that can variously "encompass[] a wide range of environmental and social practices," and acknowledges that major companies, including Unilever and Barry Callebaut, differ in how they discuss the term. FAC ¶ 65.  The Federal Trade Commission ("FTC") agrees, finding in 2010 that the term "sustainable" "has no single environmental meaning to a significant number of consumers or that it conveys non-environmental characteristics (e.g., durable or long-lasting)."  Ex. E, Fed. Trade Comm., Guides for the Use of Environmental Marketing Claims, Proposed Revisions to Guidelines, 75 Fed. Reg. 63,552, 63,585 (Oct. 15, 2010); Ex. F, Fed. Trade Comm., The Green Guides, Statement of Basis and Purpose, at 258 (stating the Commission "lacks a basis" to provide guidance regarding how consumers perceive the term "sustainable," "given the wide range of meanings of 'sustainable'").[13]

Absent any plausible allegation of a single, objective meaning of "Sustainably Sourced," shared by reasonable consumers, Plaintiff's claims challenging Nestlé USA's use of this term are not actionable.  *Organic Consumers Ass'n v. Bigelow Tea Co.*, 2017 CA 008375 B (D.C. Super. Ct. Oct. 31, 2018) (dismissing claims challenging "sustainable" statement where plaintiff did "not give any facts regarding consumer belief or cite to any consumer survey that could render this claim more than a non-actionable opinion"); *cf. Pelayo*, 989 F. Supp. 2d at 979 (dismissing claims where plaintiff failed to allege an objective definition of 'natural' shared by reasonable consumers); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) (same).

---

[13]  As explained in the accompanying Request for Incorporation-by-Reference and Judicial Notice, "[t]he court may take judicial notice of the contents of the Federal Register and [agency] documents, which are matters of public record, without converting defendant's motion to dismiss into one for summary judgment."  *Gillman v. Boston Sci. Corp.*, No. 11-cv-3067, 2012 WL 892239, at *2 n.2 (D. Or. Jan. 27, 2012).

To the extent Plaintiff claims that Nestlé USA's use of the phrase "Sustainably Sourced" is "unlawful," she is incorrect.  *See* FAC ¶¶ 117–24.   The California Environmental Marketing Claims Act makes it unlawful to make "any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" and incorporates claims covered by the FTC Green Guides.  Cal. Bus & Prof. Code § 17850.5; FAC ¶¶ 69–70.  But FTC expressly *declined* to include "sustainable" among the claims covered by the FTC Green Guides.  Instead, FTC stated that it was "*unable* to provide specific advice on sustainable as an environmental marketing claim" and determined that the term "is *not appropriate* for general guidance."  Ex. E, 75 Fed. Reg. at 63,583 (emphasis added).  FTC specifically *rejected* the notion that "sustainable" is an unqualified "general environmental claim" equivalent to "eco-friendly."  *Id.*  The agency concluded exactly the opposite; survey evidence established that "consumers view sustainable claims differently than general environmental benefit claims" and the term "contains no cue alerting consumers that it refers to the environment."  *Id.*  If Plaintiff disagrees with FTC's approach, she may take her concerns to the agency directly.  But she cannot use this lawsuit to rewrite FTC's considered conclusions regarding whether "sustainable" claims fall within the Green Guides under the guise of a private product labeling suit.

Even if Plaintiff could adequately allege that "Sustainably Sourced" has a fixed meaning relating to the environment (she cannot), the FAC acknowledges that Nestlé USA *has* committed to efforts to help improve the environment, including through an "Action Plan" aimed at preventing deforestation and promoting reforestation.  *See* FAC ¶ 25 & n.20.  Plaintiff's dissatisfaction with Nestlé USA's extending the term of its commitment to end deforestation (*id.*) does not make Nestlé USA's statements regarding its environmental efforts false.

*        *        *

In their proper context, none of the statements Plaintiff challenges is plausibly false; in fact, she concedes as much through her own allegations acknowledging Nestlé

USA's efforts and aspirations aimed at improving conditions in the cocoa supply chain in the Ivory Coast and elsewhere. Her subjective wish for more progress does not constitute a plausible claim for false or misleading labeling under the UCL or CLRA.

### 3.    No reasonable consumer would be misled.

Unable to plausibly allege that Nestlé USA has made any false statements on its product labels, Plaintiff contends that the challenged label statements create a misleading impression that Nestlé USA's products were produced entirely outside the context of forced labor and environmental degradation. FAC ¶ 32. But this assertion arises only from Plaintiff's own subjective interpretations, inferences, and assumptions. Because no reasonable consumer would share Plaintiff's idiosyncratic and distorted reading of the challenged label statements, her claims fail as a matter of law.

As the Ninth Circuit has recognized, "a representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment" of consumers. *Davis v. HSBC Bank Nev. N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (citation omitted). "Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark. Is it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in this country? Of course not." *Lavie*, 105 Cal. App. 4th at 506. Instead, an allegation of misleading labeling "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Pelayo*, 989 F. Supp. 2d at 977–78 (citations and internal quotation marks omitted).

Here, Plaintiff unreasonably re-casts the products' truthful descriptions as promises about the products' attributes and sourcing that nowhere appear on the labels. No reasonable consumer would construe Nestlé USA's truthful statement, "Sustainably Sourced Through Nestlé Cocoa Plan Certified Through UTZ," as a guarantee that forced labor has been eradicated from West Africa, or that local farming has no environmental impact.

The Ninth Circuit has repeatedly held that dismissal of these types of claims of

false or misleading labeling is required where plaintiffs read truthful label statements as promises that products have attributes mentioned nowhere on the label. *Becerra*, 945 F.3d at 1229–30 (alleged interpretation of the term "diet" in soft drink brand names to convey weight loss promise was not reasonable); *Ebner*, 838 F.3d at 966 (alleged assumption regarding amount of lip product was not reasonable when consumers could see the product); *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018) ("[I]t is not plausible that a reasonable consumer would 'assume that two distinct products have the same nutritional content.'"). District courts and California courts also routinely reject similar suits that stretch the label statements beyond the language of the claims.[14]

In *Hill*, for example, the plaintiff challenged the use of a green drop image on Fiji water bottles, alleging—as Plaintiff does here—that this image was a form of "greenwashing," conveying that Fiji water was environmentally superior to other waters. 195 Cal. App. 4th at 1298. But the court held that a green drop was just a green drop: "Does the green drop on Fiji water bottles convey to a reasonable consumer in the circumstances that the product is endorsed for environmental superiority by a third party organization? No." *Id.* at 1304. It affirmed dismissal of the claims, declining to endorse the plaintiff's unsupported interpretation of the logo. *Id.* at 1307.

Just as in *Hill*, Plaintiff here bases her claim on an idiosyncratic reading of Nestlé USA's label statements that no reasonable consumer would share. And just as in *Barber*,

---

[14] *See, e.g.*, *Cheslow v. Ghiradelli Chocolate Co.*, --- F. Supp. 3d ---, 2020 WL 1701840, at *5 (N.D. Cal. Apr. 8, 2020) (rejecting as unreasonable claims based on consumer's alleged interpretation of "white chips" to mean white chocolate); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("A reasonable consumer is unlikely to interpret the statement 'gluten free' to mean that [the products] . . . are otherwise healthful."); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) (holding it was "utterly implausible" that reasonable consumers would see label statements and "draw conclusions about other totally unrelated nutritional characteristics" or that the products "made only positive contributions to a diet"); *Maxwell v. Unilever U.S., Inc.*, No. 12-cv-1736, 2018 WL 1536761, at *4 (N.D. Cal. Mar. 29, 2018) (finding implausible plaintiff's allegations that the words "phosphoric acid" and "citric acid" led her to believe Pepsi did not contain artificial flavors); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 878 (2017) (affirming dismissal of claim that use of Gap and Banana Republic names on clothing labels represented that the items were of brand name quality, rather than factory store clothing).

19

no reasonable consumer who reads the aspirational statements on Nestlé USA's product labels "could conclude that Nestlé's suppliers comply with Nestlé's requirements in all circumstances." 154 F. Supp. 3d at 964. While Nestlé USA aims to improve the lives of cocoa farmers, it "does not mislead [consumers] into thinking that its suppliers abide by those rules and meet those expectations in every instance." *Id.* In the omissions context, courts have acknowledged that Nestlé USA has not concealed the systemic problems that affect the cocoa supply chain from consumers and is not obligated to affirmatively disclose potential labor issues associated with the supply chain on the product label. *McCoy*, 173 F. Supp. 3d at 967; *Hodsdon*, 891 F.3d at 865 ("[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL" (alterations in original and internal quotation marks omitted)). That same principle controls the outcome here.

Plaintiff would preclude Nestlé USA from sharing any information with consumers about its ongoing efforts to improve conditions in West Africa until the labor challenges and environmental impact of cocoa farming have been completely eradicated. But no reasonable consumer would read the products' label statements to provide such a guarantee.

### 4. The Nestlé Cocoa Plan website confirms that none of the challenged statements are false or misleading.

For the reasons set forth above, none of the label statements challenged by Plaintiff is false or misleading when considered in their proper context. But even if there were any ambiguity regarding the label claims, the Nestlé Cocoa Plan website provides further context for the challenged statements with specific details regarding the goals, progress, and ongoing efforts to help improve conditions in the Ivory Coast and confirms that Plaintiff's claims are not plausible.

The product labels cited by Plaintiff refer consumers to Nestlé Cocoa Plan's website, and in doing so, incorporate the additional information provided by the website into the labels. *Swearingen v. Healthy Beverage, LLC*, No. 13-cv-4385, 2017 WL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS          CASE NO. 19CV723

1650552, at \*4 (N.D. Cal. May 2, 2017) ("Since Plaintiffs specifically allege that they 'read and reasonably relied on the labels' on Defendants' products, the materials they read include the statements on Healthy Beverage's website incorporated into the labels.").  Plaintiff concedes that the Nestlé Cocoa Plan website provides accurate information about the current coverage of the Nestlé Cocoa Plan and recognizes that problems in the supply chain still exist and there is still work to be done.  FAC ¶¶ 1, 46.  At the time Plaintiff filed her FAC, the Nestlé Cocoa Plan website homepage stated that it "aims to improve the lives of cocoa farmers and the quality of their products."[15]  The "Better Lives" page of the Nestlé Cocoa Plan website stated, "No company sourcing cocoa here can guarantee they've eliminated the risk of children working in their supply chain, but we are determined to tackle the problem."[16]

Because Nestlé USA's products do not falsely represent that the products were produced outside the social and environmental conditions afflicting West Africa, and the website makes clear that Nestlé USA has not guaranteed the sourcing of every cocoa bean, her claims are not plausible.  *Ehlers*, 2020 WL 2218858, at \*7 ("Because neither Ben & Jerry's products nor its website represents that its ingredients are 'sourced exclusively' from Caring Dairy farms, Plaintiff's entire claim is grounded on a single phrase in a single heading on a multipage website which is neither false nor misleading when considered as a whole.").

Plaintiff will argue that the website statements are irrelevant and she was not required to review them, pointing to the Court's Order Denying Defendant's Special Motion to Strike.  *See* ECF No. 31 at 6 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).  But *Williams* held only that that a manufacturer cannot cure an affirmative misrepresentation on the front of the package with truthful information elsewhere.  552 F.3d at 939–40; *see also Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1168 (2018) (explaining the "front-back dichotomy" problem as arising when a back

---

[15]  Ex. A, http://www.nestlecocoaplan.com/.
[16]  Ex. B, http://www.nestlecocoaplan.com/better-lives/.

label "conflict[s] with" information on the front label); *Brown v. Starbucks Corp.*, No. 18-cv-2286, 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019) (finding no "bait-and-switch problem" where "there is no deceptive act to be dispelled" on the front packaging). That is not the case here.

As set forth above, Plaintiff does not plausibly allege that any of the challenged label statements are false. And courts have routinely recognized that, if a label is ambiguous, reasonable consumers will not be entitled to disregard clarifying information provided elsewhere. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017) ("[C]onsumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight."); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) ("Here, in contrast to *Williams*, the packaging at issue contained no affirmative misrepresentations and the pictures were simply not likely to mislead a reasonable consumer."); *Ehlers*, 2020 WL 2218858, at *6 ("While Plaintiff is correct that reasonable consumers should not be required to search through the website and SEARs to clarify a heading on a webpage, it is equally unreasonable for a consumer to interpret a single phrase in a single heading without reference to the contents of the section that immediately follow the heading.").

Thus, as courts have held in analogous labeling claims, Plaintiff "cannot plausibly contend defendant intends to deceive consumers about the nature of its processes when its label clearly describes the process and points consumers to its website." *Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14-cv-2885, 2015 WL 4523551, at *8 (S.D. Cal. July 27, 2015) (dismissing claims challenging "handmade" statements on whisky products); *Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 18-cv-1538, 2019 WL 424703, at *4–5 (S.D. Cal. Feb. 4, 2019) (dismissing claim challenging "grass-fed" statement on butter products as misleadingly suggesting cows were "100% grass-fed" where product website stated that cows were fed 85-90% grass).

Moreover—further differentiating this case from *Williams*—the California Transparency in Supply Chains Act requires companies like Nestlé USA to disclose on the internet their "efforts to eradicate slavery and human trafficking from [their] direct supply chain[s] for tangible goods offered for sale." Cal. Civ. Code § 1714.43(a)(1). Nestlé USA complies with its statutory requirement to provide this information on a dedicated website page, and Plaintiff nowhere alleges that Nestlé USA failed to provide this information. Far from concealing potential labor issues in its supply chain, Nestlé USA complies with California law mandating specific disclosures about those issues. The company should not now face liability on Plaintiff's implausible theory that consumers are free to disregard those specific website disclosures in favor of making unwarranted assumptions about Nestlé USA's supply chain based on a distorted and out-of-context reading of truthful label statements.

As the FAC acknowledges, Nestlé USA's website explicitly recognizes that the cocoa supply chain is impacted by forced labor and environmental challenges in West Africa. FAC ¶¶ 1, 46. These concessions—including in the opening paragraph, no less—confirm that no reasonable consumer could have understood the challenged statements in the way Plaintiff suggests. Plaintiff cannot manufacture misrepresentations where there are none. She has failed to plausibly plead any claim for relief based on alleged false or misleading labeling.

## V. CONCLUSION

Plaintiff has not plausibly pled that reasonable consumers share her idiosyncratic, out-of-context, and distorted reading of the truthful statements on Nestlé USA's chocolate products. She has already had an opportunity to amend her complaint, and her claims remain legally insufficient. Nestlé USA respectfully requests the Court dismiss Plaintiff's claims with prejudice.

Dated: July 1, 2020                          Respectfully submitted,

                                             By: s/ *Theodore J. Boutrous, Jr.*
                                                  Theodore J. Boutrous, Jr.

                                             *Counsel for Defendant Nestlé USA, Inc.*