THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
PERLETTE JURA, SBN 242332
  pjura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Counsel for Defendant Nestlé USA, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE WALKER,<br><br>                    Plaintiff,<br><br>        v.<br><br>NESTLÉ USA, INC., a Delaware Corporation; and DOES 1 TO 100,<br><br>                    Defendants. | CASE NO. 3:19-cv-00723-L-DEB<br><br>**DEFENDANT NESTLÉ USA, INC.'S NOTICE OF MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION FOR INTERLOCUTORY APPEAL**<br><br>**Hearing:**<br>Date:  May 23, 2022<br>Time:  10:30 a.m.<br>Place:  Courtroom 5B<br>Judge:  Hon. M. James Lorenz<br><br>* No Oral Argument Unless Requested By The Court |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that that on April 25, 2022, or as soon thereafter as this matter may be heard, Defendant Nestlé USA, Inc. will and hereby does move this Court, under Local Rule 7.1, to reconsider its Order denying Defendant's Motion to Dismiss or, in the alternative, to certify that Order for interlocutory appeal under 28 U.S.C. § 1292(b).

As explained more fully in the accompanying Memorandum of Points and Authorities, Nestlé USA brings its Motion for Reconsideration on the grounds that (1) the Court misinterpreted the "reach of the system" chart, which Plaintiff misrepresented in her Complaint. That chart does not, as the Court held, show either that the number of children working on cocoa farms has "nearly doubled" or that the child-labor problem has grown "more severe." In addition, after incorporating Exhibit A into Plaintiff's Complaint, the Court did not consider the entirety of that Exhibit, as it was required to do.

If the Court disagrees that reconsideration is appropriate, then, as explained more fully in the accompanying Memorandum of Points and Authorities, Nestlé USA respectfully requests that the Court certify for interlocutory appeal a controlling legal question: whether product labels that call attention to a company's efforts to improve complex global social issues in a supply chain can as a matter of law mislead a reasonable consumer.

This motion is based on this Notice of Motion and Motion; the concurrently filed Memorandum of Points and Authorities; the Declaration of Timothy W. Loose in Support of Defendant's Motion For Reconsideration Or, In The Alternative, Certification For Interlocutory Appeal; the pleadings and papers on file herein; any oral argument that may be heard by the Court; and any other matters that the Court deems appropriate.

1   DATED:  April 25, 2022        GIBSON, DUNN & CRUTCHER LLP

2

3                                   By: s/ *Theodore J. Boutrous, Jr.*

4                                     Theodore J. Boutrous, Jr.

5                                 *Counsel for Defendant Nestlé USA, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Defendant's Motion For Reconsideration or, In the Alternative, Interlocutory Appeal
CASE NO.  19cv723

1    THEODORE J. BOUTROUS, JR., SBN 132099
       tboutrous@gibsondunn.com
2    CHRISTOPHER CHORBA, SBN 216692
       cchorba@gibsondunn.com
3    PERLETTE JURA, SBN 242332
       pjura@gibsondunn.com
4    TIMOTHY W. LOOSE, SBN 241037
       tloose@gibsondunn.com
5    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue
6    Los Angeles, CA 90071
     Telephone:  213.229.7000
7    Facsimile:  213.229.7520

8    *Counsel for Defendant Nestlé USA, Inc.*

9

10                    UNITED STATES DISTRICT COURT

11                  SOUTHERN DISTRICT OF CALIFORNIA

12   RENEE WALKER,                        CASE NO. 3:19-cv-00723-L-DEB

13              Plaintiff,                **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
14         v.                             DEFENDANT'S MOTION FOR
                                          RECONSIDERATION OR, IN THE
15   NESTLÉ USA, INC., a Delaware         ALTERNATIVE, CERTIFICATION
     Corporation; and DOES 1 TO 100,     FOR INTERLOCUTORY APPEAL**
16
                Defendants.              **Hearing:**
17                                        Date:  May 23, 2022
                                          Time:  10:30 a.m.
18                                        Place:  Courtroom 5B
                                          Judge:  Hon. M. James Lorenz
19
                                          * No Oral Argument Unless Requested By
20                                                   The Court

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II. BACKGROUND ........................................................................................ 3

    A.    The Complaint And Nestlé USA's Motion To Dismiss......................... 3

    B.    The Court's Order ................................................................................ 4

III. LEGAL STANDARDS ............................................................................. 5

    A.    Motion For Reconsideration ............................................................... 5

    B.    Motion To Certify For Interlocutory Appeal, In The Alternative............ 6

IV. ARGUMENT............................................................................................ 6

    A.    Nestlé USA Respectfully Asks This Court To Reconsider Its Order. ....... 6

        1.    The "Reach Of The System" Chart Does Not Show That "The Number Of Children Working On Cocoa Farms Has Nearly Doubled" Or Grown More Severe. ................................ 7

        2.    After Incorporating Exhibit A By Reference, The Court Was Required To Consider Exhibit A In Its Entirety. ......................... 9

    B.    Alternatively, The Court Should Certify Its Order For Interlocutory Appeal. ........................................................................ 11

V. CONCLUSION ........................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barber v. Nestle USA, Inc.*,
  154 F. Supp. 3d 954 (C.D. Cal. 2015), *aff'd*,
  730 F. App'x 464 (9th Cir. 2018).................................................................. 1, 3, 12

*Cerone v. Reliance Standard Life Ins. Co.*,
  2014 WL 12539711 (S.D. Cal. Jan. 31, 2014).....................................................5

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015)...............................................................9

*D.H. ex rel. Harrington v. Poway Unified Sch. Dist.*,
  2014 WL 129070 (S.D. Cal. Jan. 14, 2014) ........................................................6

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ............................................................................ 14

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022)...................................................................... 6, 11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ....................................................................... 9, 11

*Myers v. Starbucks Corp.*,
  536 F. Supp. 3d 657 (C.D. Cal. 2021).......................................................... 1, 12, 13

*Myers v. Starbucks Corp., et al.*,
  No. 20-cv-0335, Slip Op. (C.D. Cal. July 29, 2020).......................................... 12

*Rugg v. Johnson & Johnson*,
  2018 WL 3023493 (N.D. Cal. June 18, 2018)................................................... 12

*Tomasella v. Nestlé USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020) .............................................................................. 13

*United States v. Dieter*,
  429 U.S. 6 (1976) ...............................................................................................5

*United States v. Jones*,
  608 F.2d 386 (9th Cir. 1979) ..............................................................................5

ii

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*United States v. Martin,*
226 F.3d 1042 (9th Cir. 2000) ........................................................................ 5

**Other Authorities**

Jeffrey S. Jacobson, *In Search of the Elusive "Reasonable Consumer,"*
FAEGRE DRINKER,
https://www.faegredrinker.com/en/insights/publications/2020/7/in-
search-of-the-elusive-reasonable-consumer ................................................ 14

Nestlé Cocoa Plan Progress Report 2020 at 15, available at
https://www.nestlecocoaplan.com/sites/site.prod.nestlecocoaplan.com/
files/2021-11/Nestle%CC%81%20Cocoa%20Plan%20Annual%
20Report%202020.pdf .......................................................................... 7, 8, 9

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

The Nestlé Cocoa Plan has dedicated hundreds of millions of dollars to make cocoa farming more sustainable, and to help improve the lives of farmers.  The Cocoa Plan made the very first effort in the industry to introduce a comprehensive Child Labor Monitoring & Remediation System (CLMRS), and by 2019 had helped over 87,000 children in several ways, including building or refurbishing 49 schools, delivering school supply kits to 19,152 children, training 157 groups of farmers in improved agricultural and labor practices, and providing awareness education to 593,925 individuals.  The Cocoa Plan also ***increased*** its impact rate on bringing children out of dangerous forms of labor, from 51% in 2017, to 55% in 2019.  By 2019, the Cocoa Plan had devoted more than $240 million to these efforts, and it has done more since.  All of these facts appeared in a document that the Court expressly incorporated by reference, but none are mentioned in the Court's Order Denying Defendant's Motion to Dismiss.  *See* Dkt. No. 56 at 5:8–9 (incorporating by reference Dkt. No. 45-4).

The only statistic mentioned in the Order relates to an increase in the total number of children <u>monitored</u> by the Cocoa Plan between 2017 and 2019.  Because that figure was isolated from facts in the same document showing all that the Cocoa Plan has done, the Court credited Plaintiff's erroneous assumption that an increase in the number of children being monitored must mean child labor problems have grown more severe under the Cocoa Plan, when in fact, as discussed in more detail below, the exact opposite is true.  By giving credence to a distorted reading of the data, the Court allowed Plaintiff to proceed with the very type of false advertising claims that have previously been dismissed with prejudice.  *See, e.g.*, *Myers v. Starbucks Corp.*, 536 F. Supp. 3d 657, 664–65 (C.D. Cal. 2021) (dismissing claim that "sustainably sourced cocoa through Cocoa Horizons" is misleading); *Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954, 964 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018) (dismissing deception claims based on statements about combatting forced labor in the seafood supply chain).

1    Defendant Nestlé USA does not bring this motion lightly, but due to the

2  importance of these issues, it respectfully submits that reconsideration is appropriate.

3  The data that the Order interprets as showing that matters have grown worse actually

4  support the opposite conclusion.  The increased monitoring reflected in the "reach of the

5  system" chart confirms that the Cocoa Plan's influence is growing, and that the plan is

6  having an impact.  In 2019, 15,740 children had received at least one form of help from

7  the Cocoa Plan's efforts:

8

9

| Reach of the system | 2017 | 2019 |
|---|---|---|
| Number of children aged 5-17 being monitored | 40,728 | 78,580 |
| Number of children identified in child labor and currently in the system | 7,002 | 18,283 |
| Child labor rate | 17% | 23% |
| Number of children who received at least one form of remediation | Not measured | 15,740 |

15  Concluding that this chart somehow shows the issue of child labor has doubled and

16  become more severe under the Cocoa Plan (as Plaintiff misled the Court to do) is not

17  only a logical fallacy, it also is contradicted by the remainder of the report, which the

18  Court incorporated by reference.  The very next chart in the report contains the "Impact

19  Rate" and shows that the Cocoa Plan's impact grew in 2019:

20

21

| Impact rate | 2017 | 2019 |
|---|---|---|
| Direct comparison vs 2017 | 51% | 55% |
| Under revised Ivorian law* | not applicable | 49% |

* Applying new Ivorian law which classifies use sharp tools as hazardous work.

Dkt. No. 45-4 at 6–7.  When the full document is considered, the proper conclusion to draw from the data is that the Cocoa Plan is having a positive impact on the individuals it is able to reach.  This defeats Plaintiff's effort to contort the data, and also dooms Plaintiff's effort to claim that statements about helping to improve the lives of farmers and sustainably sourcing cocoa through the Cocoa Plan are misleading.

Alternatively, if the Court does not reconsider its Order, then Nestlé USA respectfully requests that it certify for interlocutory appeal a controlling legal question: whether product labels that call attention to a company's efforts to improve complex global social issues in a supply chain can as a matter of law mislead a reasonable consumer.  There are substantial grounds for disagreement over this question.  Under existing case law, other courts have dismissed similar claims and held that companies do not need to demonstrate meaningful results in order to describe their efforts to combat labor and environmental issues in the global supply chain.  *See Myers* and *Barber*, *supra* at 1.  Here, the Court held otherwise, concluding that the purported absence of meaningful results made statements about the Cocoa Plan's efforts to tackle labor and environmental issues misleading.  If the Ninth Circuit holds (as Nestlé USA believes it will) that claims which seek to punish companies for genuine attempts to improve complex global social issues in a supply chain fail as a matter of law, then this case will be dismissed.  Accordingly, an interlocutory appeal would materially advance resolution of the matter.

## II.  BACKGROUND

### A.    The Complaint And Nestlé USA's Motion To Dismiss

After the Court dismissed Plaintiff Renée Walker's First Amended Complaint but granted leave to amend, Plaintiff filed the operative Second Amended Complaint on April 19, 2021.  Dkt. No. 44 (Compl.).  Plaintiff claimed to be a "frequent baker" who "regularly purchased" Nestlé USA's "semi-sweet morsels, semi-sweet mini morsels" and "hot cocoa mix."  *Id.* ¶ 8.  Plaintiff alleged the products were "labeled with the 'Nestlé Cocoa Plan' 'UTZ Certified' 'Certified through UTZ' and 'Sustainably Sourced'

labels on them purporting to, among other things, 'Support farmers for better chocolate' and 'help improve the lives of cocoa farmers.'" Order at 5. Plaintiff alleged that these labels falsely represent the conditions under which cocoa is grown. Plaintiff focused particularly on child-labor issues in West Africa, but she did not identify a single Nestlé label that says anything about child labor. Plaintiff nonetheless raised false advertising claims under California's Unfair Competition Law (UCL) and Consumers Legal Remedies Act (CLRA). Compl. ¶¶ 104–135.

To assess the sufficiency of Plaintiff's claims, the Court focused on a "reach of the system" chart that Plaintiff had cherry-picked from a larger document. That chart traces the expansion and success of the Nestlé Cocoa Plan's Child Labor Monitoring and Remediation System (CLMRS) between 2017 and 2019. *Id.* ¶ 13. The chart shows that the CLMRS is expanding and improving, because it monitored almost twice as many people in 2019 when compared to 2017. But the Complaint misconstrued the increase in monitoring as an increase in the instances of child labor, and improperly positioned the chart as evidence that "Nestle admits that the problem [of child labor] has gotten worse, not better, under its Cocoa Plan." *Id.*

On May 3, 2021, Nestlé USA moved to dismiss the Complaint, and asked the Court to consider the full document that contained the "reach of the system" chart. The full document properly explained the chart and provided other critical contextual information surrounding the positive impact of the Cocoa Plan on those whom it was able to reach. *See* Dkt. No. 45-4, Exhibit A to Nestlé USA's Motion to Dismiss.

**B.    The Court's Order**

On March 28, 2022, the Court denied the Motion to Dismiss. *See* Dkt. No. 56, Order Denying Defendant's Motion To Dismiss (Order). The Court incorporated all of Exhibit A into Plaintiff's Complaint. *Id.* at 5. Having incorporated Exhibit A into the Complaint, the Court was obligated to consider the entire exhibit as though Plaintiff had pleaded it in her Complaint. But the Court's Order examined only the "reach of the system" chart. *Id.* Then, the Court adopted Plaintiff's misinterpretation of the chart to

4

conclude "that from 2017 to 2019 the number of children working on cocoa farms has nearly doubled," even though the chart actually shows that the Nestlé Cocoa Plan's *monitoring* efforts doubled between 2017 and 2019, and that the Plan helped more children in 2019.  *Id.*   Based on this misinterpretation, Plaintiff's allegation that the "child labor problem the Nestlé Cocoa Plan is said to address has grown more, and not less, severe," was given credit, and the Court thus concluded Plaintiff's Complaint plausibly alleged that the challenged statements on Nestlé products would be deceptive to a reasonable consumer.

### III.  LEGAL STANDARDS

#### A.   Motion For Reconsideration

This Court has "inherent jurisdiction to modify, alter, or revoke" its non-final orders, *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000), rather than wait for the "time-consuming, costly process of appeal," *Cerone v. Reliance Standard Life Ins. Co.*, 2014 WL 12539711, at *1 (S.D. Cal. Jan. 31, 2014).   Indeed, motions for reconsideration further "the policy favoring judicial economy," *United States v. Jones*, 608 F.2d 386, 390 (9th Cir. 1979), and the Supreme Court favors the "wisdom of giving district courts the opportunity promptly to correct their own alleged errors," *United States v. Dieter*, 429 U.S. 6, 8 (1976).

Southern District of California Local Rule 7.1 provides that parties may file "applications for reconsideration" within 28 days of the filing of "any order."   Under Rule 7.1, a motion for reconsideration "must set forth the material facts and circumstances surrounding the motion, including what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." *Cerone*, 2014 WL 12539711, at *1 (citation omitted).   As this Court has explained, although "a district court may reconsider its decision for any reason it deems sufficient, generally a motion for reconsideration is appropriate if the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in

5

1    controlling law." *D.H. ex rel. Harrington v. Poway Unified Sch. Dist.*, 2014 WL
2    129070, at *1 (S.D. Cal. Jan. 14, 2014) (Lorenz, J.) (citation omitted).

3    **B.    Motion To Certify For Interlocutory Appeal, In The Alternative**

4            Under 28 U.S.C. § 1292(b), certification of a non-final order for interlocutory
5    appeal is appropriate when (1) the "order involves a controlling question of law," (2) "as
6    to which there is substantial ground for difference of opinion," and (3) "an immediate
7    appeal from the order may materially advance the ultimate termination of the litigation."
8    *See ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th
9    Cir. 2022).

10                             **IV.   ARGUMENT**

11   **A.    Nestlé USA Respectfully Asks This Court To Reconsider Its Order.**

12           There are two related issues in the Court's Order that warrant reconsideration,
13   especially before the parties proceed to expend resources on costly discovery:

14           *First*, misled by Plaintiff, the Court interpreted the "reach of the system" chart to
15   mean the opposite of what it says.  The chart demonstrates that the Nestlé Cocoa Plan's
16   child labor program has expanded and helped more children over time—not that the
17   number of children working on cocoa farms that participate in the Nestlé Cocoa Plan
18   has "nearly doubled" or that the child labor problem has grown "more severe" on farms
19   that participate in the Nestlé Cocoa Plan.

20           *Second*, after the Court incorporated Exhibit A into Plaintiff's Complaint, the
21   Court should have considered the entirety of Exhibit A—not just the isolated chart
22   Plaintiff cherry-picked.  Had the Court done so, it would have considered the following
23   in its analysis:  (1) between 2009 and 2019, the Cocoa Plan invested 224 million Swiss
24   Francs to address environmental and labor issues in the cocoa supply chain; (2) the
25   Cocoa Plan was the first in the cocoa industry to create a CLMRS monitoring system;
26   (3) the reach of the CLMRS system (i.e., the number of children being monitored) nearly
27   doubled between 2017 and 2019; (4) 87,925 children have been helped by the Cocoa
28   Plan; (5) 593,925 attendees have participated in educational sessions to raise awareness

about agricultural and labor issues; and (6) the Cocoa Plan has tangibly helped children and families in at least 11 different ways ranging from building schools, to providing school supplies, to training farmers on ways to increase their income in endeavors outside of cocoa farming. *See* Exhibit A. These contextualizing facts do not support the conclusion that the lives of those interacting with the Cocoa Plan have become worse.

1.   **The "Reach Of The System" Chart Does Not Show That "The Number Of Children Working On Cocoa Farms Has Nearly Doubled" Or Grown More Severe.**

The only number in the chart that "nearly doubled" is the number of children "being monitored" in the Ivory Coast under the CLMRS. The chart compares the first set of monitoring data from 2017 to updated data in 2019. Specifically, the chart shows that the number of children between five and seventeen years old who are being monitored under the CLMRS increased from 40,728 to 78,580—meaning the system nearly doubled its reach. Exhibit A at 6.

In order to address child labor issues, child labor first must be identified, and the "reach of the system" chart reflects the Cocoa Plan's successful efforts to monitor a growing number of children. In just two years, the Cocoa Plan was able to nearly double its monitoring efforts, and in turn, uncover more instances of child labor to be addressed. But uncovering more instances of child labor as part of an increased monitoring effort does not allow for a conclusion that issue of child labor has grown more severe. An increase in the number of children that the CLMRS monitors only indicates a bigger commitment, supported by more resources, to trying to combat the risk of child labor.[1] This is why, in the same time period, the Cocoa Plan reported a greater impact in drawing children out of hazardous work. The chart that immediately follows the "reach of the

---

[1]   Proving this point, the number of children who are ***no longer engaged*** in child labor ***improved*** between 2018 and 2019 under the CLMRS. *See* https://www.nestlecocoaplan.com/sites/site.prod.nestlecocoaplan.com/files/2021-11/Nestle%CC%81%20Cocoa%20Plan%20Annual%20Report%202020.pdf, at 15 (showing that the number of children no longer in child labor increased from 981 in 2018 to 2,459 in 2019).

7

system" chart shows that the 51% impact rate in 2017 improved to a 55% impact rate in 2019:

| Impact rate | 2017 | 2019 |
|---|---|---|
| Direct comparison vs 2017 | 51% | 55% |
| Under revised Ivorian law* | not applicable | 49% |

\* Applying new Ivorian law which classifies use sharp tools as hazardous work.

Exhibit A at 6–7 (formatting cleaned up).

Even if the Court meant to refer to the "number of children identified in child labor"—a number that also increased between 2017 and 2019—its conclusion would still be erroneous. With the increased scope of monitoring in 2019, more instances (18,283) of child labor were uncovered, meaning the system improved its ability to identify and help more children. This is reflected in the fact that the number of children "who received at least one form of remediation" increased from "not measured" in 2017 to 15,740 in 2019. In addition, this metric represents the number of children "identified in child labor *and currently in the system*." *Id.* at 6 (emphasis added). Children who are "in the system" (i.e., the CLMRS) receive the numerous forms of beneficial resources that the Cocoa Plan provides. Thus, an increase in the number of children identified and then placed in the CLMRS means an increase in the number of children that the CLMRS is helping,[2] which is inconsistent with the conclusion that child labor conditions have grown more severe under the Cocoa Plan.

---

[2] The 2020 Nestlé Cocoa Plan Progress Report confirms that the Plan's efforts are sincere and valuable. Between 2019 and 2020 the number of children identified in child labor decreased from 18,283 to 15,193. Nestlé Cocoa Plan Progress Report 2020 at 15, available at https://www.nestlecocoaplan.com/sites/site.prod.nestlecocoaplan.com/files/2021-11/Nestle%CC%81%20Cocoa%20Plan%20Annual%20Report%202020.pdf. In addition, the percentage of children who were monitored under the CLMRS and identified to be practicing child labor decreased from 23% to 18%. *Id.*

8

Similarly, the chart depicting increased monitoring efforts does not speak to the severity of child labor or the total number of children who are working on cocoa farms in the Ivory Coast. Exhibit A at 6. Conflating an increase in the number of children being monitored (and any associated increase in total counts as a result) with worsening conditions is a perilous logical fallacy in this context because it blames Nestlé for sincere attempts to uncover issues, address them, and raise awareness by describing what the Cocoa Plan has learned and how it has responded. *Id.* at 7. When considered in full context, the data show that monitoring efforts have increased, additional instances of child labor have been uncovered, and therefore more children are able to receive help from the Cocoa Plan's efforts.

### 2. After Incorporating Exhibit A By Reference, The Court Was Required To Consider Exhibit A In Its Entirety.

Once the Court incorporated Exhibit A by reference, it was obligated to consider Exhibit A "*in its entirety* and not rely solely on the excerpts plaintiff pleads." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1119 (C.D. Cal. 2015) (emphasis in original); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (explaining that when a court incorporates a document by reference, it must consider the entire document as though it were "part of the complaint itself"). When the entire document is considered, it cannot support the Order's conclusion that issues have become more severe for those interacting with the Cocoa Plan.

Exhibit A shows the Nestlé Cocoa Plan website page and describes "Progress in tackling child labor." *See* Exhibit A at 2. A "key part of the Nestlé Cocoa Plan is addressing the issue of child labor," which is "unacceptable," because children "should be protected" and "deserve the chance to fulfill their potential." *Id.* at 3. That is why the Nestlé Cocoa Plan has taken the lead in creating systems designed to help address the risk of child labor holistically and has a documented record of helping tens of thousands of at-risk children. *See id.* at 1. Indeed, the Nestlé Cocoa Plan has invested more than $240 million to help "make cocoa farming more sustainable, improve the lives

9

of farmers and enhance the quality of [its] products." *Id.* at 3.  And Nestlé was "the first company in the industry to introduce a comprehensive Child Labor Monitoring and Remediation System (CLMRS) in 2012." *Id.*

The CLMRS takes a six-step approach to child labor:  (1) Community Liaison People (CLP) visit the homes of potential child laborers; (2) the CLP identify "children at risk of doing hazardous work"; (3) information is entered in a CLMRS database; (4) the CLP explains to the family "what children are not allowed to do and why"; (5) "help" or "remediation" is "provided to the child, family or community as appropriate"; and (6) the effectiveness of the help is measured. *See id.* at 8–9.

Exhibit A then explains the extensive resources and remediation the Nestlé Cocoa Plan has provided to at-risk children:

- **19,152** children were given "school kits," which include materials the children "needed at school on a daily basis";

- **5,756** children were provided birth certificates so that they could "complete primary school and enroll in secondary education";

- **1,225** children were provided tutoring;

- **2,140** children were provided out-of-school classes to "help them reintegrate into mainstream education";

- **49** schools were built or refurbished, which benefitted 20,000 children;

- **2,148** children benefitted from support given to school cafeterias

- **62** children were enrolled in vocational training;

- **979** mothers were given parental-literacy training, a "key factor in reducing child labor";

- **4,090** parents were provided with income-generating activities to reduce the need to derive income from cocoa farming;

- **157** groups of adults received training in farming tasks that will reduce the need for child labor; and

10

- **2,462** households were provided with wheelbarrows to "reduce the risks associated with carrying heavy loads."

*See id.* at 10.  Exhibit A also explains that the CLMRS has helped 87,925 children, *id.* at 9, and that while "good progress has been made," "there are many challenges on the road to eliminating child labor," *id.* at 13.

The Order does not consider any of this crucial information and context.  The incorporation-by-reference doctrine exists precisely to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja*, 899 F.3d at 1002.  Had the Court considered Exhibit A in its entirety, it would have been compelled to read into the Complaint information that decisively refutes Plaintiff's attempt to misleadingly quote one chart out of context.  To hold otherwise would effectively punish companies for trying to be part of the solution, and would chill their efforts to raise social awareness.

## B. Alternatively, The Court Should Certify Its Order For Interlocutory Appeal.

If the Court disagrees that reconsideration is warranted, it should certify its order for immediate interlocutory appeal.  Under 28 U.S.C. § 1292(b), a party may petition a district court to certify an interlocutory order for immediate appeal if the order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *See ICTSI Or., Inc.*, 22 F.4th at 1130.  "A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'"  *Id.*  The substantial-grounds prong, "is satisfied when 'novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions.'"  *Id.*  And finally, "the 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings."  *Id.*

11

The Court's Order meets all three requirements for the following legal question: whether product labels that call attention to a company's efforts to improve complex global social issues in a supply chain can as a matter of law mislead a reasonable consumer.

*First*, it is a controlling question of law: "Because the reasonable consumer inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement in context is such that no reasonable consumer could be misled in the manner claimed by the plaintiff." *Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (alterations omitted).  In other words, the reasonable consumer test is, under some circumstances, a purely legal question that can be decided at the motion-to-dismiss stage.  Whether Plaintiff's claims fall into the category of claims that can be dismissed as a matter of law is therefore a purely legal question that, if decided in Nestlé USA's favor, would end this litigation outright.

*Second*, courts have already reached different conclusions on the issue.  In *Myers v. Starbucks Corp.*, 536 F. Supp. 3d 657, 664–65 (C.D. Cal. 2021), the court granted Quaker Oats' motion to dismiss claims nearly identical to the ones Plaintiff brought here.  Quaker's chocolate chip bar had labels indicating it "supports sustainably sourced cocoa" through a program called "Cocoa Horizons" and "aims to improve the livelihood of cocoa farmers and their communities." *Id*; *Myers v. Starbucks Corp., et al.*, No. 20-cv-0335, Slip Op. at 8, ECF No. 63 (C.D. Cal. July 29, 2020).  Plaintiffs alleged that these statements were misleading because child labor was allegedly used to harvest the cocoa, and the child labor problem was allegedly increasing despite the statements on the package—identical to the arguments Plaintiff makes here.  The court held that no reasonable consumer would be deceived by the statement that the cocoa was sourced through Cocoa Horizons, and the fact that the risk of child labor persisted did not make the statement misleading.  No reasonable consumer would read the labels as representing that the company had achieved "meaningful results" or "any specific result" at all. *Myers*, 536 F. Supp. 3d at 665; *see also Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954,

964 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018) (granting Nestlé USA's motion to dismiss because no reasonable consumer would be deceived by Nestlé USA's aspirational statements concerning forced labor).  *Myers* then dismissed the complaint even after accepting as true plaintiff's allegations that that child labor is endemic to the cocoa trade, and that the problem has gotten worse over time.  *See id.* at 661.

The very same theory, and very same representations were before this Court.  The challenged labels say that Nestlé USA's "cocoa is 'sustainably sourced' based on the 'NESTLÉ® Cocoa Plan,' which 'help[s] improve' the lives of farmers and 'support' them."  Order at 5.  Like the Quaker Oats labels at issue in the *Myers*, which said that the cocoa was sourced through the "Cocoa Horizons" plan, the labels at issue here say that the cocoa is sourced through the Nestlé Cocoa Plan.  And like the labels in *Myers*, the labels here make no claims about the severity of child labor.  Yet the Court essentially read into these labels an obligation to have achieved certain results before speaking about efforts to address labor and environmental challenges.   But the labels make no such representation.  The reasonable-consumer test is an *objective* test, and there is no case holding that courts can read into product labels statements that the labels do not contain.  As a cover-to-cover read of Exhibit A demonstrates, the Cocoa Plan is making the efforts that are spoken about on the labels.   And those efforts are not false or misleading because the labels never make representations about the extent of the results being achieved by the Cocoa Plan, nor do they make reference to any sort of result at all.  As a matter of law, there is reason to differ with the Court's opinion that statements about efforts to improve a societal problem are allegedly misleading if the efforts do not translate into specific results.

There is also ground for difference of opinion on whether these types of claims can proceed because the First and Ninth Circuits have held that chocolate companies are under no duty to disclose, on their product labels, labor issues in the cocoa supply chain. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 81–82 (1st Cir. 2020) ("Tomasella has not persuaded us that the nondisclosure of upstream labor conditions on product

packaging at the point of sale is unscrupulous or substantially injurious to consumers[.]"); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018). In *Hodsdon*, the Ninth Circuit held that companies do not have a duty under California law to use their packaging to disclose the existence of child labor in the cocoa supply chain, especially when those companies do, as required under the California Supply Chains Act, disclose that reality on the websites. 891 F.3d at 867. Mars, like Nestlé USA here, provided information on its website about the risk of child labor in the cocoa supply chain. *Id.* Thus, the plaintiff in *Hodsdon* failed to state claim under California law.

Because courts that are addressing the same issue are using different standards and reaching different conclusions, this issue is well suited for clarification on interlocutory appeal.[3]

*Third*, resolution of this question will "materially advance" the termination of this litigation. If the Ninth Circuit holds that these kinds of claims are not actionable, then Plaintiff's claims should be dismissed, and the entire case will be resolved on the pleadings.

## V. CONCLUSION

Reconsideration is appropriate because once the Court properly considers the "reach of the system" chart, as well as the context in Exhibit A, there is no support for the assumption that the lives of those interacting with the Cocoa Plan have become worse. If the Court disagrees, then it should certify its Order for immediate interlocutory appeal, because there is a controlling issue of law that would materially advance termination of this case, namely whether product labels that call attention to a company's efforts to improve complex global social issues in a supply chain can as a matter of law mislead a reasonable consumer.

---

[3] *See also* Jeffrey S. Jacobson, *In Search of the Elusive "Reasonable Consumer,"* FAEGRE DRINKER, https://www.faegredrinker.com/en/insights/publications/2020/7/in-search-of-the-elusive-reasonable-consumer ("[A]ppellate courts have not provided enough guidance to allow application of a consistent standard . . . Language in some cases suggests that the reasonableness of consumer claims should await discovery, but [other] appellate decisions [] all show that courts can and should grant motions to dismiss where claims are objectively unreasonable.").

14

1

2    Dated:  April 25, 2022                    Respectfully submitted,

3                                              By: /s/ *Theodore J. Boutrous, Jr.*

4                                                  Theodore J. Boutrous, Jr.

5                                              *Counsel for Defendant Nestlé USA, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
PERLETTE JURA, SBN 242332
  pjura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Counsel for Defendant Nestlé USA, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE WALKER, individually and on behalf of all others similarly situated, | CASE NO. 3:19-cv-00723-L-DEB |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| NESTLÉ USA, INC., a Delaware Corporation; and DOES 1 TO 100, | |
| Defendants. | |

I, Theodore J. Boutrous, Jr., hereby certify that I caused the foregoing Motion for Reconsideration Or, In The Alternative, Certification For Interlocutory Appeal, to be electronically filed via the Court's CM/ECF system.  Notice of this filing will be served to all parties by operation of the Court's electronic filing system.

Dated:  April 25, 2022

/s/ *Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.