Helen I. Zeldes (State Bar No. 220051)
*hzeldes@sshhzlaw.com*
Joshua A. Fields (State Bar No. 242938)
*jfields@sshhzlaw.com*
Aya Dardari (State Bar No. 344039)
*adardari@sshhzlaw.com*
**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

[Additional Counsel on Signature Page]

*Counsel for Plaintiff Marie Falcone*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| MARIE FALCONE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NESTLÉ USA, INC., *a Delaware corporation*, *and* DOES 1 *to* 100,<br><br>Defendant. | Case No. 3:19-cv-00723-L-DEB<br><br>**PLAINTIFF MARIE FALCONE'S NOTICE OF SUBMISSION OF CORRECTED PUBLIC VERSION OF MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: To be determined<br>Time: To be determined<br>Place: Courtroom 5B<br>Judge: Honorable M. James Lorenz |

1  **TO THE HONORABLE COURT AND ALL PARTIES AND THEIR**
2  **COUNSEL OF RECORD:**

3        **PLEASE TAKE NOTICE** that Plaintiff Marie Falcone ("Plaintiff") hereby
4  submits a corrected public version of her Memorandum of Points and Authorities in
5  Support of Motion for Class Certification ("Memorandum") (ECF No. 125-1). Not
6  a single substantive change has been made to the Memorandum; only the coloring
7  of redaction marks has been corrected.

8        On January 19, 2024, Plaintiff filed her Notice of Motion and Motion for Class
9  Certification, and the Memorandum, a public version of which redacted materials
10 from a conditionally sealed record. (ECF Nos. 125, 125-1). The Memorandum's
11 redacted public version appropriately redacted information defendant Nestlé USA,
12 Inc. ("Nestlé") had designated "CONFIDENTIAL" during discovery pursuant to the
13 Protective Order entered in this action (ECF No. 97). However, the Memorandum's
14 redacted public version contained yellow highlighting behind the black marks
15 redacting information Nestlé had designated as "CONFIDENTIAL." (ECF 125-1)
16 The sole change in the corrected public version of the Memorandum, submitted as
17 Exhibit A hereto, is that the yellow highlighting behind the black redaction marks in
18 the Memorandum's redacted public version has been removed, for ease of viewing
19 for the Court and the Parties. Not a single other change has been made in the
20 corrected public version of the Memorandum.

21

22 Date: January 22, 2024                **SCHONBRUN SEPLOW**
                                        **HARRIS HOFFMAN & ZELDES, LLP**
23

24                            By: _/s/ Helen I. Zeldes_____
                                 Helen I. Zeldes (State Bar No. 220051)
25                               *hzeldes@sshhzlaw.com*
                                 Joshua A. Fields (State Bar No. 242938)
26                               *jfields@sshhzlaw.com*
                                 Aya Dardari (State Bar No. 344039)
27                               *adardari@sshhzlaw.com*
                                 501 West Broadway, Suite 800
28                               San Diego, California 92101
                                 Telephone: (619) 400-4990

1
2
3
4
5

**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
Paul L. Hoffman (State Bar No. 71244)
*hoffpaul@aol.com*
John C. Washington (State Bar No. 315991)
*jwashington@sshhzlaw.com*
200 Pier Avenue, #226
Hermosa Beach, California 90245
Telephone: (310) 396-0731

6
7
8
9

**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
Catherine E. Sweetser (State Bar No. 271142)
*catherine.sdshhh@gmail.com*
9415 Culver Boulevard, #115
Culver City, California 90232
Telephone: (310) 396-0731

10
11
12
13

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

14
15
16
17

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

18
19

*Counsel for Plaintiff Marie Falcone*
*and the Proposed Class.*

20
21
22
23
24
25
26
27
28

# EXHIBIT A

Helen I. Zeldes (State Bar No. 220051)
*hzeldes@sshhzlaw.com*
Joshua A. Fields (State Bar No. 242938)
*jfields@sshhzlaw.com*
Aya Dardari (State Bar No. 344039)
*adardari@sshhzlaw.com*
**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

[Additional Counsel on Signature Page]

*Counsel for Plaintiff Marie Falcone*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| MARIE FALCONE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NESTLÉ USA, INC., *a Delaware corporation*, *and* DOES 1 *to* 100,<br><br>Defendant. | Case No. 3:19-cv-00723-L-DEB<br><br>**PLAINTIFF MARIE FALCONE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [CORRECTED]**<br><br>**[REDACTED – PUBLIC VERSION]**<br><br>Date: To be determined<br>Time: To be determined<br>Place: Courtroom 5B<br>Judge: Honorable M. James Lorenz<br><br>Complaint filed: April 19, 2019<br>Trial date: Not set |

**PUBLIC-REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD**

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

I.  INTRODUCTION ......................................................................... 1

II.  SUMMARY OF COMMON CLASSWIDE EVIDENCE ............................ 4

    A.  Classwide Evidence that the Product Labeling Is Uniform and Falcone Relied upon It ............................................................... 4

    B.  Classwide Evidence of the Meaning of Nestlé's Statements: Responsible Sourcing = Sustainable Sourcing = Ethical Sourcing ............................................................................ 4

    C.  Classwide Evidence of the Materiality of Nestlé's Sustainability Representations on Consumers' Purchasing Decisions ..................... 6

        i.  Sustainability Sells ...................................................... 6

        ii.  Third-Party Certification Sells ...................................... 8

        iii.  Nestle's Own Studies Confirm Sustainability is Material to Consumers ............................................................. 9

        iv.  Nestlé Asserts That Sustainability Representations on the Front and Back of Its Product Packaging Are Material to Its Consumers .......................................................... 11

    D.  Common Evidence of the Deceptiveness of the Label Statements ................................................................... 12

III.  CLASS CERTIFICATION IS APPROPRIATE HERE ............................. 17

    A.  Legal Standard and Class Definitions ................................... 17

    B.  The Class Satisfies Federal Rule Of Civil Procedure 23(A) ............ 19

        i.  The Proposed Class Is Sufficiently Numerous ................... 19

        ii.  Commonality Is Met ................................................. 19

        iii.  Typicality Is Met ..................................................... 21

        iv.  Falcone and Her Counsel Are Adequate ........................ 22

    C.  The Injunctive Relief Class Satisfies Rule 23(b)(2) ................... 23

        i.  The Injunctive Relief Class Seeks Indivisible Injunctive and Declaratory Relief That Applies to Each Member of the Class ............................................................... 23

    D.  The Damages Class Satisfies Rule 23(b)(3) ........................... 24

        i.  Common Questions Predominate ................................ 24

1

<u>**TABLE OF CONTENTS - CONT'D**</u>

2

ii.    Common Evidence Will Show Nestlé's Sustainability
Representations are Likely to Deceive a Reasonable

3

Consumer ................................................................................. 27

4

iii.   Common Evidence Will Show Nestlé's Statements are
Material ................................................................................... 27

5

iv.   A Full Refund Model for Classwide Damages is

6

Appropriate ............................................................................ 28

7

E.   A Class Action Is Superior to Alternative Methods of
Adjudication ...................................................................................... 30

8

IV.   CONCLUSION ............................................................................. 30

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

*Federal Cases*

*Page(s)*

*A. B. v. Hawaii State Dep't of Educ.*,
    30 F.4th 828 (9th Cir. 2022) ........................................................................ 19

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) .................................................................. 29

*Allen v. Similasan Corp.*,
    306 F.R.D. 635 (S.D. Cal. 2015) ................................................................... 29

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) .................................................................... 17-18, 25, 26

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ................................................................... 27

*Brazil v. Dole Packaged Foods, LLC, No. 12-cv-01831-LHK*,
    2014 WL 2466559 (N.D. Cal. May 30, 2014) ............................................... 21

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ...................................................................... 18

*Cabrera v. Google LLC, No. 5:11-cv-01263-EJD*,
    2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) ......................................... 29-30

*Capaci v. Sports Rsch. Corp., No. 19-cv-03440-FMO-FFM*,
    2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ............................................... 29

*Chamberlan v. Ford Motor Co.*,
    223 F.R.D. 524 (N.D. Cal. 2004) .................................................................. 22

*Clay v. CytoSport, Inc., No. 3:15-vb-00165-L-AGS*,
    2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) .............................. 18, 20, 26, 30

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................ 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................. 4, 21

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................................................ 27

1

## <u>TABLE OF AUTHORITIES – CONT'D</u>

2

*<u>Federal Cases</u> - Continued*

3
*Page(s)*

4
*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,

5
609 F. Supp. 3d 942 (N.D. Cal. 2022) ........................................................ 29

6
*Johns v. Bayer Corp.*,

7
280 F.R.D. 551 (S.D. Cal. 2012) ................................................................. 27

*Johnson v. City of Grants Pass*,

8
72 F.4th 868 (9th Cir. 2023) .......................................................... 17, 19, 21

9
*Korolshteyn v. Costco Wholesale Corp., No. 3:15-cv-00709-CAB-RBB*,

10
2017 WL 1020391 (S.D. Cal. Mar. 16, 2017) .............................................. 29

11
*Krommenhock v. Post Foods, LLC*,

12
334 F.R.D. 552 (N.D. Cal. 2020) ................................................................. 27

13
*Krueger v. Wyeth, Inc.*,

14
310 F.R.D. 468 (S.D. Cal. 2015) ................................................................. 25

*Lambert v. Nutraceutical Corp.*,

15
870 F.3d 1170 (9th Cir. 2017) ................................................................ 28, 29

16
*Leyva v. Medline Indus. Inc.*,

17
716 F.3d 510 (9th Cir. 2013) ....................................................................... 30

18
*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

19
31 F.4th 651 (9th Cir. 2022) (en banc) ......................................... 17, 19, 25, 30

20
*Owino v. CoreCivic, Inc.*,

21
60 F.4th 437 (9th Cir. 2022) ........................................................................ 24

22
*Parsons v. Ryan*,

23
754 F.3d 657 (9th Cir. 2014) ................................................................. 21, 23

*Prescott v. Reckitt Benckiser LLC, No. 20-cv-02101-BLF*,

24
2022 WL 3018145 (N.D. Cal. July 29, 2022) ........................................... 3, 27

25
*Pulaski & Middleman, LLC v. Google, Inc.*,

26
802 F.3d 979 (9th Cir. 2015) ....................................................................... 30

27
*Sali v. Corona Reg'l Med. Ctr.*,

28
909 F.3d 996 (9th Cir. 2018) ....................................................................... 17

# TABLE OF AUTHORITIES – CONT'D

*Federal Cases* - Continued

*Page(s)*

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ..................................................... 20, 26

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ................................................................. 24, 25

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................ 30

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................... 17, 19

*Walters v. Target Corp., No. 3:16-cv-1678-L-MDD*,
   2020 WL 6277436 (S.D. Cal. Oct. 26, 2020) .................................. 23

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ..................................................... 20, 25

*State Cases*
*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ....................................................... 20, 25, 26

*Kasky v. Nike, Inc.*,
   45 P.3d 243 (Cal. 2002) ................................................................. 28

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (2011) .................................................................. 28, 30

*Massachusetts Mut. Life Ins. Co. v. Superior Ct.*,
   119 Cal. Rptr. 2d 190 (Ct. App. 2002) .......................................... 26

*McAdams v. Monier, Inc.*,
   105 Cal. Rptr. 3d 704 (Ct. App. 2010) .......................................... 26

*Salazar v. Target Corp.*,
   299 Cal. Rptr. 3d 616 (Ct. App. 2022) .......................................... 20

*State Statutes*
Cal. Bus. & Prof. Code § 17200 et seq. ................................................. 3

Cal. Civ. Code § 1750 et seq. .................................................................. 3

1

## <u>TABLE OF AUTHORITIES</u> – CONT'D

2

*Other*

3

*Page(s)*

4

Federal Rule of Civil Procedure 23 ............................................................... *passim*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Marie Falcone ("Falcone") respectfully submits this memorandum of points and authorities in support of her Motion for Class Certification.

## I.   INTRODUCTION

Nestlé USA, Inc. ("Nestlé"), one of the world's largest chocolate manufacturers, is well-aware that children are used in its chocolate supply chain and are subjected to what the International Labor Organization terms the "Worst Forms of Child Labor" – including trafficking, slavery, and exposure to toxic chemicals and hazardous tools.[1] Despite various industry commitments made over more than two decades, child labor has increased in Côte D'Ivoire – where Nestlé gets much of its chocolate for its cocoa - over that period.[2] Nestlé is also aware that the "[c]hocolate industry drives rainforest disaster in [the] Ivory Coast"—and that at the current pace of deforestation, there will be no forest left in the Ivory Coast by 2030.[3]

Nestlé knows that child labor is rampant in its West African supply chain, admitting it found 18,283 "children identified in child labor" on its farms in 2019 alone—up from 7,002 in 2017—and that its "Child labor rate" increased from 17% in 2017 to 23% in 2019.[4] Nestlé nevertheless markets its products as "sustainably sourced", "responsibly sourced", using "sustainably harvested cocoa beans", that "improve the lives of cocoa farmers", and provides "better lives" while flaunting the "Nestlé Cocoa Plan", "Rainforest Alliance" and/or "Utz" logos (collectively the "Sustainability Representations").[5] Calling these products "sustainably sourced," or labeling them as "improving the lives of farmers," when they are made by enslaved

---

[1] Third Am. Compl. ¶¶ 1, 11, 12, 39, 48-49, 57-59, ECF No. 78 ("TAC"); *see also* Peter Whoriskey & Rachel Seigel, *Cocoa's child laborers*, THE WASHINGTON POST (June 5, 2019), https://www.washingtonpost.com/graphics/2019/business/hershey-nestle-mars-chocolate-child-labor-west-africa/; LastWeekTonight, *Chocolate: Last Week Tonight with John Oliver* (HBO), YOUTUBE (Oct. 30, 2023), https://youtu.be/FwHMDjc7qJ8; MsKandyrose, *Documentary. The Dark Side of Chocolate*, YOUTUBE (Jan. 21, 2012), https://www.youtube.com/watch?v=7Vfbv6hNeng.
[2] TAC, ¶¶ 13, 14, 32, 35, 37, 38, 49.
[3] TAC, ¶ 2.
[4] TAC, ¶ 13.
[5] *See*, *e.g*., TAC, ¶ 8.

child laborers is abhorrent.

Throughout this litigation, Nestlé has urged it should be rewarded (let out of this case on the pleadings) for profiteering off child and slave labor since it spends money on its own Nestlé Cocoa Plan ("NCP"), putting a band aid on the problem it has been a driving force behind. Yet, even Nestlé itself has found that certification "███████████████████████████████████████████"[6]

As the demand for sustainably and ethically sourced goods has skyrocketed, cocoa with "sustainability" labeling claims has too - outselling cocoa without such claims more than 3 to 1.[7] To maintain its competitive market share, and despite its knowledge of its child labor problem, Nestlé nonetheless puts sustainability labeling on the Products[8] at issue. These statements are deceptive because the chocolate is not sustainable since the cocoa in the Products comes from child and slave labor and is also the result of environmentally detrimental practices.

Plaintiff Falcone believed Nestlé's labels were truthful, but in reality, Nestlé knows its cocoa supply chain is rife with child labor and environmentally-degrading practices and that the cocoa it uses in the Products is not 100% certified and traceable.[9] Nestlé admits it cannot certify that the beans in any Product were grown or harvested sustainably because it uses what is called "mass balance" purchasing—which means certified beans are mixed with non-certified beans. Not surprisingly, then, a November 1, 2017 email from Josh Givens, a Nestlé Senior Associate Brand Manager, states the Strategic Business Unit[10] considers the sustainably sourced

---

[6] Ex. 45 at 617. All exhibits referenced herein are attached to the Declaration of Helen I. Zeldes in Support of Plaintiff's Motion for Class Certification ("Zeldes Decl."), unless otherwise indicated.
[7] TAC, ¶ 24.
[8] Collectively, the "Products" are the following Nestlé chocolate and hot cocoa products: Semisweet Morsels (12 and 72 oz), Mini Semisweet Morsels (10 and 20 oz), Dark Chocolate Morsels (10 and 20 oz), Milk Chocolate Morsels (11.5 and 23 oz), Mini Marshmallows Hot Cocoa (6 Pack and 8 Pack), Rich Milk Chocolate Hot Cocoa (6 Pack, 8 Pack, and 27.7 oz), and Nesquik Powder (9.3, 16, 18.7, or 41.9 oz).
[9] TAC, ¶¶ 11-17, 24, 26-30, 32-45, 48-59, 83-91.
[10] Ex. 7, Green Dep. 30:20-22.

language to be an "█████████████████████████████████████"[11]

Falcone thus brings claims for violations of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA"), and California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL"). She seeks injunctive relief in the form of Product labeling changes and monetary damages and restitution based on the full price that she and all other class members paid.

"CLRA and UCL claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145, at *4 (N.D. Cal. July 29, 2022). Falcone's claims are no exception. Nestlé made uniform Sustainability Representations on the Products' labels. The Sustainability Representations are deceptive for the same reasons across the board, as the sourcing for the Products does not live up to Nestlé's claims. Whether the labels are likely to mislead a reasonable consumer and the materiality of the Sustainability Representations are determined by an objective standard and, thus, will be established by common, classwide proof. Falcone's claims are typical of the Class, and she and her counsel adequately represent the interests of the Class.

With respect to Falcone's claims for injunctive relief, she unequivocally has Article III standing to pursue such relief, as she would like to purchase the Products in the future if and when they are produced as advertised, but she can no longer rely on the accuracy of the Representations and cannot readily determine whether they have been corrected. Federal Rule of Civil Procedure 23(b)(2) is met because final injunctive relief in the form of labeling changes and/or declaratory relief is appropriate for the proposed Injunctive Relief Class as a whole.

The proposed Damages Class's monetary injury likewise is susceptible to classwide proof based on Falcone's proposed full refund methodology. Certification

---

[11] Ex. 47 (emphasis added).

is proper because Falcone's claims and supporting evidence readily meet Rules 23(a)'s and (b)(3)'s requirements and because the claims are more efficiently tried together. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Common questions predominate. Class litigation is also superior to individual actions, as Nestlé's conduct affected millions of consumers whose individual damages would be dwarfed by the costs of pursuing individual cases.

As explained in detail below, because all requisites of Rules 23(a) and (b)(2) are satisfied, and because Rule 23(b)(3) is also met, Falcone respectfully requests that the Court grant her class certification motion in its entirety.

## II.   SUMMARY OF COMMON CLASSWIDE EVIDENCE

### A.   Classwide Evidence that the Product Labeling Is Uniform and Falcone Relied upon It

For purposes of class certification briefing only, Falcone and Nestlé stipulated to a table identifying the labels used on the Products by Bates number and dates of the labels' nationwide use.[12] The Label Stipulation and Nestlé's document production show that Nestlé labeled the Products on the front and back of the packaging with uniform Sustainability Representations.[13] Falcone purchased the Products and in doing so relied on the Sustainability Representations.[14] Falcone's understanding of and reliance on the Products' Sustainability Representations are objectively reasonable and thus in line with those of other reasonable consumers.

### B.   Classwide Evidence of the Meaning of Nestlé's Statements: Responsible Sourcing = Sustainable Sourcing = Ethical Sourcing

---

[12] Ex. 2, Joint Stip. Class Cert. re: Product Labels ¶¶ 1-3 ("Label Stipulation").
[13] *Id.*; *See also* Exs. 3, 4, 5 (Labels for the Class Products).
[14] Declaration of Marie Falcone in Support of Motion for Class Certification ("Falcone Decl."), ¶¶ 3-10; Zeldes Decl., Ex. 6, Falcone Dep., 220:7-10 (Rich Milk Chocolate Hot Cocoa), 195:19-196:3 (Dark Chocolate Morsels), 204:18-22 (Milk Chocolate Morsels), 212:6-14 (Mini Semisweet Morsels), 187:13-15 (Nesquik).
[15] Ex. 22 at 729.



1

2

3

4 Ex. 33, slide 6. Nestlé understands it

5 needs "

6 Ex. 29 at 731;

7 Ex. 10 at 814; Ex. 11 at 865. It maintains that as part of its

8

9

10

11 " Ex. 17 at 980. Further,

12

13

14 . Ex. 46 at 672

15 674

16 ; 675 ; 677

17

18

19

20

21 Ex. 28, slide 28; Ex. 30, slide 33 (emphasis added).

22

23 Ex. 33, slide 9. Moreover,

24

25

26 Ex. 41 at 269 (emphasis added).

27   Nestlé knows its consumers similarly understand that sustainability

28 encompasses both socially and environmentally responsible practices.

1  █████████████████████████████████████████

2  █████████████████████████████████████████

3  █████████████████████████████████████████

4  Ex. 42, slide 2. ████████████████████████████

5  █████████████████████████████████████████

6  █████████████████████████████████████████

7  ███████████████████████████████ *Id.* at slides 9-10.

8  ████████████████████████████████████ *Id.* at

9  slide 10. ████████████████████████████████

10  █████████████████████████████████████████

11  █████████████████████████████████████████

12  █████████████████████████████████████████

13  █████████████████████████████████████████

14  █████████████████████████████████████████

15  █████████████████████████████████████████

16  █████████████████████████████████████████

17  █████ Ex. 48 at 764-65. ████████████████████

18  █████████████████████████████████████████

19  █████████████████████████████████████████

20  ███████████████████████████████

21      **C.**    **Classwide Evidence of the Materiality of Nestlé's Sustainability**

22          **Representations on Consumers' Purchasing Decisions**

23      ██████████████████████████████████████

24  █████████████████████████████████████████

25  █████████████████████████████████████████

26  ████████████ Ex. 13 at 838.

27      **i.**    **Sustainability Sells**

28      Nestlé knows sustainability claims are important to its consumers. ████



1

2

3

4

5

6

7 Ex. 10

8 at 814, 817; Ex. 11 at 865, 868.

9

10

11 Ex.

12 53 at 426, 427.

13

14

15 Ex. 42, slide 2. Indeed,

16

17 Ex. 27 at 065; Ex. 53 at 430.

18

19

20 Ex. 15, slide 5.

21

22

23

24 Ex. 14 at 742.

25

26

27

28

1

2

3

4

5    *Id.* at 553.

6

7    *Id.* at 554.

8

9

10   *Id.*

11   at 569.

12   Ex. 23, slide 5; *see* Ex. 59.

### ii.   Third-Party Certification Sells

Nestlé also knows third-party certification seals are material to consumers.

15

16

17   Ex. 43 at 744.

18

19   (Ex. 8, Stout Dep. at 41:7-8),

20

21

22

23   Ex. 18

24   at 978.

25

26

27

28   *Id.* at 979.

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 34 at 555-56.

4       Crucially, Nestlé knows that brands can capitalize on consumers' growing

5 expectations for sustainability ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮ Ex. 16 at 556. ▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

11 at 579-80. To be sure, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 20 at p. 19, slide 18. ▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, at

19 p. 21, slide 20 (emphasis added). ▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮ Ex. 33, slide 7.

22     **iii.** ▮▮▮▮▮▮▮▮▮▮▮▮ **Sustainability is Material to**

23            **Consumers**

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 7, Deposition of Heather

26 Green ("Green Dep."), former Marketing Manager of Nestlé Toll House and and

27 Nestlé's 30(b)(6) witness on labeling statements on the Products at 132:17-133:5

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



, 257:17-258:15

(Ex. 7, Green Dep., 201:9-15)—

Ex. 31

Ex. 32, slides 3, 5, 6

Ex. 44 at 824.

Ex. 24 at 745.

Ex. 7, Green Dep., 44:16-45:5.

Ex. 24 at 748 769

*Id.* at 769.

Additionally,

Case No. 19cv0723

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 Ex. 55 at slides 2, 6. Indeed, ████████████████████████████

5 ███████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ████████████ Ex. 56. ███████████████████████████

9 ████████ ███ ████ ███ ████ ███████ ███ ██████ ██████

10 ███████████████████████ Ex. 57 at 994.

11       **iv.** ██████████████ **Sustainability Representations on the Front**

12       **and Back of Its Packaging Are Material to Its Consumers**

13       ██████████████████ that statements on both the front and back of its product

14 packaging are material to consumers. ███████████████████████

15 ███████████████████████████████████████████████

16 ███████████████████████████████████████████████

17 ███████████████████████████████████████████████

18 ████████████ Ex. 29 at 738 (emphasis added). ████████████

19 ███████████████████████████████████████████████

20 ███████████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ███████████████████████████████████████████████

23 ████████████████████████████████ Ex. 10 at 820, 822; Ex. 11 at 876, 878

24 (emphasis added). Additionally, Nestlé's Rule 30(b)(6) witness Heather Green

25 testified that ██████████████████████████████████

26 ███████████████████████████████████████████████

27 ███████████████████████████████████████████████

28 ██████████████████ Ex. 7, Green Dep., 198:22-199:8, 199:20-200:11. ████████

1

2

3

4                                                  *Id.* at 200:12-201:8.

5

6                           *Id.* at 288:6-17.

7

8             Ex. 42 at p. 21, slide 18.

9        Nestlé is fully cognizant of the lucrative value of placing sustainability claims

10 on its products.

11                                   Ex. 26 at 109,

12

13

14            *id.* at 117; Ex. 7, Green Dep., 40:17-21.

15

16

17                         Ex. 36 at 312; Ex. 7, Green Dep.

18 43:14-44:3.

19

20

21            Ex. 40.

22       **D.**      **Common Evidence of the Deceptiveness of the Label Statements**

23        Contrary to Nestlé's Sustainability Representations, the Products contain

24 cocoa sourced with child labor and harmful environmental practices and cocoa that

25 is not fully certified and traceable,

26

27

28                        Ex. 47 (emphasis added).

1    ***Child Labor.*** ████████████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ███████████████████████████ Ex. 45 at 619 (emphasis added); Ex.

4    50 at p. 4. ████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████ Ex. 45 at 617; Ex. 54. ████████

7    ████████████████████████████████████████████████████████

8    ██████████████████ Ex. 45 at 617 (emphasis added). In fact, by the end of 2019, Nestlé

9    had identified more than 18,000 children in child labor on the farms it sourced from.

10   TAC, ¶ 13; *see also* Ex. 21 at 657. Further illustrating how deceptive Nestlé's

11   Representations are, Nestlé's child labor problem has gotten worse, not better since

12   it engaged in certification programs. ECF 84-2, Jura Declaration, ¶ 2, Ex. A, p. 6.

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ███████████████████████████ Ex. 37 at 563, 565. ████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████ Ex. 38; *see also* Ex. 7, Green Dep.,

18   48:2-4. ██████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████ Ex. 38 at

22   p. 14. ███████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ███████████████████████████████ *Id.* at p. 16.

27   It is thus unsurprising that ████████████████████████████████

28   ████████████████████████████████████████████████████████



Ex. 51 (emphasis added).

***Environmental Practices.***

Ex. 38 at p. 15.

*Id.* at p. 15.

*Id.*

***Traceability.***

*Id.* at p. 11. Additionally,

*See*, *e.g.*, Ex. 34 at 557; Ex. 35 at 570. Further, Ms. Green testified that

Ex. 7, Green Dep., 123:12-124:20; 125:25-126:24.

Ex. 48 at 765 (emphases added). Because of this,



1
2
3 *Id.* (emphasis added). Also, in an email from
4 Heather Green dated August 24, 2016, she states,
5
6 Ex. 49 at 767
7 (emphasis added). When asked about this email at her deposition, Green testified
8 that
9 Ex. 7, Green Dep., 206:10-208:7.
10 As explained by Rainforest Alliance's witness Ria Stout,
11
12 Ex. 8, Stout Dep., 80:4-81:10.
13
14
15
16 *Id.* at 72:16-
17 75:7, 77:18-79:18.
18
19
20
21 Ex. 35 at 570-71
22
23
24 (emphasis added)).
25
26 Ex. 8, Stout Dep., 75:8-77:17.
27
28 *Id.*

1    ████████████████████████████████████████████████████████████

2    ████████████████ Ex. 39.

3                        ████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████ Ex. 34 at 556; Ex. 41 at 571

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ██████████ Ex. 8, Stout Dep., 167:21-170:4. ████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████ Ex. 12 at 419.

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████ Ex. 19 at 08. ██████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████

25   ████████████████████████ *Id*. at 07-08. Thus, even by its own standards, Nestlé's

26   Nestlé Cocoa Plan logo is fraudulent.

27       Fundamentally, Nestlé's Sustainability Representations are equally false for

28   all Class members, and thus the Court's rulings will be common to the Class.



## III. CLASS CERTIFICATION IS APPROPRIATE HERE

### A. Legal Standard and Class Definitions

A member of a class may sue as a representative party if the member satisfies Rule 23(a)'s four prerequisites (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of at least one of the categories in Rule 23(b). *Johnson v. City of Grants Pass*, 72 F.4th 868, 885 (9th Cir. 2023). Falcone seeks certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," FED. R. CIV. P. 23(b)(2), and Rule 23(b)(3), which requires the court to find that common questions of law or fact predominate over any individual questions and that a class action is superior to other available methods for fair and efficient adjudication of the controversy, FED. R. CIV. P. 23(b)(2)-(3).

Falcone "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("*Olean*") (en banc). "Assessing these requirements involves 'rigorous analysis' of the evidence." *Johnson*, 72 F.4th at 885 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). However, in recognition of plaintiffs' limited access to proof at early stages of a proceeding, the Ninth Circuit has cautioned that the "rigorous analysis" requirement does not mean the court should conduct a "mini-trial," and the proof presented in support of class certification need not be admissible evidence. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004-07 (9th Cir. 2018). "Limiting class-certification-stage proof to admissible evidence risks terminating actions before a putative class may gather crucial admissible evidence." *Id.* at 1004. Furthermore, "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v.*

*Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("*Amgen*").

A class definition must allow the court to readily identify the class members by reference to objective criteria, *e.g.*, whether they purchased the relevant products. *Clay v. CytoSport, Inc.*, No. 3:15-vb-00165-L-AGS, 2018 WL 4283032, at *3 (S.D. Cal. Sept. 7, 2018) (Lorenz, J.). Falcone seeks certification of the following class under Rules 23(a) and (b)(2) for violations of the CLRA and the UCL:

> ***Injunctive Relief Class (California Only)***. All persons who purchased at least one Nestlé Product labeled with the words "sustainably sourced", "responsibly sourced", uses "sustainably harvested cocoa beans", "improve[s] the lives of cocoa farmers", or "better lives" and that has "Nestlé Cocoa Plan", "Rainforest Alliance" and/or "Utz" logos during the period from April 19, 2015, to the present,

Falcone also seeks certification of the following class under Rules 23(a) and (b)(3) for violations of the CLRA and UCL:

> ***Damages Class (California Only)***. All persons who purchased at least one of the following Nestlé Products during the following time periods:
> (i)     Semisweet Morsels (12 or 72 oz) from 11/21/18 to present;
> (ii)    Mini Semisweet Morsels (10 or 20 oz) from 10/17/17 to present;
> (iii)   Dark Chocolate Morsels (10 or 20 oz) from 5/4/15 to present;
> (iv)   Milk Chocolate Morsels (11.5 or 23 oz) from 4/19/15 to present;
> (v)    Mini Marshmallows Hot Cocoa (6 Pack or 8 Pack) or Rich Milk Chocolate Hot Cocoa (6 Pack, 8 Pack, or 27.7 oz) from 12/14/17 to present;
> (vi)   Nesquik Powder 16 oz from 7/6/15 to 4/27/20;
> (vii)  Nesquik Powder (9.3 or 41.9 oz) from 5/3/15 to 12/12/17;
> (viii) Nesquik Powder 18.7 oz from 4/7/17 to present.

Excluded from the Class are any of Nestlé's officers, directors, or employees; officers, directors, or employees of any entity in which Nestlé currently has or had a controlling interest; and Nestlé's legal representatives, heirs, successors, and assigns. The Class is objectively defined and will allow the Court to readily identify members. Accordingly, the Class is properly defined. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017).

**B.    The Class Satisfies Federal Rule Of Civil Procedure 23(A)**

**i.    The Proposed Class Is Sufficiently Numerous**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "For purposes of this requirement, '"impracticability" does not mean "impossibility," but only the difficulty or inconvenience of joining all members of the class.'" *Johnson*, 72 F.4th at 886. "There is no specific number of class members required." *Id.* "However, proposed classes . . . of more than sixty are sufficiently large." *Id.*; *accord A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022). Here, sales figures for Nestlé's chocolate and hot cocoa products and competitor products sold in California were produced in this litigation by third party Circana and reflect voluminous sales of the Nestlé products at issue in the litigation.  Zeldes Decl., ¶ 12.

**ii.    Commonality Is Met**

"A class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class." *Johnson*, 72 F.4th at 887. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Class members' claims "must depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Even "a single common question will do." *Id.* at 359 (cleaned up). In determining whether commonality is met, "a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666-67.

Here, there are substantial discrete, common factual and legal questions that unite the classes. The Injunctive Relief Class and the Damages Class are both

structured on common questions facing the purchasers, with the goal of maximizing the efficiencies that can be realized through class treatment. There is a common question the truth or falsity of which will determine each Injunctive Relief Class member's claim, namely, whether labeling the Products with the words "sustainably sourced" or "sustainably harvested cocoa beans" or "responsibly sourced" or "help improve the lives of farmers" is likely to deceive a reasonable consumer in violation of the CLRA and UCL. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Salazar v. Target Corp.*, 299 Cal. Rptr. 3d 616, 621 (Ct. App. 2022). This question turns on what a reasonable consumer would believe the "sustainably sourced" and "sustainably harvested cocoa beans" and "responsibly sourced" and "help improve the lives of farmers" Sustainability Representations to mean and whether Nestlé's practices comported with that understanding, all of which will be demonstrated with common evidence. *See supra* Summary of Common Classwide Evidence §§ II.B, II.D. Because the answers to these questions depend on objective, classwide proof which will resolve them either for or against the Injunctive Relief Class in one fell swoop, the claims are particularly well suited for class certification. *See, e.g.*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009).

Similarly, the claims of all members of the Damages Class share the following question: whether labeling the Damages Class Products with the Sustainability Representations on the packaging is likely to deceive a reasonable consumer in violation of the CLRA and UCL. This question again turns on what a reasonable consumer would believe the Sustainability Representations to mean and whether Nestlé's practices comported with that understanding, and will be answered for or against the Damages Class using the common evidence discussed above.

The CLRA claims also include a materiality requirement, *see Clay*, 2018 WL 4283032, at *6, which is also common since materiality is evaluated under an objective standard, *In re Tobacco II Cases*, 207 P.3d at 39 ("A misrepresentation is

1   judged to be 'material' if 'a reasonable man would attach importance to its existence
2   or nonexistence in determining his choice of action in the transaction in
3   question' . . . ."). Whether the Sustainability Representations are material will be
4   answered either in favor of or against each Class as a whole using the common
5   evidence discussed *supra*. *See supra* Summary of Common Classwide Evidence
6   § II.C.

7       These common questions are more than sufficient to satisfy Rule 23(a)(2).
8   *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL 2466559,
9   at *9 (N.D. Cal. May 30, 2014) (finding a class action challenging "all natural"
10  claims on ten different products raised common questions of law and fact).

11                  ### iii.   Typicality Is Met

12      Typicality requires "the claims or defenses of the representative parties" to be
13  "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality
14  is a 'permissive standard[ ].'" *Johnson*, 72 F.4th at 888. It "refers to the nature of the
15  claim or defense of the class representative, and not to the specific facts from which
16  it arose or the relief sought." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).
17  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those
18  of absent class members; they need not be substantially identical." *Hanlon* at 1020.

19      Proposed class representative Marie Falcone plainly satisfies this requirement.
20  Like all Injunctive Relief Class members, Falcone purchased Products labeled with
21  the Sustainability Representations. Falcone Decl. ¶¶ 3-9; *id.*, Ex. A (example
22  receipts and images from Falcone's Product purchases). Like all Damages Class
23  members, Falcone also purchased Products within the Damages Class definition. *Id.*
24  at ¶¶ 3-5. Like all Class members, Falcone was injured because the Sustainability
25  Representations were likely to deceive a reasonable consumer. And the evidence that
26  will be used to prove Falcone's claim, such as the evidence of what reasonable
27  consumers understand the Sustainability Representations to mean, *see supra*
28  Summary of Common Classwide Evidence § II.B, the evidence of the materiality of

the Sustainability Representations, *id.* at § II.C, and the evidence that the Sustainability Representations are deceptive, *id.* at § II.D, is the same evidence that will prove the claims of the entirety of the Class.

Any argument that Falcone cannot represent purchasers of other chocolate and hot cocoa Products that were marketed with the Sustainability Representations simply because they bought Products marketed under a different name, in a slightly different size, or with a non-materially different label lacks merit. *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (holding that a class representative's claims need only be "reasonably co-extensive with those of absent class members," not "substantially identical"). Because all Class members' claims are based on the same challenged Representations which are all deceptive for the same reasons, Falcone is typical of all Nestlé chocolate, hot cocoa, and Nesquik product purchasers. *Id.* (finding typicality was satisfied because "the named plaintiffs and the members of the proposed class 'all have claims arising from the [same] fraudulent scheme'"). Falcone is similarly situated to each Class as a whole.

### iv.     Falcone and Her Counsel Are Adequate

Adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Courts "must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In considering the adequacy of counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

Falcone has no antagonistic or conflicting interest with the members of the

proposed Class. To the contrary, she has demonstrated her commitment to the Class by actively participating in the litigation. She worked with counsel to develop her claims, responded to requests for production of documents and two sets of interrogatories, and was deposed. Falcone Decl., ¶ 20. Falcone has experienced and capable counsel who have been appointed to represent classes in numerous class actions, including deceptive food labeling cases, and will vigorously prosecute the class claims. Zeldes Decl., Ex. 1 (Schonbrun Seplow Harris Hoffman & Zeldes, LLP, firm resume); Granade Decl., Ex. 1 (Reese LLP firm resume). Counsel have devoted a significant amount of time and money to the case, including pursuing third-party discovery, reviewing tens of thousands of pages of documents and taking depositions. Zeldes Decl., ¶¶ 7-8. The adequacy requirement is therefore satisfied.

### C. The Injunctive Relief Class Satisfies Rule 23(b)(2)

#### i. The Injunctive Relief Class Seeks Indivisible Injunctive and Declaratory Relief That Applies to Each Member of the Class

Rule 23(b)(2) requires a plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. The "inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.*; *accord Walters v. Target Corp.*, No. 3:16-cv-1678-L-MDD, 2020 WL 6277436, at *4 (S.D. Cal. Oct. 26, 2020) (Lorenz, J.) (certifying settlement class). "Rather, as the text of the rule makes clear, this inquiry asks only whether 'the party opposing the class has acted or refused to act on grounds that

apply generally to the class.'" *Parsons*, 754 F.3d at 688.

Here, Falcone seeks injunctive remedies that would provide uniform relief to each member of the Injunctive Relief Class. Nestlé has acted and continues to act on grounds that apply generally to the Injunctive Relief Class by labeling the Products with the Sustainability Representations. There is a single result that would provide relief to all members of the Injunctive Relief Class: injunctive relief requiring Nestlé to remove the "sustainably sourced" and "sustainably harvested cocoa beans" and "responsibly sourced" and "help improve the lives of farmers" Sustainability Representations from the Product labels unless its cocoa beans are identity preserved or segregated and sourced without child slave labor and environmental destruction. Nestlé's violations have equal and general application to all Injunctive Relief Class members, as all Injunctive Relief Class members have purchased Products that are deceptively labeled with the Sustainability Representations.

For all the reasons above, the Injunctive Relief Class satisfies Rule 23(b)(2).

**D.    The Damages Class Satisfies Rule 23(b)(3)**

**i.    Common Questions Predominate**

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *accord Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc.*, 577 U.S. at 453. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* "When 'one or more of the central

issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then a 'clear justification' exists for 'handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied."[16] *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 479 (S.D. Cal. 2015).

Predominance "begins . . . with the elements of the underlying cause of action."[17] *Olean*, 31 F.4th at 665. Here, Falcone's CLRA and UCL claims each turn on objective questions that will resolve the heart of the litigation for all Damages Class members. The UCL only requires Falcone to satisfy the "reasonable consumer" standard by showing that "members of the public are likely to be deceived."[18] *Williams*, 552 F.3d at 938. Relief under the UCL "is available without individualized proof of deception, reliance and injury." *In re Tobacco II Cases*, 207

---

[16] Falcone may show that evidence is a permissible method of proving liability classwide "by showing that each class member could have relied on that [evidence] to establish liability if he or she had brought an individual action" and the evidence "could have sustained a reasonable jury finding" on the merits of the common question. *Tyson Foods, Inc.*, 577 U.S. at 455; *Olean*, 31 F.4th at 667.

[17] "Rule 23(b)(3)..does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 568 U.S. at 469.

[18] Falcone's causes of action based on the UCL's unlawful and unfair prongs are also conducive to class treatment. The unlawful prong only requires the violation of another law, the predicate here being, among other things, the CLRA, which can be shown through common proof. The unfair prong is violated when plaintiffs can satisfy either the "balancing" or "tethering" tests. Under balancing, courts "weigh the utility of the defendant's conduct against the gravity of the harm to the [alleged victim]." *Motors, Inc. v. Times Mirror Co.*, 162 Cal. Rptr. 543, 546 (Ct. App. 1980). Under tethering, a practice is unfair if it "offends an established public policy" or is "substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 206 Cal. Rptr. 164, 177 (Ct. App. 1984). Under either test, the inquiry is objective and can be shown through common proof.

P.3d at 35.[19] The "focus is on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Clay*, 2018 WL 4283032, at *6. When the question is whether a reasonable consumer would likely be misled by the challenged deceptive representation, and the question can be answered through common proof, then common issues predominate. *Stearns*, 655 F.3d at 1020.

The "reasonable consumer" standard also applies under the CLRA, which "requires the additional 'showing of actual injury as to each class member,'" *Clay*, 2018 WL 4283032, at *6. However, "if the trial court finds," as the Court should here, that "material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." *Massachusetts Mut. Life Ins. Co. v. Superior Ct.*, 119 Cal. Rptr. 2d 190, 197 (Ct. App. 2002); *accord McAdams v. Monier, Inc.*, 105 Cal. Rptr. 3d 704, 710 (Ct. App. 2010) (holding that plaintiffs may satisfy their burden of "showing causation as to each [class member] by showing materiality as to all"). Materiality is judged by an objective standard. *In re Tobacco II Cases*, 207 P.3d at 39; *see also Amgen*, 568 U.S. at 459 ("Because materiality is judged according to an objective standard, the materiality of [the defendant's] alleged misrepresentations and omissions is a question common to all members of the class [the plaintiff] would represent.").

The Damages Class claims are based on uniform, prominent representations

---

[19] To satisfy the UCL's standing requirement, however, a class representative must show he lost money or property as a result of the alleged deception. *In re Tobacco II Cases*, 46 Cal. 4th at 326. To prove reliance, a plaintiff must show the deceptive conduct was an "immediate cause" of his purchase but need not show it was "the sole or even the predominant or decisive factor influencing his conduct." *Id.* Instead, "[i]t is enough that the representation has played a substantial part, and so had a substantial factor, in influencing his decision." *Id.* Here, Falcone satisfies this requirement, as the record shows the Sustainability Representations played a substantial role in influencing her to purchase the Damages Class Products. Falcone Decl. ¶¶ 3-12.

that were capable of being seen by every Damages Class member. In cases where the defendant's challenged labeling representations are uniform, California courts have routinely certified classes. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) (certifying multiple state classes of consumers pursuing claims regarding misleading advertising of cooking oil); *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) (misleading advertising of food products).

### ii. Common Evidence Will Show Nestlé's Representations are Likely to Deceive a Reasonable Consumer

The common question of deceptiveness, based on a reasonable person standard, will predominate over any individual questions. The central question for the Damages Class is whether the Sustainability Representations were likely to deceive reasonable consumers under the circumstances. Falcone will present common proof that the Damages Class Products were labeled with the Sustainability Representations and that the logo is likely to deceive a reasonable consumer. *See supra* Summary of Common Classwide Evidence §§ II.A, II.B, II.D. And because Nestlé uniformly, prominently marketed the Products using the Sustainability Representations on the packaging, the Damages Class was exposed to the same deceptive course of conduct, and Falcone may obtain relief under the UCL without individualized proof of deception, reliance, or injury. *Prescott*, 2022 WL 3018145, at *4; *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-65 (N.D. Cal. 2020).

### iii. Common Evidence Shows Nestlé's Statements are Material

Common evidence also establishes the Sustainability Representations are material. *See supra* Summary of Common Classwide Evidence § II.C. The fact that the Sustainability Representations are prominently appeared on every Damages Class Product label is evidence of its materiality. Numerous courts have applied the inference of reliance to certify CLRA claims in similar circumstances. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558-59 (S.D. Cal. 2012).

#### iv.    A Full Refund Model for Classwide Damages is Appropriate

Falcone contends Nestlé is liable because its Sustainability Representations are deceptive, and the Damages Class's damages flow solely from that conduct. California law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710, 203 L. Ed. 2d 43 (2019). Here, Falcone's damages model is a full refund of the purchase price for each class member. A full refund is appropriate because the Products are worthless, and it is inherently unfair to sell them because contrary to their representations they are the product of child slave labor and environmental devastation.

The California Supreme Court has aptly recognized that "[f]or a significant segment of the buying public, labor practices do matter in making consumer choices." *Kasky v. Nike, Inc.*, 45 P.3d 243, 262 (Cal. 2002). As the court later stated:

> Whether a particular food is kosher or halal may be of enormous consequence to an observant Jew or Muslim. Whether a wine is from a particular locale may matter to the oenophile who values subtle regional differences. Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger. And whether food was harvested or a product manufactured by union workers may matter to still others.

*Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 889 (2011) (footnote omitted)

Notably, "[n]onkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be **worthless**." *Id.* at 890 (emphasis added). The same is true here: Nestlé's Products, which are made with cocoa sourced from farms rampant with child labor and destructive environmental practices and which are not 100% certified and traceable, are worthless to consumers, who—even according to Nestlé's own documents—are demanding sustainability and making conscious purchasing

1  decisions. Courts have found that "[a] plaintiff may seek restitution for UCL, FAL,
2  and CLRA violations based on a full refund model 'when a product is shown to be
3  worthless,' in which case 'damages may be calculated by multiplying the average
4  retail price by the number of units sold.'" *Capaci v. Sports Rsch. Corp.*, No. 19-cv-
5  03440-FMO-FFM, 2022 WL 1133818, at *15 (C.D. Cal. Apr. 14, 2022); *see also*
6  *Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-cv-00709-CAB-RBB, 2017 WL
7  1020391, at *7 (S.D. Cal. Mar. 16, 2017); *Allen v. Similasan Corp.*, 306 F.R.D. 635,
8  649 (S.D. Cal. 2015); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014).
9  Nestlé's documents admit that consumers associate sustainability language with
10  both labor and environmental practices; that consumers care about sourcing,
11  including traceability, and are actively seeking products that are made in human
12  rights-compliant and environmentally-friendly ways; and that, despite its
13  Representations on the Products, Nestlé's supply chain is tainted with child labor
14  and harmful environmental practices, that certified cocoa is commingled with
15  noncertified cocoa during production, and the cocoa is not traceable to the farm level.
16  Consumers do not wish to support a supply chain that includes child labor and
17  devastating environmental practices, and, thus, consistent with Plaintiff's theory, the
18  purchased products are worthless, warranting a full refund for each Class Member.

19      Even if it could be argued that Nestlé's Products provide some sort of culinary
20  value, such value would be *de minimis* at best and would not impede Falcone and
21  the Damages Class from seeking and obtaining full refunds. *Lambert*, 870 F.3d at
22  1183("The full refund model measures damages by presuming a full refund for each
23  customer, on the basis that the product has no or only a de minimis value."); *In re*
24  *JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 976
25  (N.D. Cal. 2022) (rejecting defendants' argument that product "provided some value
26  to consumers" where plaintiffs' "theory [was] that because it was … inherently
27  unfair to market and sell the JUUL product to youth, youth purchasers received no
28  value from it at all"); *cf. Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2023 WL

5279463, at *31 (N.D. Cal. Aug. 15, 2023) (noting that the *Kwikset Corp.* observation that non-kosher meat would be worthless to an observant Jew "would remain unchanged even if the non-kosher meat was nutritionally or culinarily superior to kosher meat").

Finally, even assuming the Court were to reject Falcone's full-refund damages model (which it should not), that rejection would not lead to denial of certification but, instead, to subsequent administerial proceedings to determine damages, as "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *accord Olean*, 31 F.4th 651, 681-82; *accord Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986-88 (9th Cir. 2015) ("[D]amage calculations alone cannot defeat certification."). Because the core liability issues on each of Falcone's claims will drive the resolution of this litigation, the predominance requirement is satisfied.

### E.   A Class Action Is Superior to Alternative Methods of Adjudication

The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, the proposed Damages Class satisfies the superiority requirement because one trial resolving all claims, instead of hundreds of trials, is superior Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the deceptive consumer product labeling context. *See, e.g.*, *Clay*, 2018 WL 4283032, at *19.

### IV.   CONCLUSION

For the reasons given above, Falcone respectfully requests that the Court grant her motion and certify the Injunctive Relief Class pursuant to Rules 23(a) and (b)(2); certify the Damages Class pursuant to Rules 23(a) and (b)(3); appoint Plaintiff Marie Falcone as the class representative of the Injunctive Relief Class and of the Damages Class; and appoint Schonbrun Seplow Harris Hoffman & Zeldes, LLP, and Reese LLP as counsel for the Injunctive Relief Class and the Damages Class.

1    Date: January 19, 2024

2

**SCHONBRUN SEPLOW
HARRIS HOFFMAN & ZELDES, LLP**

By:   */s/ Helen I. Zeldes*

3       Helen I. Zeldes (State Bar No. 220051)
       *hzeldes@sshhzlaw.com*

4       Joshua A. Fields (State Bar No. 242938)
       *jfields@sshhzlaw.com*

5       Aya Dardari (State Bar No. 344039)
       *adardari@sshhzlaw.com*

6       501 West Broadway, Suite 800
       San Diego, California 92101

7       Telephone: (619) 400-4990

8

**SCHONBRUN SEPLOW
HARRIS HOFFMAN & ZELDES, LLP**

9       Paul L. Hoffman (State Bar No. 71244)
       *hoffpaul@aol.com*

10      John C. Washington (State Bar No. 315991)
       *jwashington@sshhzlaw.com*

11      200 Pier Avenue, #226
       Hermosa Beach, California 90245

12      Telephone: (310) 396-0731

13

**SCHONBRUN SEPLOW
HARRIS HOFFMAN & ZELDES, LLP**

14      Catherine E. Sweetser (State Bar No. 271142)
       *catherine.sdshhh@gmail.com*

15      9415 Culver Boulevard, #115
       Culver City, California 90232

16      Telephone: (310) 396-0731

17

**REESE LLP**
George V. Granade (State Bar No. 316050)

18      *ggranade@reesellp.com*
       8484 Wilshire Boulevard, Suite 515

19      Los Angeles, California 90211
       Telephone: (310) 393-0070

20      Facsimile: (212) 253-4272

21

**REESE LLP**
Michael R. Reese (State Bar No. 206773)

22      *mreese@reesellp.com*
       100 West 93rd Street, 16th Floor

23      New York, New York 10025
       Telephone: (212) 643-0500

24      Facsimile: (212) 253-4272

25      *Counsel for Plaintiff Marie Falcone*
       *and the Proposed Class*

26

27

28