1  George V. Granade (State Bar No. 316050)
   *ggranade@reesellp.com*
2  **REESE LLP**
   8484 Wilshire Boulevard, Suite 515
3  Los Angeles, California 90211
   Telephone: (310) 393-0070
4
   Michael R. Reese (State Bar No. 206773)
5  *mreese@reesellp.com*
   **REESE LLP**
6  100 West 93rd Street, 16th Floor
   New York, New York 10025
7  Telephone: (212) 643-0500

8  Helen I. Zeldes (State Bar No. 220051)
   *hzeldes@sshhzlaw.com*
9  Joshua A. Fields (State Bar No. 242938)
   *jfields@sshhzlaw.com*
10 Aya Dardari (State Bar No. 344039)
   *adardari@sshhzlaw.com*
11 **SCHONBRUN SEPLOW**
   **HARRIS HOFFMAN & ZELDES, LLP**
12 501 West Broadway, Suite 800
   San Diego, California 92101
13 Telephone: (619) 400-4990

14 [Additional Counsel on Signature Page]

15 *Counsel for Plaintiff Marie Falcone*
   *and the Proposed Class*

16

17                **UNITED STATES DISTRICT COURT**

18              **SOUTHERN DISTRICT OF CALIFORNIA**

19                    **SAN DIEGO DIVISION**

20
   MARIE FALCONE, *individually and on*        Case No. 3:19-cv-00723-L-DEB
21 *behalf of all others similarly situated*,
                                                **PLAINTIFF MARIE FALCONE'S**
22                    Plaintiff,                **REPLY MEMORANDUM OF POINTS**
                                                **AND AUTHORITIES IN SUPPORT OF**
23          v.                                  **MOTION FOR CLASS**
                                                **CERTIFICATION**
24 NESTLÉ USA, INC., *a Delaware*
   *corporation*, *and* DOES 1 *to* 100,       Date: To be determined
25                                              Time: To be determined
                    Defendants.                 Place: Courtroom 5B
26                                              Judge: Honorable M. James Lorenz
27                                              Complaint filed: April 19, 2019
                                                Trial date: Not set
28
                                                            Case No. 19cv0723

1

## **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES .................................................................................. ii

3  I.  ARGUMENT ......................................................................................... 1

4    A.  Falcone Has Shown She Has Statutory Standing .............................. 1

5    B.  Falcone Has Shown Typicality ......................................................... 5

6    C.  Certification of the Injunctive Relief Class under Rule 23(b)(2) Is
        Appropriate, as Falcone Has Standing to Seek Injunctive Relief ..... 7
7
     D.  Certification of the Damages Class under Rule 23(b)(3) Is Appropriate,
8        as Predominance Is Established ....................................................... 8

9       i.  The Sustainability Representations Are Sufficiently Uniform ..... 8

10      ii.  The Exposure Requirement Is Met ........................................... 9

11      iii.  No Uniform Understanding Is Required .................................. 10

12      iv.  Materiality Is a Common Question .......................................... 11

13      v.  Injury Is a Common Question .................................................. 13

14      vi.  Nestlé's Expert Report – as well as Falcone's Rebuttal Evidence –
            Demonstrate Commonality and Predominance ....................... 13
15
        vii.  Falcone Has Shown Damages Questions Are Common ............ 14
16
            a.  Common Evidence Regarding Damages Supports
17              Certification .................................................................. 14

18              b.  Falcone's Full Refund Damages Method Is Appropriate
                Here ............................................................................... 15
19
20  II.  CONCLUSION ...................................................................................... 15

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>

3

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,

4   568 U.S. 455 (2013)................................................................................11, 12

5   *Backus v. ConAgra Foods, Inc.*,

6   2016 WL 7406505 (N.D. Cal. Dec. 22, 2016) ..............................................7

7   *Berger v. Home Depot USA, Inc.*,

    741 F.3d 1061 (9th Cir. 2014) .......................................................................9
8

9   *Bradach v. Pharmavite, LLC*,

    735 F. App'x 251 (9th Cir. 2018)................................................................10
10

11   *Bush v. Rust-Oleum Corp.*,

     2024 WL 422080 (N.D. Cal. Feb. 5, 2024) ...........................................12, 13
12

13   *Clevenger v. Welch Foods Inc.*,

     342 F.R.D. 446 (C.D. Cal. 2022)...........................................................11, 12
14

15   *Davidson v. Kimberly-Clark Corp.*,

     889 F.3d 956 (9th Cir. 2018) .........................................................................8
16

17   *DZ Rsrv. v. Meta Platforms, Inc.*, --- F.4th ----, No. 22-15916,

     2024 WL 1203886 (9th Cir. Mar. 21, 2024) ......................................6, 9, 12
18

19   *Elkies v. Johnson & Johnson Servs., Inc.*,

     2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) ...........................................11
20

21   *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,

     326 F.R.D. 592 (N.D. Cal. 2018) ............................................................11, 12
22

     *Gunaratna v. Dennis Gross Cosmetology LLC*,
23
     2023 WL 5505052 (C.D. Cal. Apr. 4, 2023)...........................................1, 5

24   *Hawkins v. Kroger Co.*,

25   337 F.R.D. 518 (S.D. Cal. 2020) ..........................................................6, 14, 15

26   *In re ConAgra Foods, Inc.*,

     90 F. Supp. 3d 919 (C.D. Cal. 2015) .............................................................5
27

     *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
28
     609 F. Supp. 3d 942 (N.D. Cal. 2022).....................................................9, 10

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
   422 F. Supp. 3d 194 (D.D.C. 2019) ..................................................................12

*In re Morning Song Bird Food Litig.*,
   320 F.R.D. 540 (S.D. Cal. 2017) ......................................................................15

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) .................................................................................1, 6

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
   2009 WL 8591607 (C.D. Cal. July 14, 2009) ....................................................4

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) ....................................................5

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ...........................................................................6

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ...................................................................9, 10

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (Cal. 2011) ..............................................................................1, 12

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ...........................................................................15

*Lytle v. Nutramax Lab'ys, Inc.*,
   2022 WL 1600047 (C.D. Cal. May 6, 2022) ..................................................7, 11

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ..........................................................................12

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017) .............................................................................................9

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   2024 WL 348821 (N.D. Cal. Jan. 30, 2024) ...................................................7, 8

*Nucci v. Rite Aid Corp.*,
   2020 WL 3187335 (N.D. Cal. June 14, 2020) ....................................................6

*Prescott v. Reckitt Benckiser LLC*,
   2022 WL 3018145 (N.D. Cal. July 29, 2022) ...............................................9, 10

*Santillan v. Verizon Connect, Inc.*,
2022 WL 4596574 (S.D. Cal. June 13, 2022) ........................................................ 5

*Smith v. Keurig Green Mountain, Inc.*,
2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ..................................................... 12

*Snipes v. Dollar Tree Distribution, Inc.*,
2017 WL 5754894 (E.D. Cal. Nov. 28, 2017) ..................................................... 15

*Spacone v. Sanford, L.P.*,
2018 WL 4139057(C.D. Cal. Aug. 9, 2018) .......................................................... 7

*Suchanek v. Sturm Foods, Inc.*,
311 F.R.D. 239 (S.D. Ill. 2015) ......................................................................... 15

*Testone v. Barlean's Organic Oils, LLC*,
2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ................................................... 6, 7

*Turcios v. Carma Lab'ys, Inc.*,
296 F.R.D. 638 (C.D. Cal. 2014) .......................................................................... 5

*Victorino v. FCA US LLC*,
326 F.R.D. 282 (S.D. Cal. 2018) .......................................................................... 5

*Walker v. Life Ins. Co. of the Sw.*,
953 F.3d 624 (9th Cir. 2020) ............................................................................... 9

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ............................................................................... 4

**STATUTES**

CAL. BUS. & PROF. CODE § 17580.5 ..................................................................... 12

California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ............... passim

California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* .......... passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ................................................................... passim

Federal Rule of Evidence 408 .............................................................................. 3

# I.    ARGUMENT

Plaintiff Falcone has established, and Nestlé does not challenge, numerosity, adequacy, and superiority. Despite Nestlé's protestations, Falcone has also established statutory standing, typicality, and commonality and shown certification is appropriate under Rule 23(b)(2) and Rule 23(b)(3). None of Nestlé's arguments present a salient reason to deny certification.

## A.    Falcone Has Shown She Has Statutory Standing

Nestlé's challenge to Falcone's statutory standing is meritless. To establish UCL standing, a plaintiff must show economic injury caused by the false advertising that is the gravamen of the claim. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011). Any plaintiff with UCL standing "will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108, 1109 (9th Cir. 2013). To demonstrate standing, a plaintiff "must allege 'actual reliance' upon a defendant's misrepresentation[s]." *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052, at *10 (C.D. Cal. Apr. 4, 2023). However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009). "It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." *Id.* at 39. The record evidence shows Falcone has statutory standing because she bought the Products, and the Sustainability Representations were a substantial factor in her decisions to do so. Decl. Falcone ¶¶ 3-12, ECF No. 125-4; *see* Ex. 1, Decl. Granade ("Tr. Dep. Falcone") (filed concurrently herewith) at 38:10-11 (Falcone "buy[s] Nestlé because of their labeling"), 42:20-22 ("[W]hen I go to a store and see a Nestlé package, I buy that because of what they put on the label."), 47:14-19, 50:5-8, 50:18-52:5 ("[W]hen I . . . look and I see all these wonderful things that Nestlé does to help the environment, to help the people in West Africa, that just makes it triple. That's the reason you have to buy it.").[1]

---

[1] *See also* Tr. Dep. Falcone 96:13, 98:4-15, 124:4-14, 125:21-126:6, 129:4-9, 132:20-133:1, 136:7-20, 138:11-14, 140:9-15, 141:3-18, 142:19-143:2, 143:7-147:10, 148:3-13, 156:24-

The record also shows the Sustainability Representations deceived Falcone in the way the TAC alleges. She testified that on learning the truth about Nestlé's supply chain and that the Product packaging is thus deceptive she was "really upset," and it "broke [her] heart" to learn of child labor, of children being "trafficked, bought, [and] carrying pesticides," that "the ground that they're harvesting isn't taken care of," and that Nestlé is continuing the "chopping down [of] the rainforest, instead of properly managing the environment." Tr. Dep. Falcone 32:8-33:23, 35:13-36:19 (the Product packaging "referenced untruths" because Nestlé is in fact using child labor), 40:5-10, 40:19-23, 49:14-16, 52:7-53:2, 62:23-63:23 (the "pivotal thing" that led Falcone to stop buying chocolate was "the deception" and the "continuation of slave labor, the reduction of the rainforest"), 73:2-74:7 (testifying it is "really damaging" that the Products were "produced . . . on the backs of little kids").[2]

Falcone also testified unequivocally that truthful labeling is "all this [case] is about," *i.e.*, "being proper with the labeling and [not] deceiv[ing] people who shop." Tr. Dep. Falcone 38:15-17. When asked what she is "hoping to get out of this lawsuit," Falcone responded that she wants "[a]ll the packaging changed," including removal of the UTZ and Rainforest Alliance seals, and that she "would love to see the child labor stop." *Id.* at 39:9-21. She stated point-blank that she wants Nestlé to "do the right thing," which is: "Don't label something that's not true." *Id.* at 38:6-10. Falcone testified she wants Nestlé to make the Product packaging truthful, keep its commitments and promises, and bring the numbers of child slaves down. *Id.* at 87:4-90:2; *see also id.* at 159:2-21, 116:24-117:13, 199:14-200:14, 252:6-253:2.

___
157:22, 164:7-11, 165:2-7, 175:21-176:3, 184:1-11, 189:1-10, 190:4-12, 192:5-7, 195:21-196:3, 204:18-22, 212:6-8, 220:7-10.
[2] *See also* Tr. Dep. Falcone 75:2-8, 75:21-76:15 (testifying the UTZ and Rainforest Alliance logos should not be on the Product packaging, even the back or the bottom), 77:21-23 (the NCP website shows the number of child slaves is rising), 78:4-10 (despite Nestlé's statements, the number of child slaves "just keeps going up"), 79:24-80:2, 80:17-18, 86:19-24 (acknowledging she is claiming she lost money), 87:4-90:2, 90:15-19, 90:22-24, 95:10-24, 97:9-13, 104:3-15, 105:6-106:12, 107:8-9, 112:22-113:7 ("made with sustainable cocoa" means taking care of the environment and the farmers), 116:24-117:20, 126:21-127:2, 143:7-147:10, 148:14-149:6, 159:2-21, 165:21-24, 205:10-207:1, 212:23-213:5, 221:18-222:13, 223:10-24, 228:13-229:4, 230:3-9, 252:6-253:2.

1    In arguing Falcone lacks statutory standing, Nestlé's repeatedly misstates the record
2    and ignores the full context of the cherry-picked testimony it has quoted. *See* Def.'s Opp'n
3    Pl.'s Mot. Class Cert. 10-12, ECF No. 132 ("Opp'n"). First, it suggests Falcone's testimony
4    that she "never once thought of child slave labor" when she viewed the Product labels means
5    she did not believe the labels made any representations indicating child slave labor is absent
6    from its supply chain. *See id.* at 8, 10, 11, 20. That is not Falcone's point. Instead, Falcone's
7    full statement reveals she is describing her shock and disappointment upon learning that
8    despite Nestlé's Sustainability Representations (including the UTZ and Rainforest Alliance
9    logos), child slave labor is present in its supply chain. Tr. Dep. Falcone 95:6-24. In the same
10   answer, she testified that when she learned the truth, she realized Nestlé's labels are "so
11   deceiving and it's . . . heartbreaking." *Id.* at 95:17-24. Put another way, she "never once
12   thought of child slave labor" existing in a supply chain that was described by Nestlé as, among
13   other things, "sustainable" and as "help[ing] improve the lives of farmers." *Id.* at 95:15-17.

14   Next, Nestlé argues Falcone testified she had "no problems" with labels that have been
15   on the morsels Products since 2019 and the labels are "perfect." Opp'n 11, 12. But Nestlé
16   again omits critical context. Nestlé's questioning concerned the terms on which Falcone might
17   be willing to ***settle*** her case. Indeed, Nestlé expressly introduced the settlement topic just prior
18   to the deposition's lunch break, asking repeatedly what it would take for Falcone "to settle the
19   case" and what would "satisfy" her. Tr. Dep. Falcone 118:15-122:20. After lunch, Nestlé then
20   asked numerous similar follow-up settlement questions about what would "satisfy" her. *Id.* at
21   159:22-160:25, 214:4-217:25 (beginning with "Now we're getting somewhere, aren't we, Ms.
22   Falcone?" and asking if labels would "make [Falcone] happy"), 219:20-220:1. In context,
23   these follow-up questions refer back to the prior settlement questions and what would "satisfy"
24   Falcone. Settlement negotiations and "statement[s] made during compromise negotiations"
25   are inadmissible to "disprove the validity or amount of a disputed claim or to impeach by a
26   prior inconsistent statement or a contradiction." FED. R. EVID. 408. The Court should disregard
27   testimony Falcone gave in response to settlement-related questions, because Nestlé
28   specifically raised settlement. *Cf. JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL

8591607, at *10 n.54, *26 (C.D. Cal. July 14, 2009).

Nestlé makes much of an out-of-context quote in which Falcone stated Nestlé is "not misleading anyone," Opp'n 8, 11, but read in full, her testimony perfectly aligns with a bedrock California consumer protection law principle: ***The UCL and CLRA "prohibit 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public***.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (emphasis added). Falcone's point was that although it is technically true that the NCP, UTZ, and the Rainforest Alliance exist ("They have a Cocoa Plan, and they have alliances," Tr. Dep. Falcone 197:9), her case is "not about that kind of misleading"; rather, her case is "about advertising and not keeping to the plan." *Id.* at 197:6-12; *see also id.* at 157:23-158:5, 158:13-15. And as discussed above, she repeatedly testified this case is about deceptive labeling. *See supra* p. 2:1-28.

Nestlé argues Falcone agrees cocoa can be labeled "sustainably sourced" so long as the manufacturer follows the Rainforest Alliance guidelines, Opp'n 11, but this inaccurately truncates Falcone's testimony. Falcone testified a company must also do "due diligence" to use the term "sustainably sourced," Tr. Dep. Falcone 179:5-23, which she earlier explained means, *inter alia*, "they would have to get those slave numbers down," *id.* at 89:13-16. Nestlé's child labor problem has gotten worse since it engaged in certification programs, not better. Decl. Jura Supp. Mot. Dismiss TAC ¶ 2, ECF No. 84-2; *id.*, Ex. A, at 6, ECF No. 84-5.

Nestlé contends Falcone brought suit merely to "encourage an 'update' of the 2019 Cocoa Plan report," to move representations to the back of the Product labels, and to cause Nestlé to "make 'little steps' toward improving conditions on cocoa farms in West Africa." Opp'n  8, 11. Similarly, it argues Falcone testified the NCP "do[es]n't have to do a hundred percent" for her to be satisfied, and Nestlé "is delivering" the progress she wants to see. *Id.* at 9, 11, 12, 25. However, the statements Nestlé points to and the associated arguments it makes are *not the same thing* as Falcone's agreement that the Sustainability Representations are, or have ever been, in fact truthful and non-misleading. *See, e.g.*, Tr. Dep. Falcone 228:13-229:4, 230:3-9 (testifying that Nestlé's own document shows the child labor rate increased from 17%

to 23% from 2017 to 2019 and stating, "they invest more money because, of course, they're getting more money"). And as discussed above, Falcone testified repeatedly that she wants more than what Nestlé contends in its brief.[3] *See supra* at p. 2:12-20.

Finally, Nestlé argues the sham affidavit rule prevents Falcone from relying on the declaration she submitted in support of class certification. Opp'n 12. However, on "class certification, the sham affidavit rule is not applicable." *Victorino v. FCA US LLC*, 326 F.R.D. 282, 309 (S.D. Cal. 2018). And in any event, "[a] party is permitted to 'elaborat[e] upon, explain[ ] or clarify[ ] prior testimony elicited by opposing counsel on deposition . . . .'" *Santillan v. Verizon Connect, Inc.*, 2022 WL 4596574, at *18 (S.D. Cal. June 13, 2022). The declaration does not contradict Falcone's testimony; rather, it elaborates upon and explains it. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 960-65 (C.D. Cal. 2015).

Falcone has statutory standing. "Any inconsistencies in [her] testimony may be probed at trial as an issue of credibility."[4] *Gunaratna*, 2023 WL 5505052, at *12.

## B. Falcone Has Shown Typicality

Nestlé's challenge to Falcone's typicality showing also lacks merit. "Typicality focuses on the class representative's claim—*but not the specific facts from which the claim arose*—and ensures that the interest of the class representative 'aligns with the interests of the class.'"

---

[3] Similarly, Nestlé also claims Falcone testified the issues she was concerned about have been "remedied" by the current Product labels. Opp'n 8. This ignores numerous instances of contrary testimony and, moreover, overstates what Falcone testified, which was merely a vague and non-committal statement that "[i]t's been remedied a lot." Tr. Dep. Falcone 246:2-3. Viewed in light of the numerous other assertions that the Sustainability Representations have not been cured in Falcone's view, including subsequent testimony, *id.* at 252:21 ("There's not all truths in all of this."), this statement does not defeat her claims.

[4] Nestlé's reliance on *Jones v. ConAgra Foods* (Opp'n 10-12), is misplaced because the plaintiff there (Sturges) testified the label at issue was not misleading at the time she bought the product, *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *4 (N.D. Cal. June 13, 2014), unlike Falcone here. *See supra* p. 2:1-28. *Turcios v. Carma Laboratories* is also off point. *See* Opp'n 10-11. In *Turcios*, the court held the plaintiff had not established reliance because he testified, *inter alia*, he had "no expectation" about how much lip balm was in the jar at issue. *Turcios v. Carma Lab'ys, Inc.*, 296 F.R.D. 638, 643-44 (C.D. Cal. 2014). Here, the record shows Falcone relied on the Sustainability Representations. *See supra* p. 1:18-28.

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (emphasis added). "The requirement is permissive, such that 'representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.* Where, as here, "a defendant engages in a 'common scheme' towards all class members," "there is a strong presumption of typicality." *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *10 (S.D. Cal. Sept. 28, 2021).

*First*, Nestlé reiterates its arguments that Falcone was neither injured nor deceived by the Product labels. Opp'n 12-13. Nestlé is wrong; Falcone was deceived and injured. *See supra* p. 2:1-28. Nestlé also argues Falcone bought the Products "because she loved the way [they] tasted," not because of the Sustainability Representations. Opp'n 13. But the Representations were a "substantial factor" in Falcone's purchase decisions. *See supra* p. 1:18-28. This is sufficient. *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 535 (S.D. Cal. 2020); *Young v. Neurobrands, LLC*, 2020 WL 11762212, at *5 (N.D. Cal. Oct. 15, 2020) ("varying motivations" for purchasing the products did not defeat typicality). Contrary to Nestlé's argument, there is no risk these questions will become the focus of the litigation. *DZ Rsrv. v. Meta Platforms, Inc.*, --- F.4th ----, No. 22-15916, 2024 WL 1203886, at *9 (9th Cir. Mar. 21, 2024); *see Nucci v. Rite Aid Corp.*, 2020 WL 3187335, at *16 (N.D. Cal. June 14, 2020).

*Second*, Nestlé again suggests the Sustainability Representations must not have caused Falcone to purchase the Products because she also had other reasons for her purchases such as taste. Opp'n 13. However, it is well settled in California that the deceptive claim needs only to be a "substantial factor" influencing the plaintiff's conduct. *In re Tobacco II Cases*, 207 P.3d at 39. Nestlé does not address the abundant evidence showing the Sustainability Representations were a "substantial factor" in Falcone's purchase decisions. *See supra* p. 1:18-28. Further, the Ninth Circuit has "'emphasize[d] that the defense of non-reliance is not a basis for denial of class certification' and reliance is more appropriately considered at the merits stage." *DZ Rsrv.*, 2024 WL 1203886, at *9; *accord Testone*, 2021 WL 4438391, at *9.[5]

---

[5]   Nestlé's reliance on *Backus v. ConAgra Foods* (Opp'n 13), is misplaced. In *Backus*, the

*Third*, the Court should reject Nestlé's argument that Falcone's claims are not typical of the claims of purchasers of the 4.5 pound bag of semisweet morsels. *See* Opp'n 13-14. Nestlé does not dispute that Falcone purchased the 12 ounce bag of semisweet morsels. Tr. Dep. Falcone 136:7-20, 138:11-14. The Sustainability Representations present on the 4.5 pound bag are the same as those on the other Products. Under California law, it makes no difference that the 4.5 pound bag is larger than the 12 ounce bag or that some of the claims are on a different location on the packaging. *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2024 WL 348821, at *8 (N.D. Cal. Jan. 30, 2024) (typicality met even though plaintiff did not purchase all 26 products at issue; rejecting defendants' argument that "different arguments apply to the different ingredients at issue"); *Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at *10 (C.D. Cal. May 6, 2022) (typicality met even though plaintiffs only purchased one product at issue because claims "[had] nothing to do with the unique characteristics of the various [products]" and "[had] to do only with what is allegedly shared by all those products"); *Testone*, 2021 WL 4438391, at *9.

## C.   Certification of the Injunctive Relief Class under Rule 23(b)(2) Is Appropriate, as Falcone Has Standing to Seek Injunctive Relief

Nestlé's assertion that Falcone lacks standing to seek injunctive relief also lacks merit. *See* Opp'n 28. A plaintiff has standing to seek injunctive relief in a deceptive labeling case where, *e.g.*, she "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or where she "might purchase

---

plaintiff had filed four other lawsuits with the same lawyer based on the presence of dangerous trans fat in food products, and after he filed the first case, he continued purchasing the products "despite knowing the full extent of dangers associated with trans fat and having sued based on that knowledge." *Backus v. ConAgra Foods, Inc.*, 2016 WL 7406505, at *3 (N.D. Cal. Dec. 22, 2016). Parallel facts are nowhere to be found in Falcone's case, as she has not purchased the Products since "July of 2022," Tr. Dep. Falcone 30:5-9—she no longer buys chocolate or cocoa from *any source, id.* at 40:19-23, 49:14-16—and this is her only lawsuit with her counsel here. *Spacone v. Sanford, L.P.*, which Nestlé cites (Opp'n 13), does not aid it, either, as the plaintiff there testified that driving unexpectedly was his injury, *Spacone v. Sanford, L.P.*, 2018 WL 4139057, at *3-6, *9 (C.D. Cal. Aug. 9, 2018), unlike Falcone, who lost money.

1   the product in the future, despite the fact it was once marred by false advertising or labeling,
2   as she may reasonably, but incorrectly, assume the product was improved." *Davidson v.*
3   *Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). Falcone meets the *Davidson*
4   standard. She currently does not purchase the Products because she cannot trust their labels.
5   Tr. Dep. Falcone 30:5-15, 52:10-13, 62:23-63:23, 105:6-106:12. However, she would
6   purchase the Products again in the future if she could trust the labels. As she testified, "I hope
7   the packaging gets changed, so I can go about my way and buy Nestlé again." *Id.* at 42:11-12;
8   *see also id.* at 175:17-176:1, 245:18-20. And she made clear she is unable to verify on her own
9   whether the Sustainability Representations are in fact truthful. *Id.* at 231:3-24; *see also id.* at
10   116:24-117:13, 227:12 ("I don't know what to trust anymore."). Article III is easily satisfied.
11   *Moore*, 2024 WL 348821, at *11-12; *Young*, 2020 WL 11762212, at *8.

12      Nestlé avers Falcone "continued to buy chocolate after learning about the risks of child
13   labor," Opp'n 28, but fails to mention that the one chocolate product Falcone "slipped" and
14   bought, Butterfinger, Tr. Dep. Falcone 40:19-42:12, is not at issue in this case. And the Court
15   should reject Nestlé's contentions that Falcone is "satisfied" with the NCP and would
16   "happily" buy Products with the current labels for the reasons above. *See supra* p. 3:14-4:1.

17   **D.   Certification of the Damages Class under Rule 23(b)(3) Is Appropriate, as**
18        **Predominance Is Established**

19      **i.   The Sustainability Representations Are Sufficiently Uniform**

20      Nestlé argues the Sustainability Representations are not uniform, Opp'n 16-17, but its
21   own chart belies that contention, Opp'n, App. A. All of the Product labels include the NCP
22   logo, and all include either a "responsibly sourced" claim, a "sustainably sourced" claim, or
23   the representation that Nestlé is "improving the lives of cocoa farmers," or combinations of
24   the foregoing three representations. As shown in the opening brief, ***Nestlé itself admits***
25   ***"responsibly sourced" means the same thing as "sustainably sourced," and "improves the***
26   ***lives of cocoa farmers" is deceptive for the same reasons as the "sustainably sourced" and***
27   ***"responsibly sourced" claims***. Mem. §§ II.B-D. The variations in wording here are immaterial
28   because the message Nestlé conveyed to consumers is part of a "common course of conduct"

1   and is likely to deceive reasonable consumers for the same reasons. *DZ Rsrv.*, 2024 WL
2   1203886, at *5-7 ("[T]he class action mechanism would be impotent if a defendant could
3   escape much of his potential liability for fraud by simply altering the wording or format of his
4   misrepresentations across the class of victims."); *In re JUUL Labs, Inc., Mktg. Sales Pracs. &*
5   *Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 969 (N.D. Cal. 2022) ("*JUUL*") (predominance met
6   where "the messaging, although using different imagery and wording, conveyed consistent
7   messages about JUUL products that would be likely to deceive reasonable consumers in
8   similar ways"); *Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at *5 (N.D. Cal. July
9   29, 2022) ("It is undisputed that every putative class member purchased Woolite bottles
10  displaying the phrases 'COLOR RENEW' and/or 'revives color.' Plaintiffs argue, and the
11  Court agrees, that these phrases are so similar that they may be viewed collectively as a single
12  representation regarding the effect of Woolite detergent on clothing."); *Krommenhock v. Post*
13  *Foods, LLC*, 334 F.R.D. 552, 560 (N.D. Cal. 2020) (certifying class where representations
14  were "a mix of 45 statements that plaintiffs assert are rendered false and misleading given the
15  amount of added sugar included in Post's Products").

### ii.     The Exposure Requirement Is Met

16
17      Nestlé argues the exposure requirement is not met because the representations are
18  "almost exclusively" in small font on the back of the packaging. Opp'n 17-19. However, the
19  UCL/CLRA exposure inquiry only asks if misrepresentations were made to all class members.
20  *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 631 (9th Cir. 2020) ("To establish a reliance
21  presumption, the operative question has become whether the defendant so pervasively
22  *disseminated* material misrepresentations that all plaintiffs must have been exposed to them."
23  (emphasis added)); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014)
24  ("[I]f a 'material misrepresentation ha[s] been *made to* the entire class, an inference of reliance
25  arises as to the class.' . . . [T]he issue is whether the allegedly misleading statements were
26  actually *made to* the consumers in the class." (emphasis added)), *abrogated on other grounds*
27  *by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). This is so even if the representations are in
28  small font on the back of the packaging, because the exposure requirement does not also

Case No. 19cv0723

include a prominence requirement. *Prescott*, 2022 WL 3018145, at *5 (holding "California law does not support a requirement that an alleged misrepresentation must be prominently displayed on the label or packaging before classwide exposure may be inferred" and accordingly finding that "all putative class members were exposed to the color renew/revive representation, ***including those who purchased Woolite bottles displaying only the phrase 'revives color' on the back label***" (emphasis added)); *Krommenhock*, 334 F.R.D. at 565 (rejecting argument that exposure requirement also includes a prominence requirement and instead holding "[w]here, as here, there is evidence that the representation was consistently made on a product's label, the only question is whether it was objectively material to a reasonable consumer"). "Under California law, class members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements." *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018) (unpublished). "Instead, the standard in actions under both the CLRA and UCL is whether 'members of the public are likely to be deceived.'" *Id.* Thus, "***[w]hether 'all or most consumers' were actually exposed to and relied on Challenged Statements are not relevant questions under the California consumer protection statutes at issue***." *Krommenhock*, 334 F.R.D. at 581 n.24 (emphasis added). Because the Sustainability Representations consistently appeared on every Product label, the exposure requirement is met. *Prescott*, 2022 WL 3018145, at *5; *Rushing v. Williams-Sonoma, Inc.*, 2024 WL 779601, at *11 (N.D. Cal. Feb. 21, 2024); *Testone*, 2021 WL 4438391, at *15.

### iii.   No Uniform Understanding Is Required

Nestlé argues consumers do not uniformly understand the Sustainability Representations. Opp'n 19-21. However, the reasonable consumer standard applicable to Falcone's claims does not require her to make any such showing. Under the UCL and CLRA, "plaintiffs do not have the 'burden to establish that there is a uniform understanding among putative class members as to the meaning of [the information at issue], or that all or nearly all of them shared any specific belief.'" *JUUL*, 609 F. Supp. 3d at 995; *accord Bradach*, 735 F. App'x at 255. Nestlé "point[s] to no controlling authority showing that a plaintiff must

1  establish at the class certification stage that consumers have a uniform interpretation of the

2  term that gives rise to the alleged deception," and California federal courts "routinely hold to

3  the contrary." *Lytle*, 2022 WL 1600047, at *15; *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.,*

4  *Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("[T]he standard requires only that the Court find

5  there is a probability that reasonable consumers could be misled, not that they all believed

6  'Made From Real Ginger' means the same thing."); *Elkies v. Johnson & Johnson Servs., Inc.*,

7  2018 WL 11223465, at *4 (C.D. Cal. Oct. 18, 2018) ("[A]t least as to the CLRA claim, the

8  law appears to be that class members do *not* have to have a uniform understanding of the

9  meaning behind the challenged representation.").

10    **iv.    Materiality Is a Common Question**

11    Nestlé's merits-based arguments in support of the proposition that the Sustainability

12  Representations are not material to consumers demonstrate that class certification is

13  appropriate here, as these arguments show the existence of a common question with a common

14  answer (which need not be resolved at this stage of the proceedings). *See* Opp'n 21-24.

15  Nestlé's materiality argument will either succeed or fail with respect to all members of the

16  Class at once and is a common issue that predominates over individualized ones. *Amgen Inc.*

17  *v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013) ("*Amgen*"). "California

18  courts have 'expressly rejected the "view that a plaintiff must produce a consumer survey or

19  similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a

20  representation."'" *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 459 (C.D. Cal. 2022). "[A]

21  lack of such evidence does not prevent class certification—even when defendants offer their

22  own extrinsic proof suggesting that the misrepresentation is *not* material to consumers." *Id.*

23    Nestlé contends *Stearns v. Ticketmaster Corp.* stands for the proposition that if a

24  representation is not material, reliance is an individualized issue. Opp'n 21. *Stearns* predates

25  *Amgen*, in which the United States Supreme Court held:

26       A failure of proof on the *common* question of materiality ends the litigation and
         thus will never cause individual questions of reliance or anything else to
27       overwhelm questions common to the class. Therefore, under the plain language
         of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-

28

certification stage. In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.

*Amgen*, 568 U.S. at 468. Just yesterday, the Ninth Circuit followed *Amgen* in affirming certification of a Rule 23(b)(3) damages class pursuing a fraud claim, holding "proof of materiality 'is not a prerequisite to class certification.'" *DZ Rsrv.*, 2024 WL 1203886, at *6. District courts considering certification of CLRA claims have also followed *Amgen* to hold materiality is a common question, even if the plaintiffs may lose on materiality on the merits, because materiality is governed by an objective standard. *Clevenger*, 342 F.R.D. at 459 n.8; *see also Guzman v. Polaris Indus., Inc.*, 345 F.R.D. 174, 185 (C.D. Cal. 2023); *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 252 (D.D.C. 2019); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115-16 (N.D. Cal. 2018).

Nestlé asserts "the representations Plaintiff's counsel fixate on are not material to class members." Opp'n 21. This misapprehends the Rule 23(b)(3) inquiry and ignores the objective nature of the materiality requirement. *Bush v. Rust-Oleum Corp.*, 2024 WL 422080, at *3 (N.D. Cal. Feb. 5, 2024); *Hadley*, 324 F. Supp. 3d at 1115-16.[6] "In any case, California's statutory adoption of the FTC's Green Guides — which speak to the challenged label claims at issue — means that materiality is adequately proven at this stage." *Bush*, 2024 WL 422080, at *4; *Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *6 (N.D. Cal. Sept. 21, 2020); *Kwikset Corp.*, 246 P.3d at 890; CAL. BUS. & PROF. CODE § 17580.5; TAC ¶¶ 60-73.

Finally, "it is clear under California law that not only is materiality judged by an objective standard, but also materiality to a reasonable consumer does not mean it has to be material to every consumer." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d at 255; *Fitzhenry-Russell*, 326 F.R.D. at 613-14 (evidence that 25% of consumers cared about representation was sufficient evidence of materiality for certification).

---

[6] Nestlé's reliance on *McGinity v. Procter & Gamble Co.* is misplaced. *See* Opp'n 22. *McGinity* was decided at the pleading stage, and the court held the single survey at issue was insufficient on its own to render the claim plausible. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023). *McGinity* did not address commonality or predominance.

### v.   Injury Is a Common Question

Nestlé's argument that Falcone proposes "no feasible way" of figuring out which consumers were injured misconstrues California law. *See* Opp'n 24-25. Under the UCL, "if the challenged advertisement is likely to deceive, it is actionable '***without individualized proof of deception, reliance and injury***.'" *Rushing*, 2024 WL 779601, at *10 n.12 (emphasis added). "A similar analysis applies to claims under the CLRA."[7] *Id. Bush v. Rust-Oleum Corp.* is on point. In *Bush*, the defendant argued the class definition was "overbroad because it includes every purchaser rather than only those who were misled by the labels, i.e., those who suffered an injury." *Bush*, 2024 WL 422080, at *5. The court easily rejected the argument and certified the class. "[T]here is no ascertainability or 'administrative feasibility prerequisite to class certification' in the Ninth Circuit." *Id.*

### vi.   Nestlé's Expert Report – as well as Falcone's Rebuttal Evidence – Demonstrate Commonality and Predominance

Nestlé has submitted the expert report of Dr. Ran Kivetz ("Kivetz") to argue there is no commonality. But Kivetz's report shows exactly the opposite, as his report is common evidence for Nestlé's common defense that no reasonable consumer would be misled by the challenged claims. *See, e.g.*, *Rushing*, 2024 WL 779601, at *12 (whether jury would accept defendant's evidence on materiality or on deception, including its expert report, were common, predominating questions). That fact underscores why a class should be certified.

Further, when the data Kivetz relied upon is examined in the right framework, it is common evidence showing consumers *were* deceived. Specifically, for respondents who were focused on the challenged claims at issue, no less than 25% thought the claim meant no child labor was involved. Decl. Matthews ¶ 28 (filed concurrently herewith); *see also id.* at ¶¶ 17-27. When the responses are expanded to include that the challenged claims convey humanitarian labor practices or sustainable/responsible/ethical practices, the number increases to 62.5%. *Id.* at ¶ 30.

---

[7] Nestlé's arguments about exposure, uniform understanding, and materiality are wrong for the reasons set forth above. *See supra* §§ I.D.ii-.iv.

Indeed, Falcone's counsel had a survey conducted by an independent survey company after Kivetz's deposition on March 8, 2024, based upon information learned at the deposition about how Kivetz uses a different survey method to determine consumer confusion when the corporation that hired him is a plaintiff suing over consumer deception. That survey is attached as Exhibit B to the concurrently filed Declaration of Roger Mendez and shows 51.4% believed the claim meant no child labor was used. Moreover, 69.3% would be less likely to purchase the product if child labor was used in the harvesting of the cocoa used to make the product.

Tellingly, Kivetz has opined that a rate of 18.3% confusion would be a "significant" likelihood of confusion. Declaration of Dr. Ran Kivetz, Ph.D at ¶ 20, *Maker's Mark Distillery, PBC v. Spalding Grp., Inc.*, No. 3:19-cv-00014-GNS-LLK (W.D. Ky. June 30, 2023), ECF No. 136-2 (attached to the Granade Declaration as Exhibit 3). Here, based upon Kivetz's own data, or the survey he conducted using his methodology when a corporation is a plaintiff, the rate of confusion far exceeds the 18.3% he opines is a "significant" likelihood of confusion.

More importantly, the merits are not to be determined here, but the Kivetz report is common evidence. The Matthews rebuttal is also common evidence. The post-Kivetz consumer survey by Mendez is more common evidence. Any one of these factors, is sufficient to establish commonality and underscores why a class should be certified here.

### vii.   Falcone Has Shown Damages Questions Are Common

#### a.   Common Evidence Regarding Damages Supports Certification

Nestlé's merits-based damages argument provides additional evidence as to why certification is appropriate. While Falcone does not agree there are no damages in this case, assuming, for sake of argument, that Nestlé were correct that "[s]urvey evidence confirms that there are no damages here," Opp'n 27, then that would lead to the conclusion that all claims fail on the merits, not the conclusion that individualized questions predominate. "Based on [the TAC's] allegations, it is reasonable to find at this stage in the litigation that [Falcone] has shown that any value she obtained by consuming the [Products] was erased when she found out they [were made with child slave labor and environmental destruction], and that any value class members received will be erased when they find out the same." *See Hawkins*, 337 F.R.D.

at 542. Furthermore, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). "At the class certification stage, Plaintiff need only propose a valid method for calculating class wide damages such that a trier of fact could accurately calculate damages." *Snipes v. Dollar Tree Distribution, Inc.*, 2017 WL 5754894, at *5 (E.D. Cal. Nov. 28, 2017). Falcone has done so here.

> ### b.    Falcone's Full Refund Damages Method Is Appropriate Here

Nestlé contends Falcone's proposed full refund model is not appropriate here because consumers "received high-quality, delicious chocolate." Opp'n 27-28. The Court should reject this argument. The Products were admittedly produced using child slave labor and child labor, and their manufacture destroyed the environment. These practices are *abhorrent*. The Products are therefore "fit only for the trash dump," and full refunds are appropriate. *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 556 (S.D. Cal. 2017). Furthermore, Nestlé's "assertion that courts have 'universally rejected' full refunds in cases involving the deceptive packaging of food or beverages is a gross exaggeration." *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 258 (S.D. Ill. 2015). In *Hawkins v. Kroger Co.*, for example, the court acknowledged that the breadcrumbs at issue "provided some value to the consumer at the time they were consumed." *Hawkins*, 337 F.R.D. at 542. Nevertheless, the court held a full refund model was appropriate because the plaintiffs had provided extensive evidence that the trans fat in the product was dangerous. *Id.* And as in *Suchanek*, "if there was ever a case where [a full refund] theory was appropriate, this may be it." *Suchanek*, 311 F.R.D. at 258.

## II.    CONCLUSION

For the reasons given above, in Falcone's opening brief, and in the concurrently filed declarations of Lynn Matthews, William Ingersoll, and Roger Mendez, Falcone respectfully requests that the Court grant her motion and certify the Injunctive Relief Class pursuant to Rule 23(a) and (b)(2); certify the Damages Class pursuant to Rule 23(a) and (b)(3); appoint Plaintiff Marie Falcone as the class representative for both Classes; and appoint Schonbrun Seplow Harris Hoffman & Zeldes, LLP, and Reese LLP as counsel for both Classes.

Date: March 22, 2024

**REESE LLP**

By: */s/ George V. Granade*

George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
Helen I. Zeldes (State Bar No. 220051)
hzeldes@sshhzlaw.com
Joshua A. Fields (State Bar No. 242938)
jfields@sshhzlaw.com
Aya Dardari (State Bar No. 344039)
adardari@sshhzlaw.com
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
Paul L. Hoffman (State Bar No. 71244)
hoffpaul@aol.com
John C. Washington (State Bar No. 315991)
jwashington@sshhzlaw.com
200 Pier Avenue, #226
Hermosa Beach, California 90245
Telephone: (310) 396-0731

**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
Catherine E. Sweetser (State Bar No. 271142)
catherine.sdshhh@gmail.com
9415 Culver Boulevard, #115
Culver City, California 90232
Telephone: (310) 396-0731

*Counsel for Plaintiff Marie Falcone*
*and the Proposed Class*