THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
PERLETTE JURA, SBN 242332
  pjura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

AL KELLY (*pro hac vice*)
  akelly@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1801 California St. #4200
Denver, Colorado 80202
Telephone: 303.298.5700
Fascimile: 303.298.5907

*Counsel for Defendant Nestlé USA, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE FALCONE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NESTLÉ USA, INC., a Delaware Corporation; and DOES 1 TO 100,<br><br>　　　　　Defendants. | CASE NO. 3:19-cv-00723-L-DEB<br><br>**DEFENDANT NESTLÉ USA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO ISSUE LETTER OF REQUEST UNDER THE HAGUE EVIDENCE CONVENTION TO PERMIT THE TAKING OF EVIDENCE FROM NON-PARTY NESTLÉ S.A.**<br><br>Hearing<br>Date:　TBD<br>Time:　TBD<br>Place:　Courtroom 2B<br>Judge:　Hon. Daniel E. Butcher |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND .................................................................................................. 2

III. ARGUMENT ........................................................................................................ 3

    A.    Falcone's Request Is Untimely. ................................................................. 4

    B.    Falcone Does Not Satisfy the Heightened Standard for Foreign Discovery. ................................................................................................... 5

        1.    The information Falcone requests is not important to this case. ................................................................................................. 6

        2.    Falcone's requests are not sufficiently specific. .............................. 7

        3.    Falcone's requests do not comply with Switzerland's interests or Hague Convention procedures. ..................................... 8

IV. CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases** Page(s)

*In re Anschuetz & Co., GmbH*,
  838 F.2d 1362 (5th Cir. 1988) ................................................................................ 9

*Asis Internet Servs. v. Optin Glob., Inc.*,
  2007 WL 1880369 (N.D. Cal. June 29, 2007) ........................................................ 3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2014 WL 4954634 (N.D. Cal. Oct. 1, 2014) ........................................................... 4

*Champion v. Feld Ent., Inc.*,
  2022 WL 1813608 (S.D. Cal. June 2, 2022) .................................................. 6, 7, 9

*Cordeiro v. Alves*,
  2017 WL 3099086 (S.D. Fla. Apr. 7, 2017) ............................................................ 4

*Cover v. Windsor Surry Co.*,
  2016 WL 8231158 (N.D. Cal. Dec. 19, 2016) ................................................ 4, 6, 7

*Pesch v. Indep. Brewers United Corp.*,
  2014 WL 5106985 (N.D. Cal. Oct. 10, 2014) ......................................................... 7

*Rosales v. FlipFlop USA, LLC*,
  2013 WL 941729 (S.D. Cal. Mar. 11, 2013) ............................................. 4, 5, 6, 7

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
  776 F. Supp. 2d 323 (N.D. Tex. 2011) ................................................................... 9

*Sanchez Mena v. Gomez Paz*,
  2020 WL 6827683 (D. Utah Nov. 20, 2020) .......................................................... 5

*Seoul Semiconductor Co. v. Nichia Corp.*,
  590 F. Supp. 2d 832 (E.D. Tex. 2008) .................................................................... 7

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
  482 U.S. 522 (1987) ............................................................................. 3, 5, 6, 8, 9

*United States v. Sedaghaty*,
  728 F.3d 885 (9th Cir. 2013) .................................................................................. 6

*Whatsapp Inc. v. NSO Grp. Techs. Ltd.*,
  2024 WL 1961068 (N.D. Cal. May 2, 2024) .......................................................... 7

## I. INTRODUCTION

Plaintiff Marie Falcone's request for a broad range of third-party discovery from Nestlé USA's indirect Swiss parent company, Nestlé S.A., has no clear tie to her consumer-deception claims.[1]  Instead, it is a fishing expedition that seeks to leverage an ordinary labeling lawsuit as a means to obtain wide-ranging international discovery and drag out this case.  The Court should deny the request for two main reasons.

First, Plaintiff's counsel's request is untimely.  As shown in the same emails Plaintiff's counsel attach to their motion, they have mentioned seeking discovery from Nestlé S.A. for over a year but have done nothing to pursue it.  Instead, they sought and received extensive discovery from Nestlé USA—which produced over 74,000 pages of material—and third parties, including Rainforest Alliance and Circana.  Plaintiff's counsel proceeded to file a motion for class certification using this information, in which they cited dozens of documents and reports already in their possession and asserted that there was common evidence sufficient to pursue their claims on a classwide basis.  Their delay in pursuing documents through the Hague Convention undermines their claim that those documents are necessary, and risks miring this case in complicated and unnecessary cross-border discovery for years to come.

Second, Plaintiff's counsel's request does not satisfy the requirements for letters of request under the Hague Convention because their letter seeks information of marginal importance, contains overbroad requests that are not articulated with specificity, and does not account for Switzerland's interests and procedures.  The theory of harm Plaintiff's counsel advanced at class certification claims that consumers are harmed based on the statements on the labels.  But Plaintiff's counsel have not explained how the granular farm-level reports they seek—which are mentioned nowhere on the Nestlé USA labels they challenge—are needed for them to prove their consumer-deception claims under this theory.  Moreover, Plaintiff's counsel's broad deposition

---

[1] Undersigned counsel represents only Nestlé USA in this matter and submits this brief on behalf of Nestlé USA—not Nestlé S.A., which is a separate entity.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LETTER OF REQUEST                                CASE NO. 19CV723

topics and document requests do not meet the specificity requirements for the Hague Convention and are unlikely to be executed by Swiss authorities.

Class certification has already been briefed in this case and tens of thousands of pages of material have been produced, all of which is sufficient to litigate Falcone's claims. Put simply, this ordinary labeling dispute does not warrant resort to wide-ranging cross-border discovery. This Court should decline to issue a letter of request.

## II. BACKGROUND

On February 6, 2023, Falcone served Nestlé USA with a total of 70 requests for production of documents spanning a wide range of topics, including all "auditing reports from Nestlé Cocoa Plan auditors." Declaration of T. Loose ("Loose"), Ex. 1 at 8. The requests asked for information not just from Nestlé USA, but from "any predecessor, successor, parent, subsidiary, division, franchise, or affiliate." *Id.* at 1.

On April 11, 2023, Nestlé USA made a first production of documents to Falcone that included chain of custody audit reports about Nestlé USA facilities. Loose, ¶ 3. On May 9, 2023, counsel for Nestlé USA informed Plaintiff's counsel that the "chain of custody audit reports are the only relevant audit reports issued to Nestlé USA from UTZ and/or Rainforest Alliance." Dkt. 157-2, Ex. 3 at 45. Nestlé USA further informed Plaintiff's counsel that Nestlé USA does not operate or supervise cocoa farms in West Africa and would not produce any farm-level audit reports that may be in the possession of Nestlé S.A. because Nestlé USA does not "have custody or control over Nestlé S.A.'s documents, and that entity is not a party." *Id.* Counsel for Nestlé USA reiterated that position in a July 28, 2023, email with citations to supporting authority—an email to which Plaintiff's counsel did not respond. *Id.*, Ex. 5 at 94.

Meanwhile, Nestlé USA proceeded to diligently search for and produce documents within its possession, custody and control, making multiple productions totaling more than 74,000 pages of material. Loose, ¶ 4. These productions contained numerous documents related to the Nestlé Cocoa Plan, including "progress reports" containing specific statistics about the program, *e.g.*, Dkt. 125-2, Ex. 21, detailed

overviews of the Cocoa Plan's sourcing efforts, *e.g., id.* Exs. 28, 30, and specific statistics about the cocoa supply chain, *e.g., id.* Ex. 38. Falcone's motion for class certification cited many of these documents as evidence that her claims could be litigated on a classwide basis, with no mention of the need for additional farm-level audits or any other information from Nestlé S.A. *See* Dkt. 125-2 at 4–16.

On October 12, 2023, less than a month before their then-scheduled deadline to file a motion for class certification, *see* Dkt. 113, Plaintiff's counsel emailed counsel for Nestlé USA, representing that they were "preparing [a] request for documents from Nestle SA through the international process," Loose, Ex. 2. Counsel for Nestlé USA responded to ask for more detail, but did not receive a response from Plaintiff's counsel. *Id.* Finally, on May 24, 2024—more than a year after Nestlé USA informed Plaintiff's counsel that it did not have farm-level audit reports, and four months after filing for class certification—Plaintiff's counsel filed this motion seeking discovery from Nestlé S.A.

## III. ARGUMENT

When a party "seek[s] evidence abroad . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). This requires a court to consider, among other things, "the importance to the litigation of the documents or other information requested," "the degree of specificity of the request," and "the extent to which . . . compliance with the request would undermine important interests of the state where the information is located." *Id.* at 544 n.28 (alterations omitted). A court has the discretion to deny a motion seeking a letter of request under the Hague Convention if "there is good cause" to do so. *Asis Internet Servs. v. Optin Glob., Inc.*, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007).

There is good cause to deny Plaintiff's counsel's request for two reasons: the request is untimely and it does not comply with the requirements for Hague Convention requests articulated by the Supreme Court in *Societe Nationale*.

### A.  Falcone's Request Is Untimely.

Good cause exists to deny a motion seeking a letter of request under the Hague Convention "where granting the motion would cause an inherent delay that would prejudice the opposing party" or where the party seeking discovery has exhibited a "failure to diligently . . . seek discovery in this case." *Cordeiro v. Alves*, 2017 WL 3099086, at *1 (S.D. Fla. Apr. 7, 2017).

Plaintiff's counsel have exhibited just such a failure of diligence here.  They learned that the audit reports they are looking for are not in Nestlé USA's possession more than a year ago, and learned that Rainforest Alliance didn't have those documents nine months ago.  *See* Dkt. 157-1 at 4.  Yet Plaintiff's counsel proceeded to take other discovery, take depositions, commission three separate expert reports, and fully brief class certification without this evidence.  They provide no explanation for why they took no action over the last year to seek the documents in question.

Courts regularly deny motions for letters of request where the party seeking international discovery took too long to file:

- In *Cover v. Windsor Surry Co.*, 2016 WL 8231158 (N.D. Cal. Dec. 19, 2016), the court denied a motion for a letter of request because the plaintiff "had reason to know that [the entity] could have relevant information" five months before it filed its motion and had "not offered an adequate explanation for its delay." *Id.* at *3.
- In *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2014 WL 4954634 (N.D. Cal. Oct. 1, 2014), the court denied a motion for a letter of request, reasoning that because the "motion was only filed a little more than three months prior to the discovery cutoff," it was "late even from the outset." *Id.* at *5.
- In *Rosales v. FlipFlop USA, LLC*, 2013 WL 941729 (S.D. Cal. Mar. 11, 2013), the court denied a party's motion for letters of request, reasoning that because "plaintiff has known about these non-party witnesses for an extended period of time but waited" before acting, the request was "untimely" and gave the impression that "plaintiff is seeking to depose these individuals in order to further

extend discovery and to raise the costs of litigation." *Id.* at *3.

- In *Sanchez Mena v. Gomez Paz*, 2020 WL 6827683 (D. Utah Nov. 20, 2020), the court denied a motion for a letter of request because the party waited five months after discovery began before filing, and thus had "not been diligent in seeking the relief requested." *Id.* at *2.

The delay here is much longer than in the cases above. And there is good reason for denying untimely motions for letters of request: the process for seeking discovery under the Hague Convention is "complicated, dilatory and expensive." *Societe Nationale*, 482 U.S. at 531. The "execution of a letter rogatory can take a substantial amount of time"—often "a year or more." *Sanchez Mena*, 2020 WL 6827683, at *2. The delay may be even longer here given that Swiss law disfavors the kind of wide-reaching, fishing-expedition discovery Plaintiff's counsel seek. *See infra* § III.B.3.

In practice, an untimely request here means that this case could be frozen for an indeterminate period of time while Plaintiff's counsel go on a wild goose chase for tangentially relevant information in Switzerland. Although most discovery is temporarily stayed pending a ruling on class certification, discovery will restart as soon as that fully briefed motion is decided, at which point Plaintiff's counsel would likely still be pursuing these requests in Switzerland. *See* Dkt. 154.

Plaintiff's counsel have been on notice for more than a year that Nestlé USA doesn't have the farm-level audit reports they want. Yet they took no action to seek that information until now. The Court should deny their request as untimely.

**B.   Falcone Does Not Satisfy the Heightened Standard for Foreign Discovery.**

A party seeking discovery through the Hague Convention has the "burden of satisfying the heightened standard for obtaining foreign discovery from . . . non-party witnesses." *Rosales*, 2013 WL 941729, at *3. "Before issuing a letter of request, the Court must analyze the specific facts and consider the foreign jurisdiction's interests to determine if the Hague Convention procedures are appropriate and will be effective." *Champion v. Feld Ent., Inc.*, 2022 WL 1813608, at *3 (S.D. Cal. June 2, 2022). Relevant

factors include (1) "the importance of the information requested to the litigation," (2) "whether the request is sufficiently specific," and (3) "how the issuing or receiving nations' interests will be affected." *Id.*; *Societe Nationale*, 482 U.S. at 544 n.28.

All three of those factors weigh against granting Falcone's motion.

### 1. The information Falcone requests is not important to this case.

Good cause exists to deny a Hague Convention request where the information sought from "non-party witnesses is unimportant to a resolution of the case." *Rosales*, 2013 WL 941729, at *3; *accord, e.g.*, *United States v. Sedaghaty*, 728 F.3d 885, 917 (9th Cir. 2013) (affirming court's denial of motion seeking letters of request where "the potential testimony was not material"). The burden is on the party seeking discovery to "explain the importance or necessity for this specific information" and why the "requests are proportional to its needs in this case." *Cover*, 2016 WL 8231158, at *3.

Falcone cannot make that showing here. Her proposed document requests seek nearly ten years' worth of "farm audit reports," "geodata risk maps," and "underlying data" from audits. *See* Dkt. 157-1 at 48–49. And her proposed deposition topics range from Nestlé S.A.'s "use of cocoa futures" to details about its "policies and practices regarding paying farmers." *Id*. at 8–9. Falcone's motion never explains how this data dump would be necessary to prove what consumers think when they see the labels at issue in this case. Instead, the motion offers a convoluted theory involving the FTC Green Guides and asserts that consumers are deceived because they think "the Nestlé Cocoa Plan and UTZ do not exercise the expertise that consumers reasonably expect from experts in sustainable farming." *Id.* at 6–8. But this is entirely different from the theory of harm Plaintiff's counsel asserted in their motion for class certification, which never mentions the Green Guides, and instead asserts that consumers are harmed if the products are "tainted" with *any* child labor or environmental harm at any point in the supply chain, regardless of what "expertise" the programs have. Dkt. 125-1 at 6, 29. That theory already differed from the one actually held by Falcone herself, who thinks the labels are not deceptive so long as the Nestlé Cocoa Plan "follow[s] the guidelines"

put forward by the Rainforest Alliance—which it indisputably does. Dkt. 132 at 7–12. Plaintiff's counsel's third, brand-new theory of the case is not sufficient to satisfy the "heightened standard for obtaining foreign discovery." *Rosales*, 2013 WL 941729, at *3. Instead, their shifting story makes clear that this is "a fishing expedition based on speculation." *Pesch v. Indep. Brewers United Corp.*, 2014 WL 5106985, at *2 (N.D. Cal. Oct. 10, 2014) (denying request for letter rogatory).

Moreover, if discovery from Nestlé S.A. is as important as Plaintiff's counsel now claims, it stands to reason that they would have sought such discovery earlier in the case, before filing for class certification or at some other point in the year preceding this motion. Their "delay in requesting documents from, and deposition of, [Nestlé S.A.] indicates" those materials "may not be as important as [Plaintiff's counsel] claim." *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 2d 832, 836 (E.D. Tex. 2008).

In sum, because Falcone has not adequately explained the "necessity for this specific information" to prove her labeling claims, the Court should decline to issue a letter of request. *Cover*, 2016 WL 8231158, at *3.

**2. Falcone's requests are not sufficiently specific.**

A court may decline to issue a letter of request where the requests are not "sufficiently specific," *Champion*, 2022 WL 1813608, at *3, or where "the scope of requested discovery sought . . . is plainly overbroad," *Whatsapp Inc. v. NSO Grp. Techs. Ltd.*, 2024 WL 1961068, at *3 (N.D. Cal. May 2, 2024) (declining to issue a letter rogatory). Falcone's proposed letter asks for extensive documentation and contracts covering a nearly ten-year period (April 2015 to present), including documents related to *more than 50 supposed suppliers* of cocoa, *see* Dkt. 157-1 at 48–52, who themselves source cocoa from what the complaint alleges to be "around *2 million*" farms in Côte d'Ivoire and Ghana, Dkt. 78 ¶ 50 (emphasis added). This includes requests for:

- All "farm audit reports";
- All "farm audit data" from any producer of cocoa in Côte d'Ivoire provided by any one of nearly a dozen listed "certification bodies";

- All "Geodata Risk Maps" related to any producer of cocoa in Côte d'Ivoire; and
- All "underlying data referred to" in any of the Nestlé Cocoa Plan reports.

Dkt. 157-1 at 48–49. Many of the terms in these requests remain undefined, making it unclear how much "data" or what specific "reports" Plaintiff's counsel seek as a part of their decade-spanning demand.

Plaintiff's counsel's proposed depositions topics are even broader, asking for testimony related to, among other things:

- Any "purchasing of cocoa" over the last nine-plus years done by "Nestlé S.A., and its officers, directors, trustees, agents, employees, staff members, and paid consultants; any predecessor, successor, subsidiary, division, franchise, or affiliate; and any person or entity acting on behalf of any of the aforementioned," including the "means of purchasing" cocoa, the "use of cocoa futures," and the "methodology for determining the price" paid for every cocoa purchase;
- All "results of audits conducted" on farms over the last nine-plus years;
- "Any and all problems with auditing or monitoring of labor or environmental practices" over the last nine-plus years;
- Any "cocoa programs, including but not limited to the Nestlé Cocoa Plan and any other program in which YOU participate"; and
- Any "contracts with any subcontractors or third parties involving the certification or auditing of cooperatives, farms, and any other supply chain actors" from the same nearly decade-long period.

Dkt. 157-1 at 46–47. These requests are wildly overbroad on their face and their vague terms fall far short of "the degree of specificity" required for a request under the Hague Convention, providing yet another reason to deny Falcone's request. *Societe Nationale*, 482 U.S. at 544 n.28.

3. **Falcone's requests do not comply with Switzerland's interests or Hague Convention procedures.**

In deciding whether to issue a letter of request, courts must "take care to

demonstrate due respect for . . . any sovereign interest expressed by a foreign state." *Societe Nationale*, 482 U.S. at 546. This includes weighing the fact "that many foreign countries, particularly civil law countries, do not subscribe to our open-ended views regarding pretrial discovery, and in some cases may even be offended by our pretrial procedures." *In re Anschuetz & Co., GmbH*, 838 F.2d 1362, 1364 (5th Cir. 1988).

Switzerland—where Nestlé S.A. is located—is just such a country. "Switzerland subscribes to the typical civil law view that the taking of evidence is essentially a domestic judicial function," and it "places great value on the sovereign independence of the nation and the individual autonomy of its citizens." *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 336 (N.D. Tex. 2011). Consistent with that position, Switzerland has made clear "that it will not execute letters of request for pretrial discovery if . . . the request has no *direct and necessary* link with the proceedings in question." *Champion*, 2022 WL 1813608, at *3 (emphasis added).

As explained above, Falcone's expansive discovery requests on topics unrelated to consumer perception and deception have "no direct and necessary link" to her false-labeling claims. As such, her requests would not likely be enforced in Switzerland. *See Societe Nationale*, 482 U.S. at 544 (courts must consider the "likelihood that resort to [Hague Convention] procedures will prove effective" before issuing a letter of request). Moreover, ordering such discovery would impinge on Switzerland's legitimate interest in "protecting commercial privacy inside and outside Switzerland"—particularly given that Falcone's requests seek sensitive and wide-ranging business information. *Stanford*, 776 F. Supp. 2d at 336. This all weighs against issuing a letter of request.

### IV.  CONCLUSION

As the parties' briefing at class certification makes clear, this case is a labeling dispute that will turn on what reasonable consumers think when they see Nestlé USA's labels. Plaintiff's counsel cannot use this lawsuit as a means of seeking sensitive and wide-ranging international discovery at the eleventh hour. Nestlé USA respectfully requests that the Court deny Falcone's motion to issue a letter of request under the Hague

| | |
|---|---|
| 1 | Convention to Nestlé S.A. |
| 2 | |
| 3 | Date: June 17, 2024 |

<table>
<tr><td>Date: June 17, 2024</td><td><b>GIBSON DUNN & CRUTCHER LLP</b></td></tr>
<tr><td></td><td>By: <i>/s/ Timothy W. Loose</i><br>Timothy W. Loose (SBN 241037)<br><i>tloose@gibsondunn.com</i><br>Theodore J. Boutrous, Jr. (SBN 132099)<br><i>tboutrous@gibsondunn.com</i><br>Christopher Chorba (SBN 216692)<br><i>cchorba@gibsondunn.com</i><br>Perlette Jura (SBN 242332)<br><i>pjura@gibsondunn.com</i><br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br><br>Al Kelly (<i>pro hac vice</i>)<br><i>akelly@gibsondunn.com</i><br>1801 California St. #4200<br>Denver, Colorado 80202<br>Telephone: (303) 298-5700<br>Fascimile: (303) 298-5907<br><br><i>Attorneys for Defendant Nestlé USA, Inc.</i></td></tr>
</table>