**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
Helen I. Zeldes (State Bar No. 220051)
*hzeldes@sshhzlaw.com*
Joshua A. Fields (State Bar No. 242938)
*jfields@sshhzlaw.com*
Aya Dardari (State Bar No. 344039)
*adardari@sshhzlaw.com*
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

Paul L. Hoffman (SBN 71244)
*hoffpaul@aol.com*
John C. Washington (SBN 315991)
*jwashington@sshhzlaw.com*
200 Pier Avenue, #226
Hermosa Beach, California 90245
Telephone: (310) 396-0731

Catherine E. Sweetser (SBN 271142)
*catherine.sdshhh@gmail.com*
9415 Culver Boulevard, #115
Culver City, California 90232
Telephone: (310) 396-0731

[Additional Counsel on Signature Page]

*Counsel for Plaintiff Marie Falcone and the Proposed Class.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE FALCONE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br>v.<br>NESTLÉ USA, INC., *a Delaware corporation*, *and* DOES 1 *to* 100,<br><br>Defendants. | Case No. 3:19-cv-00723-L-DEB<br><br>**PLAINTIFF MARIE FALCONE'S REPLY IN SUPPORT OF MOTION TO ISSUE LETTER OF REQUEST UNDER THE HAGUE EVIDENCE CONVENTION TO PERMIT THE TAKING OF EVIDENCE FROM NESTLÉ S.A.**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 2B<br>Judge: Hon. Daniel E. Butcher<br><br>Complaint filed: April 19, 2019<br>Trial date: Not set |

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................... 1
II. ARGUMENT............................................................................................. 1
    A. Falcone's Request is Timely ............................................................. 2
    B. Nestlé Misstates the Applicable Law for Foreign Discovery ........... 4
        1. The Requested Information is Relevant to Falcone's Claims 4
        2. The Requested Information is Narrowly Tailored .................. 7
        3. The Requested Information Exhibits Respect for Comity ...... 9
III. CONCLUSION........................................................................................ 10

## I.     INTRODUCTION

Plaintiff Marie Falcone ("Falcone") has established that the documents and testimony she seeks from Nestlé S.A in her Letter of Request are discoverable and highly relevant to her claims that Defendant Nestlé USA, Inc. ("Nestlé") falsely asserts in the U.S. to U.S. consumers that its cocoa is produced in a socially and environmentally conscious manner.  After refusing to reach out to its counterpart in Switzerland to inquire as to whether it had any relevant documents, Nestlé utterly fails to carry its burden in showing that a "good reason" or "good cause" exists to deny the issuance of the Letter of Request pursuant to the Hague Convention and the liberal discovery standards set forth in the Federal Rules of Civil Procedure. Instead, Nestlé presents a flawed timeliness argument and bogusly contends that the discovery sought is not tied to Falcone's consumer deception claims, both of which should be rejected.

## II.    ARGUMENT

Courts routinely issue letters of request or letters rogatory "where the moving party demonstrates that the evidence sought is relevant pursuant to Rule 26." *Walther-Meade v. Leidos, Inc.*, No. 22cv1777-JAH(BLM), 2023 U.S. Dist. LEXIS 77591, *5 (S.D. Cal. May 3, 2023); *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, No. SACV 16-00909-JVS (KESx), 2017 U.S. Dist. LEXIS 230084, *4-5 (C.D. Cal. May 1, 2017) ("[I]n deciding whether to issue a letter rogatory, a Court decides whether the discovery sought is permissible under the Federal Rules of Civil Procedure."); *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASx), 2020 U.S. Dist. LEXIS 103308, *5 (C.D. Cal. Apr. 14, 2020) (granting motion for issuance of letter rogatory where the requested information was narrowly tailored and relevant to claims and defenses). The law thus places the burden squarely on the opposing party to show "good cause" or "good reason" for denying an application for a letter of request. *See SEC v. Leslie*, No. C 07-3444 JF, 2009 U.S. Dist. LEXIS 24737, *6-7 (N.D. Cal. Mar. 16, 2009); *Upper Deck Int'l B.V. v. Upper Deck Co.*, No. 11cv1741-LAB(KSC), 2013 U.S. Dist. LEXIS 98741, *6 (S.D. Cal. July 12, 2013) ("The party resisting discovery generally bears the burden to show that the

discovery requested is irrelevant to the issues in the case or is overly broad, unduly burdensome, unreasonable, or oppressive."); *Gardner v. Starkist Co.*, No. 19-cv-02561-WHO, 2021 U.S. Dist. LEXIS 18905, *12 (N.D. Cal. Jan. 29, 2021) ("Judges in this district have held that motions requesting issuance of a letter of request or letter rogatory should generally be granted and that '[t]he opposing party must show good reason for a court to deny an application for a letter rogatory.'") (citations omitted). Nestlé does not—indeed, cannot—meet its burden.

### A.     Falcone's Request is Timely

Contrary to Nestlé's claim that Falcone unduly delayed in bringing her motion for a letter of request (Opp., Docket Entry ("Dkt.") 160, 4:1-21), Falcone has been sufficiently diligent here. *First*, discovery is still open, and the discovery cutoff in this case is not set for until three months following a ruling on Falcone's pending Motion for Class Certification. Dkt. 154.[1] These facts alone render the four cases Nestlé relies upon entirely distinguishable. In *Cover v. Windsor Surry Company*, No. 14-cv-05262-WHO, 2016 WL 8231158 (N.D. Cal. Dec. 19, 2016), the plaintiff moved for letters rogatory mere days before the close of discovery, seeking a wide range of documents and communications from third-parties, and even admitted that he could have obtained some of this discovery from defendants directly. In *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C-07-5944-SC, 2014 U.S. Dist. LEXIS 141795 (N.D. Cal. Oct. 1, 2014),

> the plaintiff listed two potential witnesses in the Republic of Korea and, over 16 months later, filed a motion seeking letters of request for their depositions "a little more than three months prior to the discovery cutoff." **Even under those circumstances, the court granted the motion and issued the letters of request.**[2]

---

[1] This Court's May 7, 2024 Order Granting the Parties' Joint Motion for Partial Discovery Stay Pending Ruling on Class Certification Motion and Extension of Discovery Cutoff expressly carves out international discovery from non-party Nestlé S.A. from the discovery stay. Dkt. 154.

[2] The letters of request were subsequently rejected for failing to comply with the Hague Convention and Civil Procedure Rules of Korea. No such facts exist that warrant denial of Falcone's request here. *See also Zoho Corp. PVT. Ltd v. Freshworks, Inc.*, No. 20-cv-01869-VC (TSH), 2021 U.S. Dist. LEXIS 124432, *9-10 (N.D. Cal. July 2, 2021) (explaining why *CRT* is unpersuasive and granting motion for letter of request despite defendant's objections that plaintiff was not diligent in pursuing the discovery, citing "the liberal standard for issuance of letters of request") (citations omitted) (emphasis added).

In *Rosales v. FitFlop USA, LLC*, No. 11cv973-W(KSC), 2013 U.S. Dist. LEXIS 33472, *9, *12 (S.D. Cal. Mar. 11, 2013), the plaintiff "waited until nine days before discovery was schedule to close" to request to depose witnesses in England. And in *Sanchez Mena v. Gomez Paz*, No. 2:20-cv-00036-CW-JCB, 2020 U.S. Dist. LEXIS 218282, *4 (D. Utah Nov. 20, 2020), the plaintiff raised the issue of a letter rogatory for the first time a little over one month before the discovery deadline and filed her motion for issuance of a letter rogatory several days later such that by the time the court heard the motion, discovery was set to close in less than a month. Here, by contrast, Falcone's motion was submitted well in advance of the discovery cut-off, providing ample time for execution of the letter of request. In fact, as noted in *CRT*, an ABA report analyzing time frames for the execution of letters of request found that "more than 65 percent of requests for oral testimony are executed within four months of issuance[.]" *CRT*, 2014 U.S. Dist. LEXIS 141795 at *105. Additionally, unlike the plaintiff in *Cover*, Falcone has adequately explained that the narrowly-tailored information she seeks from Nestlé S.A. cannot be obtained through normal channels of discovery. Mot., Dkt. 157-1, 1:18-21; 3:12-4:18. Thus, Falcone's request is timely. *See Fisher & Paykel Healthcare v. Flexicare Inc.*, No. SA CV 19-00835-JVS (DFMx), 2020 U.S. Dist. LEXIS 186727, *4-5 (C.D. Cal. Aug. 17, 2020) (finding moving party was diligent in seeking discovery from foreign non-parties despite knowing "of the three named inventors since the filing of the Complaint in May 2019" and "wait[ing] a year to raise this issue").

*Second*, Falcone's counsel's strategic decision to wait until after class certification was fully briefed—but well before the discovery cut-off—to bring the motion for a letter of request does not mean that Falcone's counsel remained idle since first learning that Nestlé did not possess farm-level audit reports. Unlike the plaintiff's counsel in *Sanchez Mena*, Falcone's counsel diligently apprised Nestlé's counsel in writing that they were preparing a request for evidence from Nestlé S.A. as early as October 12, 2023, which Nestlé acknowledges. *See* Opp., 3:6-9. Nestlé also acknowledges that it produced over 74,000 pages of material over the course of multiple document productions and that

documents produced by Nestlé were cited by Falcone in support of her Motion for Class Certification. Opp., 2:24-3:5. Falcone's counsel's strategic decision to review Nestlé's voluminous document production and rely on those documents, among other things, as evidence that Falcone's claims could be litigated on a classwide basis before seeking discovery from Nestlé S.A. was so that Falcone's letter of request could be fine-tuned to avoid duplicative discovery and to instead exclusively focus on merits-based discovery that is directly relevant to Falcone's consumer deception claims. Nestlé seems to take issue with the fact that Falcone's counsel proceeded to take other discovery, commission three separate expert reports, and fully brief class certification without evidence from Nestlé S.A. (Opp., 4:10-12)—but that is precisely the point and belies Nestlé's position that Falcone's counsel took no action. Falcone's counsel's pursuance of other discovery enabled them to narrowly tailor the letter of request to seek limited, merits-based discovery. Despite Nestlé's mischaracterizations suggesting otherwise, it is evident that Falcone's counsel was not sitting on their hands.

### B. Nestlé Misstates the Applicable Law for Foreign Discovery

Nestlé completely turns the standard for foreign discovery on its head, erroneously claiming that the burden lies with the plaintiff to satisfy a nebulous "heightened" standard for obtaining such discovery. On the contrary, "[n]either Rule 26 nor any other authority supports the application of…a heightened standard." *CRT*, 2014 U.S. Dist. LEXIS 141795 at *103. As discussed above, Falcone need only show that the requested information is relevant to her claims—which she has done (*see* Mot., 6:6-10:12)—and the burden is on Nestlé to establish a good reason or good cause for why the letter of request should not be issued—which it has failed to do. The Court's inquiry should end there. Nevertheless, even if the Court were to evaluate the three factors identified by Nestlé, namely the (1) importance of the requested information to the litigation, (2) whether the request is sufficiently specific, and (3) how the issuing or receiving nations' interests will be affected (Opp., 5:1-6:3), it is clear that these factors militate in favor of granting Falcone's motion.

### 1. The Requested Information is Relevant to Falcone's Claims

Falcone alleges that Nestlé engages in unlawful, unfair, and deceptive conduct by falsely labeling its cocoa products with "sustainability" claims, seals, and/or certifications that mislead reasonable consumers into believing that its products have been produced using cocoa sourced through environmentally sound and socially responsible practices. Mot., 6:8-8:2. Falcone asserts, *inter alia*, that, despite these labels, Nestlé's cocoa supply chain is riddled with child labor, and Nestlé has no protocols in place to prevent purchasing cocoa produced on protected rainforest nature reserves in Côte d'Ivoire. Mot., 2:14-19. As explained in Falcone's opening brief, the documents Falcone seeks from Nestlé S.A., *to wit* the farm audit reports and data and geodata risk maps from April 19, 2015 to present (the "Class Period") and the underlying data referred to in the Nestlé Cocoa Plan "Tackling Child Labour" reports and "Progress Reports" from years 2015 to present, concern the auditing and certification of cocoa farms and cooperatives that source cocoa in Côte d'Ivoire for Nestlé, which Nestlé purportedly relies upon for its false and misleading labels representing environmental and social responsibility. Mot., 8:3-8. In other words, the documents detail, without limitation, findings related to incidents of child labor and harmful environmental practices on farms and cooperatives that source cocoa in Côte d'Ivoire for Nestlé and thus go directly to Falcone's consumer deception claims.

The testimony sought from Nestlé S.A.'s Cocoa Plan Manager, Darrell High, concerning the specific details, scope, and efficacy of the Nestlé Cocoa Plan ("NCP") and Child Labor Monitoring and Remediation System ("CLMRS"); Nestlé's knowledge of child labor and of environmental degradation and/or destruction in its cocoa supply chain; Nestlé's policies, practices, and purchasing of cocoa; problems with auditing of labor or environmental practices in Nestlé's cocoa supply chain; and audit results during the Class Period is likewise highly relevant to Falcone's consumer deception claims. Mot. 9:18-25. Because Mr. High is identified in documents produced by Nestlé as being directly involved in and having input in the creation, design, and development of the NCP (Nestlé's own internal scheme to source cocoa "sustainably"), Mr. High's testimony will likely yield responsive information and support Falcone's showing of consumer deception.

Nestlé grasps at straws when it argues that Falcone's theory of harm has "shifted." Opp., 6:19-7:6. Nonsense. Since the inception of this case, Falcone has consistently claimed that Nestlé falsely represents its cocoa products as being "sustainably sourced" and "responsibly sourced," among other things, when, in reality, Nestlé sources its cocoa from farms that use child labor and harmful environmental practices and commingles its certified and noncertified cocoa such that none of the cocoa is traceable to the farm level. *See*, *e.g.*, Third Amended Complaint ("TAC"), Dkt. 78, ¶¶ 8, 11-17, 24, 26-30, 32-45, 48-59, 83-91; Memorandum of Points and Authorities in Support of Motion for Class Certification, Dkt. 125-1, 1:13-2:1, 2:14-15:1, 28:24-29:18. Nestlé contends that Falcone has introduced a "new" and "different" theory involving the FTC Green Guides, yet completely glosses over the fact that references to the FTC Green Guides in Falcone's motion *are taken from the operative complaint*. Mot., 7:3-14. This is not a new or different theory but is simply a recitation of what Falcone has consistently alleged since the beginning of this case. Falcone's motion makes plain that just like in the TAC and Motion for Class Certification, "Plaintiff asserts that Nestlé USA's deceptive labeling and use of the UTZ standard misleads consumers into believing Nestlé USA's products are procured in accordance with environmentally and socially responsible standards, when it knows they are not." Mot., 3:8-11. Indeed, the very fact that Falcone initially sought audit reports from Nestlé and Rainforest Alliance through normal channels of discovery, to little success, demonstrates that her theory has not changed. *See* Declaration of Helen I. Zeldes in Support of Motion to Issue Letter of Request Under the Hague Evidence Convention to Permit the Taking of Evidence from Nestlé S.A., Dkt. 157-2, ¶ 7, Ex. 2, ¶ 11. Nestlé also inappropriately trots out an argument from its Opposition to Falcone's Motion for Class Certification, claiming that Falcone herself does not think that Nestlé's labels are deceptive so long as the NCP follows the Rainforest Alliance guidelines. Opp., 6:27-7:1. This misleadingly truncates Falcone's testimony where she explained that a company must also do "due diligence" to use the term "sustainability sourced," which means, *inter alia*, "they would have to get those slave numbers down." *See* Reply Memorandum of Points

and Authorities in Support of Motion for Class Certification, Dkt. 138, 4:13-19. In sum, Falcone's theory has always been consistent, and the information she seeks is directly relevant to this litigation.

Nestlé's authorities do not call for a different conclusion. In *Pesch v. Indep. Brewers United Corp.*, No. C-13-05317 DMR, 2014 U.S. Dist. LEXIS 145870, *6-7 (N.D. Cal. Oct. 10, 2014), the defendants had "little basis for their assertions" that the plaintiff's current employer would have pertinent information about the plaintiff's previous job. Such speculation is not present here as Falcone has shown that Nestlé S.A. is likely to possess the documents she seeks, and Mr. High is likely to yield responsive testimony. Mot., 3:12-4:18, 8:11-13. Falcone has also not "delayed" in seeking this discovery, as Nestlé would have the Court believe, but has instead thoughtfully taken the time to review discovery obtained from Nestlé and other sources to ensure that the information requested from Nestlé S.A. is merits-focused and sufficiently specific. *Cf. Gardner*, 2021 U.S. Dist. LEXIS 18905 at *22 (holding plaintiffs "should review the discovery produced by [defendant] Starkist and discovery produced by [its Korean parent company] Dongwon in response to Request Nos. 4 through 8" before seeking further information from Dongwon). Accordingly, Nestlé's reliance on *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 2d 832 (E.D. Tex. Nov. 20, 2008), where the defendants moved for a letter of request a little over a month before the close of fact discovery such that the hearing on the motion fell on the day before the close of fact discovery, is misplaced. Falcone has established that the requested information is important to this case.

## 2. The Requested Information is Narrowly Tailored

Nestlé criticizes Falcone's requests for not being sufficiently specific (Opp., 7:16-8:25), but nothing could be further from the truth. In terms of documents, Falcone only makes four requests, all of which are tied to the Class Period and to Nestlé's cocoa supply chain in Côte d'Ivoire. Contrary to Nestlé's inaccurate descriptions, Falcone is not asking for contracts or for data from just "any producer of cocoa in Côte d'Ivoire," and Falcone does *not* allege that Nestlé's suppliers source cocoa from 2 million farms such that the

volume of farm audit reports and data requested would be overbroad. Opp., 7:21-8:2; *see* TAC, ¶ 50 (alleging that "The number of cocoa farmers in Côte d'Ivoire and Ghana is estimated to be around 2 million."). Furthermore, the deliberate terms used in each request come directly from information that is publicly available about Nestlé and Nestlé S.A. and/or documents that were produced by Nestlé and/or Rainforest Alliance and/or deposition testimony from Rainforest Alliance's witness. As such, Nestlé's vagueness accusation falls flat.

Additionally, by unpacking Falcone's limited document requests, it becomes clear that Nestlé's overbreadth concerns are wildly inflated. The first three requests relate to the auditing process and ask for farm audit reports and data as well as geodata risk maps. Mot., Ex. A, 20-21. Audits typically occur only once on an annual basis, and only a square root of small farms are audited. *See*, *e.g*., Rainforest Alliance 2020 Certification and Auditing Rules, https://www.rainforest-alliance.org/wp-content/uploads/2022/02/SA-R-GA-1-V1.3-Certification-and-Auditing-Rules.pdf at p. 27 (noting yearly verification process), 95 (discussing square root formula) (last visited June 20, 2024). Most cocoa farms in Côte d'Ivoire are small farms. *See* TAC, ¶ 50. In light of this crucial context, Falcone's first three requests pass the muster of the second factor. Similarly, with respect to Falcone's fourth request, the names of the specific reports mentioned in the request are taken directly from Nestlé's NCP website. *See* Tackling Child Labour Reports, https://www.nestlecocoaplan.com/reports/tackling-child-labour (last visited June 20, 2024); Progress Reports, https://www.nestlecocoaplan.com/reports/nestle-cocoa-plan-progress (last visited June 20, 2024). There are two "Tackling Child Labour" reports and five "Progress Reports," which cite data from Nestlé's CLMRS, among other things, and which range mostly from 5 to 25 pages, with the longest report docking in at only 41 pages. *Id*. Accordingly, Nestlé's bare, conclusory, and misleading statements about vagueness and overbreadth ring hollow.

In terms of the requested testimony, Falcone only lists ten deposition topics, most of which are anchored by the Class Period and all of which concern Nestlé's sourcing of

cocoa from Côte d'Ivoire. Much like the document requests, the terms used in the deposition topics are derived from publicly available information about Nestlé and Nestlé S.A. and/or documents that were produced by Nestlé. Moreover, they are narrowly tailored to the subject matter surrounding Mr. High's connections to the case. There is no question that they are sufficiently specific.

### 3.   The Requested Information Exhibits Respect for Comity

Contrary to Nestlé's contentions otherwise (Opp., 8-9), issuing the Letter of Request is fully consistent with demonstrating respect for Switzerland's sovereign interest, and Falcone's requests do have a "direct and necessary link" to her claims. The case of *T.R.P. Co. v. Similasan AG* is on point. There, the plaintiff filed a motion for issuance of a letter of request under the Hague Convention to a company in Switzerland. *T.R.P. Co. v. Similasan AG*, No. 2:17-cv-02197-JCM-CWH, 2019 WL 1382491, *1 (D. Nev. Mar. 27, 2019). The court recognized the plaintiff's "discovery request raise[d] Switzerland's sovereign interests, as the discovery [was] intrusive." *Id.*, *2. This did not stop the court from granting the motion. It concluded that "discovery is inherently intrusive." *Id.*; *see also Multimedia Pat. Tr. v. Apple Inc.*, No. 10-cv-02618-H, 2012 WL 12868304, at *4 (S.D. Cal. July 30, 2012) (granting motion for letter of request to company based in Switzerland even though the discovery requests therein were "intrusive and detailed" because the requests "relate[d] directly" to the plaintiff's claim. Here, as in *T.R.P. Co.*, while the nature of Falcone's requests raise Switzerland's sovereign interests, the information Falcone seeks is related directly to her claims, and will assist the Court in evaluating the merit of her claims. *See supra* Section III.B.1. Switzerland's sovereign interest will be appropriately respected.

Nestlé's reliance on *Champion v. Feld Entertainment, Inc.* (Opp., 8), is misplaced, as *Champion* supports granting Falcone's motion. In *Champion*, the court granted a joint motion for issuance of an evidence request under the Hague Convention. *Champion v. Feld Ent., Inc.*, No. 20-cv-02400-JO-KSC, 2022 WL 1813608, *5 (S.D. Cal. June 2, 2022). While the court observed that one of Switzerland's reservations to the Hague

Convention is that it will not execute a letter of request if "the request has no direct and necessary link with the proceedings in question," *id.* at *3, it went on to hold that "none of [Switzerland's] reservations [were] implicated" by the request at issue, *id.* at *4. As in *Champion*, here, Falcone's requests have a "direct and necessary link" with this case. *See supra* Section III.B.1.

*S.E.C. v. Stanford International Bank, Ltd.*, upon which Nestlé also relies (Opp., 9), also supports granting Falcone's motion. In *Stanford*, the issue was whether a receiver should seek discovery from a Swiss company under the Federal Rules of Civil Procedure or under the Hague Convention. *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 326 (N.D. Tex. 2011). The court denied the receiver's request to proceed under the Federal Rules and ordered it to follow the Hague Convention. *Id.* The court weighed seven factors set forth in *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199 (E.D.N.Y. 2007), to reach its conclusion. *Stanford*, 776 F. Supp. 2d at 330-42. Nestlé cites, in part, the court's statements in *Stanford* that "Switzerland has a long-standing 'national political tradition that places great value on the sovereign independence of the nation and the individual autonomy of its citizens'" and that "[t]hat tradition 'is embodied in . . . bank secrecy statutes' that 'have the legitimate purpose of protecting commercial privacy inside and outside Switzerland.'" *Id.*, 336; Opp., 9. Nestlé fails to mention, however, that the court's conclusion from the foregoing was not to deny the receiver the requested discovery. Instead, the statements are part of the court's analysis of the fifth *Credit Lyonnais* factor, in which it found the request implicated important interests of both America and Switzerland and concluded the factor was neutral. *Stanford*, 776 F. Supp. 2d at 335-37. Indeed, as stated above, the court ultimately ordered the receiver to pursue its request under the Hague Convention. *Id.*, 342.

### III.   CONCLUSION

For the reasons set forth herein and in Falcone's opening brief, Falcone respectfully requests that this Court grant her motion to issue a letter of request under the Hague Evidence Convention for the taking of evidence from Nestlé S.A.

Respectfully submitted,

Date: June 24, 2024

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: /s/ Helen I. Zeldes

Helen I. Zeldes (SBN 220051)
*hzeldes@sshhzlaw.com*
Joshua A. Fields (SBN 242938)
*jfields@sshhzlaw.com*
Aya Dardari (SBN 344039)
*adardari@sshhzlaw.com*
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

**REESE LLP**
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
Paul L. Hoffman (SBN 71244)
*hoffpaul@aol.com*
John C. Washington (SBN 315991)
*jwashington@sshhzlaw.com*
200 Pier Avenue, #226
Hermosa Beach, California 90245
Telephone: (310) 396-0731

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
Catherine E. Sweetser (SBN 271142)
*catherine.sdshhh@gmail.com*
9415 Culver Boulevard, #115
Culver City, California 90232
Telephone: (310) 396-0731

*Counsel for Plaintiff Marie Falcone and the Proposed Class.*