1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| MARIE FALCONE,<br><br>                                Plaintiff,<br><br>v.<br><br>NESTLE USA, INC.,<br><br>                                Defendant. | Case No.:  3:19-cv-723-L-DEB<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>**[ECF Nos. 125, 153]** |

Pending before the Court in this action alleging deceptive product labeling is Plaintiff's motion for class certification.  Defendant filed an opposition, and Plaintiff replied.  In addition, Defendant filed a Motion to Strike or Exclude the Declarations of Roger Mendez, William Robert Ingersoll, and Andrea Lynn Matthews.  Plaintiff filed an opposition and Defendant replied.  The Court decides the motions on the briefs without oral argument.  *See* Civ. L. R. 7.1(d)(1).  For the reasons stated below, Plaintiff's motion is for class certification is granted, and Defendant's motion to strike is denied.

/ / / / /

1

# I.    **BACKGROUND**

According to the operative complaint (ECF No. 78), Defendant is the world's largest food company and is best known for its chocolate products.  It purchases approximately 414,000 tons of cocoa annually.

Plaintiff regularly purchased Defendant's chocolate chip and cocoa mix products.  The product labels displayed statements as "sustainably sourced," "responsibly sourced," "sustainably harvested cocoa beans," "improving the lives of cocoa farmers," and "better farming, better lives" as well as the "NESTLÉ Cocoa Plan" ("NCP"), "Rainforest Alliance," and "UTZ" logos (collectively "Sustainability Representations").  For purposes of class certification, the parties stipulated to a list of product labels relevant to this action.  (ECF No. 125-2, Zeldes Decl., Ex. 2.)[1]  The Sustainability Representations led Plaintiff and other consumers to believe that the products were produced in accordance with environmentally and socially responsible standards.  Plaintiff alleges that she relied on these representations when she purchased Defendant's products.

Plaintiff claims the Sustainability Representations were deceptive because Defendant sourced its cocoa from West African plantations which rely on child labor, including child slave labor, and contribute to deforestation.  Plaintiff also claims that, according to Defendant's own statements, the child labor conditions had worsened rather than improved after the inception of the NCP.  Plaintiff alleges that she would not have purchased the products if she had known the truth.

In her operative complaint Plaintiff claims violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), on her own behalf as well as on behalf of a putative class of California consumers.  She seeks injunctive

_____

[1]    The labels were filed as Exhibits 3-5 to the Zeldes Declaration.  (ECF No. 140.) The Sustainability Representations made on each label are summarized in Appendix A to Defendant's opposition.  (ECF No. 132 ("Appendix").)

relief and a refund for the products purchased.  The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

With her pending motion Plaintiff seeks to certify two classes.  First, she seeks to certify, a class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure[2] to recover monetary relief.  The class is defined as follows:

> All persons who purchased at least one of the following Nestlé Products during the following time periods:
> (i)     Semisweet Morsels (12 or 72 oz) from 11/21/18 to present;
> (ii)    Mini Semisweet Morsels (10 or 20 oz) from 10/17/17 to present;
> (iii)   Dark Chocolate Morsels (10 or 20 oz) from 5/4/15 to present;
> (iv)    Milk Chocolate Morsels (11.5 or 23 oz) from 4/19/15 to present;
> (v)     Mini Marshmallows Hot Cocoa (6 Pack or 8 Pack) or Rich Milk Chocolate Hot Cocoa (6 Pack, 8 Pack, or 27.7 oz) from 12/14/17 to present;
> (vi)    Nesquik Powder 16 oz from 7/6/15 to 4/27/20;
> (vii)   Nesquik Powder (9.3 or 41.9 oz) from 5/3/15 to 12/12/17;
> (viii)  Nesquik Powder 18.7 oz from 4/7/17 to present.

(ECF No. 141, Mot. at 18; hereinafter "Refund Class".)  Second, Plaintiff moves to certify a class pursuant to Rule 23(a) and (b)(2) for injunctive relief, defined as follows:

> All persons who purchased at least one Nestlé Product[3] labeled with the words "sustainably sourced", "responsibly sourced", uses "sustainably harvested cocoa beans", "improve[s] the lives of cocoa farmers", or "better lives" and that has "Nestlé Cocoa Plan", "Rainforest Alliance" and/or "Utz" logos, during the period from April 19, 2015, to the present.

(*Id.*; hereinafter "Injunctive Relief Class".)  Plaintiff seeks injunctive relief requiring Defendant to remove the Sustainability Representations from the product labels unless it can trace the cocoa beans to sources without child labor or environmental destruction.

---

[2]     All further references to "Rule" and "Rules" are to the Federal Rules of Civil Procedure.

[3]     The reference to "Nestlé Products" is to the products listed in the definition of the Refund Class.

Defendant opposes certification arguing that Plaintiff lacks standing and fails to meet Rule 23 requirements.

## II.   DISCUSSION

### A.   Plaintiff's Standing

Plaintiff is the sole class representative named in this action.  Defendant challenges her standing under UCL and CLRA and argues she lacks Article III standing to seek injunctive relief.  "Standing is the threshold issue in any suit.  If the individual plaintiff lacks standing, the court need never reach the class action issue."  *NEI Contracting and Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* 926 F.3d 528, 532 (9th Cir. 2019).[4]

#### 1.   Statutory Standing

Based on deposition testimony, Defendant argues that Plaintiff lacks statutory standing to assert UCL and CLRA claims.  For the reasons stated below, the argument is rejected.

Only "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" may bring an action under the UCL.  Cal. Bus, & Prof. Code § 17204.  This provision requires Plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the ... false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct. (Benson),* 51 Cal.4th 310, 322 (2011) (emph. in orig.)  These requirements are satisfied if the plaintiff would not have purchased the product or would have not been willing to pay as much, but for the false representation.  *Id.* at 330; *see also id.* at 323 ("surrender in a transaction more ... than he or she otherwise would have"); *see also Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1104, 1107 (9th Cir. 2013) (*en banc*) (applying Cal. law).

/ / / / /

---

[4]      Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

To have standing under the CLRA, a plaintiff must show that he or she "suffer[ed] any damage as a result of" the misrepresentation.  Cal. Civ. Code § 1780(a).  The term "any damage" is broader than "actual damages and may encompass harms other than pecuniary damages." *Steroid Hormone Product Cases,* 181 Cal. App. 4th 145, 156 (2010) ("*Steroid*") (quoting *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 640 (2009)).  Because this standard "includes even minor pecuniary damage," any plaintiff who has standing under the UCL also has standing under the CLRA.  *Hinojos,* 718 F.3d at 1108.

Defendant claims that Plaintiff lacks standing because she admitted she was not deceived by the Sustainability Representations, that the labels were not misleading as Defendant was not falling short of its representations, and that she never thought of child labor when she read the labels.  Defendant misconstrues Plaintiff's testimony.

Plaintiff purchased Defendant's products because of the environmental and social responsibility representations on the product labels.  (*See, e.g.,* Falcone Dep.[5] at 34, 41-42, 47, 51-52, 63, 73, 96-98, 118, 133, 143, 144-45, 146-48, 157, 190.)  She stopped purchasing the products when she found out the representations were not true.  (*See, e.g., id.* at 30, 40-41, 49, 52, 63, 104.)  She associated the representations on the labels with the "wonderful things" Defendant was doing for the environment and cocoa farmers (*id.* at 52, 95) and was horrified when she discovered that Defendant's cocoa production caused deforestation and included child slave labor (*id.* at 32-33, 35-36, 40, 52-53, 62-63, 77, 95, 104-05, 106-08).  Plaintiff testified that the labels were deceptive because the environmental and social responsibility representations were not true.  (*See, e.g., id.* at 76-77, 90, 104, 112-13, 116-17, 197, 205-07, 209, 212-13, 220-23.)  Because of the deception, Plaintiff has lost trust in Defendant's representations.  (*See id.* at 120-21, 227, 252-53.)

---

[5]    Excerpts from Plaintiff's deposition can be found at Zeldes Decl. Ex. 6 and ECF No. 132-1, Loose Decl. Ex. 2.  All Plaintiff's exhibits are attached to the Zeldes declaration and all Defendant's exhibits are attached to the Loose declaration.

Contrary to Defendant's contention, Plaintiff testified that had she known that the Sustainability Representations were false, she would not have purchased Defendant's products (Falcone Dep. at 73, 106.)  She also testified that she lost money by purchasing the products.  (*Id.* at 86.)  Plaintiff was willing to, and did, pay a premium because of the Sustainability Representations on the labels.  (*Id.* at 145).  This testimony is sufficient to establish statutory standing under the UCL and CLRA.

## 2.      Article III Standing to Seek Injunctive Relief

Defendant further argues that Plaintiff cannot meet the injury element of Article III standing to seek injunctive relief.  In this regard, a plaintiff must show ongoing injury or threat of future injury.  "The plaintiff must demonstrate that [she] has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [she] will again be wronged in a similar way."  *DZ Reserve v. Meta Platforms, Inc.,* 96 F.4th 1223, 1240 (9th Cir. 2024).  The primary purpose and effect of public injunctive relief under the UCL and CLRA is to prohibit unlawful acts that threaten future injury to the general public.  *McGill v. Citibank, N.A.,* 2 Cal.5th 945, 955 (2017); *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 970 (9th Cir. 2018).  Accordingly,

> [c]onsumer fraud plaintiffs can satisfy the imminent injury requirement by showing they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to.

*DZ Reserve,* 96 F.4th at 1240.

Plaintiff testified she would like to purchase Defendant's products again in the future.  (*See, e.g.,* Falcone Dep. at 121.)  She stopped purchasing them since learning about child labor and environmental damage and has not purchased again because she no longer can rely on Defendant's labeling.  (*See id.* at 227 ("I don't know what to trust anymore."); *see also, e.g., id.* at 98, 120-21, 227-29, 252-53.)  This is sufficient to show imminent injury for purposes of Article III standing to seek injunctive relief.

### B. Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("*Dukes*"). First, the proposed class action must satisfy Rule 23(a) with its four prerequisites of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. Proc. 23(a). Second, Plaintiff "must show that the class fits into one of the three categories" under Rule 23(b). *Olean Wholesale Grocery Corp. v. Bumble Bee Foods,* 41 F.4th 651, 663 (9th Cir. 2022) (*en banc*) ("*Olean*").

Plaintiff seeks to certify one class each under Rule 23(b)(3) and (2). Rule 23(b)(3) "enables the potential recovery of damages and requires both that 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *DZ Reserve,* 96 F.4th at 1232 (quoting Fed. R. Civ. P. 23(b)(3)). On the other hand, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief ... is appropriate respecting the class as a whole." *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).

Plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at 665.

> Although ... a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013). If a court is not fully satisfied that the requirements of Rules 23(a) and (b) are met, certification should be denied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

### 1.      **Rule 23(a) Prerequisites**

#### a.      Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "For purposes of this requirement, 'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Johnson v. City of Grants Pass,* 72 F.4th 868, 886 (9th Cir, 2023), *rev'd on other grounds, City of Grants Pass v. Johnson,* 144 S.Ct. 2202 (2024); *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964).  While "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations[,]" *Gen. Tel. Co. of the NW v. EEOC,* 446 U.S. 318, 330 (1980), it has been held that fifteen class members would be too few and more than sixty may be sufficient, *Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1051-52 (9th Cir. 2003).  The classes proposed here are comprised of California consumers who purchased at least one of the listed products over several years.  The Court finds that the proposed classes are sufficiently numerous that joinder of all members would be impracticable.  Defendant does not contend otherwise.

#### b.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class[.]"  To meet this requirement, the class members' claims must depend on a common contention, which must be of such nature that it is capable of classwide resolution. Decision on the contention must

> resolve an issue that is central to the validity of each one of the claims in one stroke.  [¶]  What matters to class certification is not the raising of common "questions" ... but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 350 (emph. in orig.).  Even a single such common question meets the commonality requirement.  *Id.* at 359.

> In determining whether the common question prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial.

*Olean*, 31 F.4th at 666-67 (emph. in orig.).

Plaintiff argues the commonality requirement is met because the question whether Defendant's Sustainability Representations were likely to deceive consumers is common to all class members.  Defendant counters that this issue cannot be resolved on a classwide basis because the Sustainability Representations were not uniform, and the consumers did not uniformly understand them.

The commonality analysis begins with the underlying causes of action.  *DZ Reserve,* 96 F.4th at 1233.

> Under California's consumer protection laws, a consumer who pays extra for a falsely labeled or advertised product may recover the premium she paid for that product. California law also permits that consumer to seek a court order requiring the manufacturer of the product to halt its false advertising. California has decided that its consumers have a right, while shopping in a store selling consumer goods, to rely upon the statements made on a product's packaging.

*Davidson,* 889 F.3d at 960-61.

The UCL is a broad California statute that prohibits business practices that constitute "unfair competition," which is defined, as relevant here, as any unlawful, unfair or fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.[6]  "The substantive right extended to the public by the UCL is the right to protection from fraud,

---

[6]    Although Plaintiff alleged a UCL claim under each of its three prongs (ECF No. 78, Third Am. Class Action Compl. ¶¶ 117-33) and moves for class certification under all of them, Plaintiff's motion is focused on the fraudulent prong with the remaining two prongs addressed in a footnote (Mot. at 25 n.18).  Accordingly, this Order addresses only the fraudulent UCL prong.

deceit and unlawful conduct, and the focus of the statute is on the defendant's conduct." *In re Tobacco II Cases*, 46 Cal.4th 298, 324 (2009) ("*Tobacco II*"). UCL's "fundamental purpose" is to protect consumers from unfair businesses practices. *Id.* "If a defendant is found to have engaged in any of the three varieties of unfair competition," *Steroid,* 182 Cal. App.4th at 154, the UCL provides for injunctive relief and restitution, *Kasky,* 27 Cal.4th at 950. *See* Cal. Bus. & Prof. Code § 17302.

To obtain relief on a UCL claim based on false advertising or promotional practices as alleged here, Plaintiff need "only to show that members of the public are likely to be deceived." *Tobacco II*, 46 Cal.4th at 312. This standard "prohibit[s] not only advertising, which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike,* 27 Cal.4th 939, 951 (2002).

Plaintiff also seeks relief under the CLRA. The CLRA was enacted "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code, § 1760. "'[T]o promote' these purposes, the Legislature directed that the CLRA 'be liberally construed and applied.'" *McGill,* 2 Cal.5th at 954 (quoting Cal. Civ. Code, § 1760). Plaintiff's complaint focuses on section 1770(a)(5), which provides in pertinent part as follows,

> The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale ... of goods ... to any consumer are unlawful: [¶]
>
> (5) Representing that goods ... have ... characteristics ... that they do not have[.]

"A consumer who suffers damage as a result of a prohibited act or practice can sue for damages, restitution, and an injunction." *Chapman v. Skype, Inc.,* 220 Cal. App. 4th 217, 230 (2013).

/ / / / /

10

The standard for determining whether a defendant violated section 1770(a)(5) "is the same as that for determining whether there was false advertising under the UCL[, *i.e.,*] whether the representation was likely to deceive consumers". *Chapman,* 220 Cal. App. 4th at 230 (citing *Kasky,* 27 Cal.4th at 951); *see also Williams v. Gerber,* 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky,* 27 Cal.4th at 951).

Plaintiff argues she can prove on a classwide basis that the Sustainability Representations were likely to deceive consumers because the analysis is based on the "reasonable consumer standard." *Skinner v. Ken's Foods, Inc.,* 53 Cal. App. 5th 938, 948 (2020); *Chapman,* 220 Cal. App. 4th at 226; *Williams,* 552 F.3d at 938. A reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Chapman,* 220 Cal. App. 4th at 226. Accordingly, the standard does not call for individualized proof. Instead, the focus is on Defendant's conduct toward the purchasers of the relevant products. *See Tobacco II,* 46 Cal.4th at 324.

Defendant counters that classwide proof is not possible because this action is based on 59 different product labels with different Sustainability Representations. For example, not all labels featured the UTZ or Rainforest Alliance logos, and not all of them included every permutation of the sustainability claim. However, every label referenced the NCP, and all included at least one of the representations that the cocoa was "sustainably" or "responsibly" sourced, or that Defendant was improving the lives of cocoa farmers. (*See* Def.'s Appendix.)

Variations in messaging are not necessarily fatal to class certification. *See DZ Reserve,* 96 F.4th at 1234.

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions.

/////

*Id*. at 1236.  In this regard, "similarly misleading sales presentations" can represent a cohesive class, even though their exact wording varies.  *Id.* ("[D]ifferently worded sales pitches, and disparate modes of exposure" do not defeat uniformity of representations.).

To argue that the differences in the Sustainability Representations do not detract from the uniformity of Defendant's marketing messaging, Plaintiff points to Defendant's records to show that Defendant viewed the "sustainably sourced" and "responsibly sourced" statements to be interchangeable and include both consumers' environmental and social concerns.  (*See, e.g.,* Pl. Ex. 42 at slides 2, 9, 10; Pl. Ex. 41 at 269; *see also* Pl. Ex. 33 at slide 6; Pl. Ex. 22; Pl. Ex. 28 at slide 28.)  Defendant formulated this messaging based on consumer research.  (*See* Pl.'s Ex. 20 at 18 ("type of information consumers want to know" and grouping environmental and social concerns under Sustainable Sourcing Strategies for cocoa products); Pl. Ex. 42 slide 2.)

"[T]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentation across the class of victims."  *DZ Reserve,* 96 F.4th at 1236.  Given that all class members encountered interchangeable Sustainability Representations, the variation in their wording does not detract from the uniformity of the message conveyed.

To the extent Defendant argues that different consumers had different understanding of the Sustainability Representations, the argument is rejected.  The UCL and CLRA preclude individual inquiry into class members' understanding because the analysis is based on the "reasonable consumer" standard.  *See Chapman,* 220 Cal. App. 4th at 226.  The remainder of the analysis, whether the Sustainability Representations were false or likely to deceive a reasonable consumer, turns on Defendant's conduct, *i.e.,* whether Defendant's cocoa was sustainably produced.  This issue is the same for all class members.

Whether or not Plaintiff can prove at trial that the Sustainability Representations were likely to deceive a reasonable consumer, this issue can be resolved in one stroke for / / / / /

all class members and addresses a central element of both the UCL and CLRA claims. Plaintiff has therefore sufficiently established commonality under Rule 23(a)(2).

### c.   Typicality

Rule 23(a)(3) requires that "the claims ... of the representative parties are typical of the claims ... of the class[.]"  "[T]he commonality and typicality requirements of Rule 23(a) tend to merge" because

> [b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Dukes*, 564 U.S. at 249 n.5.  "[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

> The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010).

Defendant argues that Plaintiff is not typical because she admitted she was not deceived.  As discussed in Section A.1. above, Plaintiff testified she was deceived by Defendant's labeling and, contrary to Defendant's contention, had a problem with the Sustainability Representations on the labels because they were false, and she could no longer trust Defendant's product claims.  (*See* Falcone Dep. at 87-90, 179, 220-22, 245 ("[i]f it's true"), 252-53.)

Defendant further argues that the Sustainability Representations were not the only reason why Plaintiff purchased Nestle Products, pointing to the fact that Plaintiff prefers the taste of Nestle chocolate to others and had been a Nestle fan since childhood.  For purposes of the UCL and CLRA, the Sustainability Representations need not be "the sole

or even the predominant or decisive factor influencing [the purchasing decision.]  It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing [her] decision." *Tobacco II,* 46 Cal.4th at 326-27.  Accordingly, the fact that Plaintiff had multiple reasons for purchasing the products does not preclude typicality for purposes of a class claiming UCL and CLRA violations.  Plaintiff testified that the Sustainability Representations substantially influenced her purchasing decision and the discovery that they were false caused her to stop purchasing the products.  (*See* discussion of Plaintiff's testimony in Section A.1 *supra*.)

Finally, Defendant argues Plaintiff is not typical because she did not purchase one of the products included in the class definition.  As discussed above in Section *b.*, the Sustainability Representations were sufficiently uniform to meet the commonality requirement.  Accordingly, the fact Plaintiff did not purchase one of the products does not preclude a finding of typicality.

d.  <u>Adequacy</u>

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in constitutional due process concerns: "absent class members must be afforded adequate representation before entry of judgment which binds them."  *Hanlon*, 150 F.3d at 1020.  In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.*  In other words, the named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class.  *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).  Furthermore,

> [i]n appointing class counsel, the court [¶] must consider:
> (i)     the work counsel has done in identifying or investigating potential
>         claims in the action;

/ / / / /

14

(ii)     counsel's experience in handling class actions, other complex
         litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)     the resources that counsel will commit to representing the class.

Fed. R. Civ. Proc. 23(g)(1)(A).

Defendant does not dispute that the adequacy requirement is met.  No conflict of interest is apparent from the record between Plaintiff and her counsel on one hand and the putative classes on the other.  Further, both appear to be willing and able to vigorously prosecute the action on behalf of the class members.  (*See* ECF No. 125-4, Falcone Decl. ¶¶ 15-20; ECF No. 125-3, Granade Decl. & Ex. A.)  Based on Plaintiff's declaration, her participation in this action so far, including participation in discovery, the statements made in her deposition and declaration, and counsel's declaration regarding qualifications and resources to prosecute this action, the Court finds that Plaintiff and her counsel meet Rule 23(a)(4) adequacy requirements, and that Plaintiff's counsel meets the criteria of Rule 23(g)(1)(A).

## 2.     Rule 23(b)(3) Refund Class

Plaintiff moves to certify a class pursuant to Rule 23(b)(3), which seeks a refund for the products purchased by the class members.  A class action under Rule 23(b)(3) may be maintained if Rule 23(a) prerequisites are met and if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Olean*, 31 F.4th at 663-64.

### a.     Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The requirements of Rule 23(b)(3) overlap with the commonality prerequisite of Rule 23(a).  Under Rule 23(a), the plaintiff must show at

least one question of law or fact common to class members.  *Olean*, 31 F.4th at 664.

Under Rule 23(b)(3), the plaintiff must further show that common questions predominate

over individualized ones.  *Id.; see also DZ Reserve,* 96 F.4th at 1233 (The standard to

determine which elements are common, i.e., capable of being established through a

common body of evidence, is identical to the commonality analysis under Rule

23(a)(2).).

This calls upon courts to scrutinize "the relation between common and individual

questions in a case."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

> An individual question is one where members of a proposed class will need
> to present evidence that varies from member to member, while a common
> question is one where the same evidence will suffice for each member to
> make a prima facie showing or the issue is susceptible to generalized, class-
> wide proof.  The predominance inquiry asks whether the common,
> aggregation-enabling, issues in the case are more prevalent or important than
> the non-common, aggregation-defeating, individual issues.  When one or
> more of the central issues in the action are common to the class and can be
> said to predominate, the action may be considered proper under Rule
> 23(b)(3) even though other important matters will have to be tried
> separately, such as damages or some affirmative defenses peculiar to some
> individual class members.

*Id.*

As with commonality, the predominance inquiry begins with the elements of the

underlying causes of action.  *Olean,* 31 F.4th at 665.  "Rule 23(b)(3), however, does not

require a plaintiff seeking class certification to prove that each element of her claim is

susceptible to classwide proof."  *Amgen,* 568 U.S. at 469.

As discussed in Section 1.b. above, Plaintiff's UCL and CLRA claims require

proof that members of the public are likely to be deceived by Defendant's

representations.  *See Tobacco II*, 46 Cal.4th at 312 (UCL); *Chapman,* 220 Cal. App. 4th

at 230 (CLRA).  The Court has found that this element can be proven on a classwide

basis.

/ / / / /

No further proof is required under the UCL because "restitution may be ordered without individualized proof of deception, reliance and injury if necessary to prevent the use or employment of an unfair practice." *Tobacco II*, 46 Cal.4th at 320 n.14; *see also discussion* at 320. Accordingly, "absent class members on whose behalf a private UCL action is prosecuted [need not] show on an individualized basis that they have lost money or property as a result of the unfair competition." *Id.* at 320; *see also Steroid,* 181 Cal. App. 4th at 154.

However, additional proof is required to show liability for restitution or damages under the CLRA. The CLRA "requires a showing of actual injury as to each class member." *Steroid,* 181 Cal. App. 4th at 155; *see also* Cal. Civ. Code §§ 1780(a), 1781(a). This may be presumed, however, if the misrepresentation is material. *Skinner,* 53 Cal.App.5th at 949.

> "Materiality is an objective inquiry." *Skinner,* 53 Cal.App.5th at 949.
>
> A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[. ¶]
>
> In the alternative, it may also be material if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Kwikset,* 51 Cal.4th at 332-33. If a misrepresentation is material, the inference of reliance, causation, and injury arises as to the entire class, even if a defendant may be able to prove that some class members did not rely on the misrepresentation. *Steroid,* 181 Cal. App. 4th at 156-57. "Because materiality is judged according to an objective standard, [it] is a question common to all members of the class[.]" *Amgen, Inc.,* 568 U.S. at 459; *see also Skinner,* 53 Cal. App. 5th at 949 ("materiality is an objective inquiry and is thus well suited to class treatment.").

Plaintiff cites evidence to show that materiality can be proved with a common body of evidence. She notes that in formulating its sustainability marketing campaign,

Defendant performed its own materiality analysis, as demonstrated by Defendant's US16 Sustainable Sourcing Strategic Framework which outlined the "Baking Division Sustainable Sourcing Strategies" as follows, "These sustainable sourcing strategies are based on materiality analysis of what ingredients to focus on, and what type of information consumers want to know about our products.  The key ingredient categories to focus on are dairy, cocoa, and pumpkin." (Pl. Ex. 20 at 18.)  With regard to cocoa, the issues Defendant considered material to the consumers were "[Rainforest Alliance] Sourcing to demonstrate Responsibly Sourced cocoa, [¶] Deforestation, [ and ¶] Child Labor[.]" (*Id.*)

Defendant studied consumer preferences and impact of sustainability messaging on product labels (*see* Green Dep.[7] at 132-33; *see also id.* at 257-58) and found that claims in the area of sustainable and responsible sourcing were important to consumers (*id.* at 258).  In at least one internal presentation regarding sustainable sourcing, Defendant cited Harvard Business Review Research findings that from 2013-2018 sales of products with on-pack sustainability claims grew 5.6 faster than those without, and sales of chocolate with sustainability claims grew faster than the overall category (16% versus 5%) in 2017-18.  (Pl. Ex. 15 at slide 5.)  Another internal presentation cited research stating that "the sustainable chocolate category is growing faster than any other [baking product] segment[.]" (Pl. Ex. 23 at slide 5.)  A further sustainability presentation regarding Defendant's Toll House brand cited statistics showing that "[c]hocolate product with environmental claims sold 5x FASTER than overall category[.]" (Pl. Ex. 16 at 554 (emph. in orig.).)  An internal email between Defendant's marketing personnel regarding Toll House morsels discussing consumer data states that "certification like 'Rainforest Alliance Certified' can have a powerful impact on purchase intent with 74% of L6M

---

[7]     Excerpts from the deposition of Heather Green, former Marketing Manager, Nestle Toll House, and Defendant's Rule 30(b)(6) witness regarding labelling statements, were filed as Plaintiff's Exhibit 7.

Baking & Cooking Staple purchasers indicating the claim would make them 'much more/somewhat more likely to purchase.'" (Pl. Ex. 43 at 744.) Plaintiff's evidence is relevant to the materiality element as to all class members.

Defendant offers its consumer research (Def.'s Exs. 4-7) and the opinion of Dr. Ran Kivetz, defense expert, to argue that the Sustainability Representations do not matter to the consumers as much as other product claims on the labels, such as quality or 100% real chocolate, and are therefore not material to the purchasing decision. This is a merits argument aiming to show that Plaintiff cannot prevail on the issue of materiality.

Plaintiff need not prove materiality at the class certification stage. *DZ Reserve,* 96 F.4th at 1235.

> Instead, the pivotal inquiry is whether proof of materiality is needed to ensure that the *questions* of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses.

*Amgen,* 568 U.S. at 467 (emph. in orig.). Furthermore, because the question of materiality is an objective one, materiality can be proved through evidence common to the class. *Id.* Consequently, materiality is a common question for purposes of Rule 23(b)(3). *Id.* Here, rather than negating that materiality is a common question, Defendant's evidence, which consists of consumer studies, underscores that materiality can be proved (or disproved) on a classwide basis from consumer research and surveys.[8]

---

[8] Because materiality is a common question, a district court could "reserve consideration of [the defendant's] rebuttal evidence for summary judgment or trial" and is "not required to consider the evidence in determining whether common questions predominate[] under Rule 23(b)(3)." *Amgen,* 568 U.S. at 482. If the Court were to consider Defendant's evidence on the merits at this stage, it shows that consumers had multiple reasons for their purchasing decisions. It is not required that the Sustainability Representations be "the sole or even the decisive" reason for the purchase, as long as they "played a substantial part." *Tobacco II,* 46 Cal.4th at 326-27, *Chapman,* 220 Cal. App. 4th at 229.

1     Next, Defendant argues that the Sustainability Representations were not material

2 because they were mostly placed on the back of the package and, according to

3 Defendant's eye tracking study and a study by Dr. Kivetz of one of Defendant's labels,

4 most consumers were therefore not "exposed" to the Sustainability Representations.  This

5 argument is rejected initially as going to the merits rather than class certification

6 requirements.  Further, Defendant again offers classwide survey evidence which

7 underscores the fact that materiality is a common question.  Moreover, as to consumer

8 "exposure," the relevant issue is whether Defendant communicated the Sustainability

9 Representations to the class members.  *See DZ Reserve,* 96 F.4th at 1237.  When, as here,

10 all class members by definition received the representations, they have been "exposed" to

11 them.  *Walker v. Life Ins. Co. of the SW*, 955 F.3d 624, 631 (9th Cir. 2020).  Defendant

12 has cited no California law, and the Court is aware of none, requiring that the

13 misrepresentation be prominently displayed to be deemed material.[9]

14     Accordingly, Plaintiff has shown that she can prove materiality on a classwide

15 basis either by showing through consumer research, including Defendant's research

16 regarding the products at issue, that the Sustainability Representations were important to

17 a reasonable consumer, or alternatively, through Defendant's internal records and

18 employee testimony, that Defendant had reason to know that its target consumers would

19 consider the Sustainability Representations important to making a purchasing decision for

20 the products at issue.  *See Kwikset*, 51 Cal.4th at 332-33.

---

23  [9]     If the Court were to consider Defendant's argument on the merits, *see Amgen,* 568
24 U.S. at 482, Plaintiff's evidence shows that Defendant itself considered back-of-the-label
   sustainability advertising important.  (*See* Pl.'s Ex. 11 at 878.)  Defendant's personnel
25 thought about the location of the Sustainability Representations on the package to make
   sure that the representations were communicated to the consumers.  (Green Dep. at 200-
26 01.)  Defendant found it "compelling" for the Toll House brand to place the
   Sustainability Representations on the back—the same side as the cookie recipe.  (*See id.*
27 at 198-200.)  Based on this evidence, Defendant had reason to believe, and intended, that
28 consumers would see the Sustainability Representation on the back of the package.

Based on the foregoing, Plaintiff has shown that liability for monetary relief under UCL and CLRA can be proved by common evidence.  The only remaining question for the Refund Class is the amount of the refund.  Defendant argues, however, that Plaintiff cannot show predominance because she offers no proof of damages.

At the class certification stage, the plaintiff must offer a damages model that is both "consistent with [her] liability case" and demonstrates "that damages are susceptible of measurement across the entire class."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  Accordingly, Plaintiff must be able to show that damages stemmed from Defendant's actions that created legal liability.  *See Lambert v. Neutraceutical Corp.,* 870 F.3d 1170, 1182 (9th Cir. 2017) (applying Cal. law), *rev'd on other grounds, Neutraceutical Corp. v. Lambert,* 586 U.S. 188 (2019) (discussing *Comcast*).

Plaintiff seeks a refund of the purchase price for herself and the class.  The UCL provides for restitution and CLRA provides for damages or restitution.  *See Kasky,* 27 Cal.4th at 950 (UCL); *Chapman,* 220 Cal. App. 4th at 230 (CLRA).  An order for restitution compels the defendant to return money obtained through an unfair business practice to the persons from whom it was taken.  *Kasky,* 27 Cal.4th at 950.  Plaintiff's restitution theory is based on the contention that the Sustainability Representations deceived consumers into purchasing Defendant's products and that this caused damage common to the class members.

> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.

*Kwikset,* 51 Cal.4th at 329.  Plaintiff's theory of restitution therefore stems from Defendant's liability-creating actions.

It is possible to recover a full refund on this theory, as Plaintiff seeks, if "a product is shown to be worthless," or has "only *de minimis* value."  *Lambert,* 870 F.3d at 1174, 1183.  Defendant disputes that a full refund recovery is appropriate in a case such as this,

where the consumer was able to use the product.  This argument is unavailing because "the economic harm—the loss of real dollars from a consumer's pocket—is" not erased even if "a court might objectively view the products as functionally equivalent." *Kwikset,* 51 Cal.4th at 329.  For example, "[n]onkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless."  *Id.* at 330.  Consumers care how their products are produced:

> Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger.  And whether food was harvested or a product manufactured by union workers may matter to still others.

*Kwikset,* 51 Cal.4th at 328-29.  Labor practices, and child labor in particular, is one of the "key issues" for concern in Defendant's industry (Pl.'s Ex. 29 at 731) because of strong consumer feelings about it--a fact of which Defendant was acutely aware (*see* Pl. Ex. 13). Accordingly, Plaintiff can assert a full refund theory of recovery.

Next, Plaintiff needs to show that the trier of fact could calculate or sufficiently approximate the damage amount and that her damages model is supportable on evidence that could be introduced at trial.  The measure of restitution is the difference between what the plaintiff paid and the value of what the plaintiff received.  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).  Full refund "may be calculated by multiplying the average retail price by the number of units sold" during the relevant time, *Lambert,* 870 F.3d at 1174-75, as well as by other formulas that approximate damages for the class as a whole, *see id.* at 1183 & n.9.  That the resulting class damages are an approximation does not present a problem under the UCL and CLRA, which are "particularly forgiving" because "California law requires only that some reasonable basis of computation of damages be used, and the damages may by computed even if the result is an approximation."  *Id.* at 1183.  Therefore, "[u]nder California law, ... uncertain damages should not prevent class certification."  *Id.*

Plaintiff claims the products are worthless or at best have *de minimis* value because they were produced through abhorrent practices of child slave labor and deforestation. Defendant disputes that the products are in fact worthless and offers Dr. Kivetz' consumer survey.  Whether the products are worthless or have *de minimis* value is a merits issue not decided at class certification.  *See Lambert,* 870 F.3d at 1184 ("Whether [Plaintiff] could prove damages to a reasonable certainty on the basis of [her] full refund model is a question of fact that should be decided at trial.").  The calculation of class members' individual damages alone cannot defeat class certification.  *Leyva,* 716 F.3d at 513.

The Court finds that the questions whether a reasonable consumer was likely to be deceived by the Sustainability Representations and whether the representations were material are susceptible to common proof on behalf of all class members.  Plaintiff's full refund restitution theory stems from Plaintiff's theory of deception.  If Plaintiff prevails on the merits, calculation of the refund is possible on a classwide basis.  Accordingly, the common issues predominate over individual ones.

### b.   Superiority

To meet her burden under Rule 23(b)(3), Plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ, Proc. 23(b)(3).  Relevant to the inquiry are matters such as "the class members' interests in individually controlling the prosecution or defense of separate actions; [¶] the extent and nature of any litigation concerning the controversy already begun by or against class members; [¶] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [¶] the likely difficulties in managing a class action."  *Id.*

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. A class action is the superior method for managing litigation if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).

In consumer fraud cases such as this, where the individual monetary recovery of putative class members is small, "class certification may be the only feasible means for them to adjudicate their claims." *Leyva,* 716 F.3d at 515. Given the small amount of each class member's economic interest, concentrating claims in one action is desirable and it is unlikely that the class members would have an interest in individually controlling the prosecution of their individual claims. Neither party has noted any related litigation already pending or any likely difficulties in managing if a class action is certified here. Based on the discussion of commonality and predominance above, the Court has no reason to foresee difficulties. Accordingly, the Court finds that a class action is superior to other available methods of adjudicating this controversy. Defendant does not contend to the contrary.

### 3.     Rule 23(b)(2) Injunctive Relief Class

In addition to the Refund Class, Plaintiff moves to certify the Injunctive Relief Class under Rule 23(b)(2). Rule 23(b)(2) requires the plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" This requirement is met only when the plaintiff seeks a single injunction or declaratory judgment that would provide relief to each member of the class. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Rule 23(b)(2) inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.*

As discussed above, all class members were subject to the Sustainability Representations. The requested injunction, to remove the Sustainability Representations from product labels unless Defendant can trace the cocoa to assure compliance, would provide relief to each class member equally.

/ / / / /

Defendant argues that the Injunctive Relief Class should not be certified because Plaintiff as class representative lacks Article III standing to request injunctive relief and cannot meet Rule 23(a) commonality and typicality prerequisites. These contentions have been rejected in Sections A.2., B.1.b., and B.2.a. above. Accordingly, Plaintiff has met the burden to certify the Injunctive Relief Class.

### C. Motion to Strike

Defendant filed a motion to strike expert declarations Plaintiff filed with her reply in support of class certification. Defendant argues that the declarations should be stricken because the expert opinions they contain were not timely disclosed and, alternatively, are unreliable and irrelevant under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

Plaintiff introduced these expert opinions in support of her class certification motion and has not offered them for any other purpose. Because they were offered for the first time in reply, they were not considered in the decision on Plaintiff's class certification motion. Accordingly, Defendant's motion to strike is denied as moot.

## III. CONCLUSION

For the foregoing reasons it is ordered as follows:

1.     Plaintiff's motion for class certification is granted.

2.     The Court certifies a class of California consumers pursuant to Rule 23(a) and (b)(3) to recover monetary relief. The class is defined as follows:

All persons who purchased at least one of the following Nestlé Products during the following time periods:
(i)      Semisweet Morsels (12 or 72 oz) from 11/21/18 to present;
(ii)     Mini Semisweet Morsels (10 or 20 oz) from 10/17/17 to present;
(iii)    Dark Chocolate Morsels (10 or 20 oz) from 5/4/15 to present;
(iv)    Milk Chocolate Morsels (11.5 or 23 oz) from 4/19/15 to present;
(v)     Mini Marshmallows Hot Cocoa (6 Pack or 8 Pack) or Rich Milk Chocolate Hot Cocoa (6 Pack, 8 Pack, or 27.7 oz) from 12/14/17 to present;
(vi)    Nesquik Powder 16 oz from 7/6/15 to 4/27/20;

/ / / / /

(vii)   Nesquik Powder (9.3 or 41.9 oz) from 5/3/15 to 12/12/17;

(viii)  Nesquik Powder 18.7 oz from 4/7/17 to present.

The Court also certifies a class of California consumers pursuant to Rule 23(a) and (b)(2) for injunctive relief, defined as follows:

> All persons who purchased at least one Nestlé Product[10] labeled with the words "sustainably sourced," "responsibly sourced," or uses "sustainably harvested cocoa beans," "improve[s] the lives of cocoa farmers," or "better lives" and that has "Nestlé Cocoa Plan," "Rainforest Alliance" and/or "Utz" logos, during the period from April 19, 2015, to the present.

3.   Plaintiff Marie Falcone is appointed class representative for the certified classes.

4.   Plaintiff's counsel George V. Granade, Helen I. Zeldes, Joshua A. Fields, and Aya Dardari are appointed class counsel to represent the certified classes in this action.

5.   Defendant's motion to strike is denied.

**IT IS SO ORDERED.**

Dated:  September 25, 2024

Hon. M. James Lorenz
United States District Judge

---

[10]   The reference to "Nestlé Products" is to the products listed in the definition of the monetary relief class.

3:19-cv-723-L-DEB